**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **IN RE SOUTHWEST AIRLINES CO.** | ) ) ) | MDL DOCKET NO. _____ |
| **FLIGHT DISRUPTION LITIGATION** | ) ) | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFF FOR
TRANSFER OF ACTIONS TO THE SOUTHERN DISTRICT OF CALIFORNIA
PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED
PRETRIAL PROCEEDINGS</u>**

**INTRODUCTION AND BACKGROUND**

Plaintiff (hereinafter "Movant") in the matter *Mary Smith v. Southwest Airlines Co.,* No. 23cv754-AJB-BLM (S.D. Cal. 2023) respectfully submits this Memorandum of Law in support of Movant's Motion pursuant to 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation to transfer and consolidate the related actions and yet-to-be filed federal class actions to the United States District Court for the Southern District of California before the Honorable United States District Court Judge Anthony J. Battaglia. This District Court is the most logical and well-equipped District to address the overlapping (but not identical) class claims in each action, all of which have been brought on behalf of a class for Breach of Contract. *Smith* and *Grove* also bring claims for Breach of the Covenant of Good Faith and Fair Dealing, Bailment, Injunctive Relief, and Declaratory Relief; while *Hill/Pena* bring a claim for Violation of the California Business and Professions Code § 17200, *et seq.* ("Unfair Competition"). The *Capdeville* Action brings a second claim for Redhibition.

*Hill/Pena* brings the class action on behalf of:

"[…] all California family members and persons ("the Class") who purchased Southwest Airlines tickets for a flight into a California airport, a flight out of a California airport, or a flight between California airports for travel during the period December 22, 2022, to January 3, 2023 ("Class Period") where the flight(s) purchased were not delivered and travel disrupted.

*Smith* brings a class action regarding:

All persons in the United States who purchased tickets for travel on a Southwest Airlines flight and that flight was delayed and/or cancelled (including, but not limited to in June 2020, October 2021, and December 24, 2022-January 2, 2022), and who were not provided a refund and/or reimbursed for incurred expenses as a result of the delay and/or cancellation.

All persons in the United States who purchased tickets for travel on a Southwest Airlines flight and that flight was delayed and/or cancelled from December 24, 2022 and January 2, 2022 and who were not provided a refund and/or reimbursed for incurred expenses as a result of the delay and/or cancellation and who checked luggage between December 24, 2022 and January 2, 2022.

1

*Grove* brings a class action on behalf of:

All persons in the United States who purchased tickets for travel on a Southwest Airlines flight scheduled to operate notably from June 2020 through the date of certification but including the time period allowed by the statute of limitations, and that flight was delayed or cancelled, and who were not provided a refund and reimbursed for incurred expenses as a result of the cancellation.

*Capdeville* brings a class action on behalf of:

All persons in the United States who purchased tickets for travel on a Southwest Airlines flight scheduled to operate from December 24, 2022 through the date of a class certification order, whose flight(s) were canceled by Southwest, and who were not provided a refund and reimbursed for incurred expenses as a result of the cancellation.

As alleged in the pending cases, *all* of these related actions allege that common defendants – namely Southwest Airlines, Co. (the "Common Defendants") – breached one or more provisions of its contracts, and specifically – as to three of the four actions - the Contract of Carriage and/or the Customer Service Agreement.  (**Exhibit 1 to Schedule of Actions**, *Grove* Complaint, ¶ 90; **Exhibit 3 to Schedule of Actions,** *Smith Complaint*, ¶ 97; **Exhibit 4 to Schedule of Actions,** *Capdeville* Complaint, ¶ 36). *See also*, **Exhibit 2 to Schedule of Actions,** *Hill/ Piña Complaint* (alleging breach of contract generally).  All of the actions arise out of disruptions/cancellations of Southwest's flights that were due to the fault of Southwest Airlines Co.

Movant *Smith* filed Movant *Smith's* Complaint in the Northern District of California on January 22, 2023.  On April 24, 2023, the *Smith* Action was transferred to the Southern District of California pursuant to 28 U.S.C. § 1404 and on May 12, 2023, the case was transferred before Honorable Anthony J. Battaglia pursuant to the Low Number Rule. In addition to Movant's action,

2

two (2) additional related cases are currently pending in the Southern District of California[1] and one (1) related case has been filed in the Eastern District of Louisiana[2]. Thus, as of the date of this filing, the majority of cases are pending in California.

California is an appropriate location for the litigation. First, Southwest operates more flights in California than in any other place in the nation, including its home state. Southwest "carried more California travelers to, from and within California than any other airline," according to the airline's 2021 annual report.[3] Furthermore, Southwest is the state's busiest airline, and more of its flights depart from California than from any other state in the nation, including Texas, where the company began.[4] Southwest is the top airline at seven of California's ten busiest airports, accounting for more than half of all air traffic at the airports in Oakland, Sacramento, San Jose, Burbank and Long Beach.[5]

Indeed, "Southwest is almost the unofficial airline of California," Henry Harteveldt, an airlines analyst for Atmosphere Research Group, told my colleague Shawn Hubler after the airline's flight cancellations during the holidays left passengers stranded across the country. In fact, "[t]wo-thirds of all seats for sale on flights within California are on Southwest flights,

---

[1] As set forth in the attached Schedule of Related Actions, the California actions are: *Mary Smith v. Southwest Airlines Co.*, No. 3:23-cv-00754-AJB-BLM (S.D. Cal.) (the *Smith* Action); *Paula Hill and Eva Piña v. Southwest Airlines Co.*, Case No. 3:23-cv-00633-AJB-BLM (the *Hill/ Piña* Action); and *Grove v. Southwest Airlines Co.,* Case No. 3:23-cv-00306-AJB-BLM (the *Grove* Action.) (collectively the "California Actions").

[2] As set forth in the attached Schedule of Related Actions, the Louisiana action is: *Capdeville v. Southwest Airlines Co.*, Case No. 2:22-cv-05590-ILRL-KWR (the "Louisiana Action" or the *Capdeville* Action).

[3] Southwest is California's 'Unofficial Airline.' The Meltdown Has Residents Anxious. New York Times. Available at: https://www.nytimes.com/2022/12/29/us/southwest-california-commuters.html?searchResultPosition=1.

[4] How Southwest Became California's 'Unofficial Airline'. Available at: https://www.nytimes.com/2023/01/03/us/southwest-airline-california.html

[5] https://www.nytimes.com/2023/01/03/us/southwest-airline-california.html

3

according to Mike Arnot, a spokesman for Cirium, an aviation analytics company. (United is a very distant second with 13 percent.)"[6] "Southwest is California's busiest airline, with some 800 flights scheduled on peak days, many of which ferry residents between Northern and Southern California."[7]

While Southwest is present in 13 California airports,[8] Southwest is only present in one (1) airport in Louisiana[9] and of the 113 destinations Southwest flies to from Louisiana, 13 are to a California airport.[10]  Looking at a sample of only three (3) of the 13 airports Southwest operates in California, it is evident that more people in the nation would have been impacted by the Southwest Airlines flight disruption than in Louisiana. In San Diego, California alone, Southwest operates flights to 95 destinations, one (1) of which is to/from Louisiana.[11]  In San Jose, California alone, Southwest operates flights to 100 destinations, one (1) of which is to/from Louisiana.[12]  In Los Angeles, California alone, Southwest operates flights to 101 destination, only one (1) of which is to/from Louisiana.[13]

Although Movant does not dispute that Louisiana would have an interest in protecting

---

[6] https://www.nytimes.com/2023/01/03/us/southwest-airline-california.html
[7] *Southwest is California's 'Unofficial Airline.' The Meltdown Has Residents Anxious. New York Times.* https://www.nytimes.com/2022/12/29/us/southwest-california-commuters.html?searchResultPosition=1.
[8] *See*, Southwest Airlines landing page. Available at: www.southwest.com (after typing in "California" to the Depart box.)
[9] *See*, *See*, Southwest Airlines landing page. www.southwest.com (after typing in "Louisiana" to the Depart box.)
[10] *See*, Find the Best Flight Deals with Southwest Airlines, https://www.southwest.com/find-best-flight-deals/?originMarket=MSY
[11] *See*, *Find the Best Flight Deals with Southwest Airlines*, https://www.southwest.com/find-best-flight-deals/?originMarket=SAN
[12] *See*, *Find the Best Flight Deals with Southwest Airlines*, https://www.southwest.com/find-best-flight-deals/?originMarket=SJC
[13]  *See*, *Find the Best Flight Deals with Southwest Airlines*, https://www.southwest.com/find-best-flight-deals/?originMarket=LAX

Southwest consumers flight to and from its state, California's interest is larger as the number of Southwest flights disrupted in Louisiana pale in comparison to the number of flights disrupted in California.  As to Louisiana: *See*, *Most Southwest flights out of New Orleans canceled or delayed as travel woes continue*.[14] (indicating only 38 flight cancelations as of Tuesday, December 27, 2022 at 8pm.); *see,* "Southwest Airlines flight cancellations cause holiday havoc, but Baton Rouge airport spared" because Southwest doesn't even fly into Baton Rouge.[15]    Compare, however, to the flight disruption count on the same day in California (Tuesday, December 27, 2022 at 6pm PT): "[…] 18 outbound Southwest flights — or two-thirds of its services — were canceled at Hollywood Burbank Airport on Tuesday, according to the mobile flight tracker Flightview. John Wayne Airport in Orange County had 51 outbound Southwest flights canceled and seven delayed Tuesday morning, while San Diego saw some of the biggest disruptions, with 89 departing Southwest flights canceled and 28 delayed, according to FlightAware."[16]

Given the extensive overlap of the factual and legal issues involved, Movant respectfully suggests that the Related Actions should be centralized before one court pursuant to 28 U.S.C. §1407, and that the United States District Court for the Southern District of California is the most appropriate transferee forum.

Moreover, none of the Actions have advanced to a point that concerns of judicial economy would outweigh that state's inherent lack of interest in the class claims in dispute.  The first-filed case in Eastern District of Louisiana, the *Capdeville* Action, has advanced little, if at all, since

---

[14] Available at: https://www.wwltv.com/article/news/local/orleans/southwest-airlines-canceled-flights-new-orleans/289-e3ec9bd5-183b-4a70-80ab-4e6339fe109b.

[15] *See*, https://www.theadvocate.com/baton_rouge/news/courts/southwest-airlines-flight-debacle-spares-baton-rouge/article_cfdc7934-8608-11ed-8915-2bc1dcfd4085.html.

[16] Stranded Southwest fliers face days of waiting as anger, scrutiny over meltdown grow. Available at: https://www.latimes.com/california/story/2022-12-27/flight-cancellations-and-disruptions-continue-at-airports-across-the-country.

inception in late December 2022, with Defendant only having recently filed a responsive pleading on May 22, 2023. See **Exhibit 4 to Schedule of Actions**, *Capdeville* Docket Sheet, ECF Doc. No. 10. Also, no Case Management Hearings have taken place and will not take place until June 8, 2023. *See, id.,* Dkt. 11.

Because California is undoubtedly the center of gravity of this litigation, and because all Related Actions are in a similar state of procedural advancement, the Related Actions should be consolidated in the Southern District of California.

## ARGUMENT

**I.     Transfer and Consolidation in One District is Appropriate**

28 U.S.C. § 1407 provides that "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). This Panel shall order such transfer "upon its determination that transfers for such proceedings will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." *Id.* The Panel has previously ordered centralization of three or fewer cases. *See In re Wireless Telephone Replacement Protection Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (granting transfer and centralization of three consumer protection cases and determining that pending motions can be presented to and decided by the transferee judge); *In re Philadelphia Life Ins. Co. Sales Practices Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L 2001) (granting transfer of two deceptive insurance sales cases and finding that such transfer would promote the just and efficient conduct of the litigation).

Here, there are a multitude of cases with overlapping questions of law and fact among them, and the convenience of the parties and witnesses and considerations of judicial efficiency, all strongly favor transferring the Related Actions to the Southern District of California for

coordinated or consolidated pretrial proceedings.

### A. The Related Actions Share Common Questions of Law and Fact.

In assessing the appropriateness of consolidation under Section 1407, the Panel looks to the pleadings to determine the extent to which common questions of fact are present. Here, the Related Actions share common questions of law and fact since they allege comparable core allegations against primarily the same defendants based on common transactions and events. "Section 1407 does not," however, "required a complete identity or even a majority of common factual issues as a prerequisite to centralization." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1363 (J.P.M.L. 2014) (quoting *In re Park W. Galleries, Inc., Litig.*, 887 F. Supp. 2d 1385, 1385 (J.P.M.L. 2012)).

The individual complaints in the Related Actions involve many common questions of fact. In the Related Actions, the complaints largely focus on Southwest Airlines Co.'s breaches of its contracts, resulting in flight disruptions and/or baggage delays. In comparing the allegations of the Related Actions, common questions abound, including, but not limited to: (a) whether Southwest Airlines Co. breached its contract with Plaintiff and the Class Members. *See*, **Exhibit 1 to Schedule of Actions**, *Grove* Complaint at ¶ 84(a); **Exhibit 2 to Schedule of Actions**, *Hill/ Piña* Complaint at ¶ 16; **Exhibit 3 to Schedule of Actions**, *Smith* Complaint at ¶ 91(a); **Exhibit 4 to Schedule of Actions**, *Capdeville* Complaint at ¶ 30; and (b) whether Plaintiffs and the Class Members are entitled to damages as a result. *See*, **Exhibit 1 to Schedule of Actions**, *Grove* Complaint at ¶. 84(b)-(d); **Exhibit 3 to Schedule of Actions**, *Smith* Complaint at ¶ 91(d)-(f). The *Smith* and *Grove* Actions also share the following common questions of law and fact: Breach of Covenant of Good Faith and Fair Dealing, Violation of Bailment; Injunctive Relief; and Declaratory Relief. *See*, **Exhibit 3 to Schedule of Actions**, *Smith* Complaint at ¶ 91(b)-(c); (g)-(h); *See*, **Exhibit 1 to Schedule of Actions**, *Grove* Complaint at ¶84(d); 99-122.

The overlap here is sufficient to merit transfer and coordination pursuant to Section 1407. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 237 F. Supp. 2d 1377, 1379 (J.P.M.L. 2002) (to the extent non-common issues arise, transfer can have the "salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that [] allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues").

Nor are the additional, non-breach of contract class claims asserted in the Louisiana Action (Redhibition) or in the *Hill/ Piña* Action (Unfair Competition Law) grounds to reject the benefits consolidation will provide. As noted above, while only one Related Actions raises the Redhibition claim and one Related Action raises the Unfair Competition Claim, every single one of Actions raises a claim under breach of contract and seeks damages, and "[m]any MDLs [ ] encompass non-overlapping classes." *In re: N. Sea Brent Crude Oil Futures Litig.*, 978 F. Supp. 2d 1384 (J.P.M.L. 2013); *see also In re: Chrysler LLC 2.7 Liter V–6 Engine Oil Sludge Prods. Liab. Litig.*, 598 F.Supp.2d 1372 (J.P.M.L.2009) (centralizing five non-overlapping putative statewide class actions); *In re: Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011) ("Transferee judges can accommodate common and individual discovery tracks, gaining the benefits of centralization without delaying or compromising consideration of claims on their individual merits"). The breach of contract violations are the ties that bind this litigation and give rise to the need for consolidation. *In re: Park West Galleries, Inc., Litig.,* 887 F.Supp.2d 1385, 1385 (J.P.M.L.2012) ("Section 1407 does not require a complete identity or even a majority of common factual issues as a prerequisite to centralization"). Here, the "common factual issues" are not simply a majority but an overwhelming majority of the issues in play, notwithstanding the additional cause of action asserted in the *Hill/ Piña* Action and the one additional cause of action

asserted in the Louisiana Action. *In re Park W. Galleries, Inc., Litig.*, 887 F. Supp. 2d 1385 (J.P.M.L. 2012) ("Discovery and other pretrial proceedings will focus on the same series of events. Pretrial motions likely will be similar in these actions").

### B. Transfer Will Promote Convenient, Just, and Efficient Litigation of the Related Actions

The Panel will order transfer where it would "eliminate duplicative discovery; prevent inconsistent pre-trial rulings (particularly with respect to the issue of class certification); and conserve the resources of the parties, their counsel and the judiciary." *In re U.S. Foodservice, Inc., Pricing Litig.*, 528 F. Supp. 2d 1370, 1371 (J.P.M.L. 2007). Because each action is based upon similar facts, plaintiffs in each of the Actions are, in turn, likely to seek overlapping discovery. *See In re Auto Body Shop*, 2014 WL 3908000, at *1-2 (J.P.M.L. 2014) (noting that transfer was appropriate to eliminate duplicative discovery when the actions shared a common factual core). Plaintiffs in the Related Actions necessarily will seek similar discovery from the Common Defendants to develop their common allegations and legal theories. The benefits to the Common Defendants are obvious as well, as they would not need to submit to repetitive and duplicative depositions, document discovery, discovery-related motion practice, and class certification briefing. *See, e.g., In re Pilot Flying J Fuel Rebate Contract Litig. (No. II)*, 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014); *In re Fresh & Processed Potatoes Antitrust Litig.*, 744 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010).

That the Related Actions are putative class actions only strengthens the argument for transferring them for coordination or consolidation in a single forum. "The need to eliminate" the risk of inconsistent class certification rulings "presents a highly persuasive reason favoring transfer under Section 1407." *In re Roadway Exp., Inc. Employment Practices Litig.*, 384 F. Supp. 612, 613 (J.P.M.L. 1974). *See also In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, 26 F.

Supp. 3d 1394, 1395 (J.P.M.L. 2014) ("Centralization will . . . prevent inconsistent pretrial rulings (particularly as to class certification) . . ."); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 416 F. Supp. 2d 1346, 1347 (J.P.M.L. 2006) (ordering transfer "in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, particularly with respect to class certification . . ."). In short, this is an ideal circumstance for a transfer order pursuant to Section 1407.

**II.       The Southern District of California is the Most Appropriate Forum**

A review of the factors considered by the Panel in determining the most appropriate transferee court demonstrates that the Southern District of California has several attributes which make that Court particularly appropriate here.

Southern California is a logistically convenient location for parties located in Northern California, Southern California, and elsewhere in the United States. *See In re Worldcom, Inc.*; *Sec. and ERISA Litig,.* 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) (noting that "litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well developed support system for legal services"). As indicated in the Introduction and Background at pp. 3-5, California was more significantly impacted by the flight disruption as Southwest operates to and from 13 airports in California compared to one (1) in Louisiana and as of December 27, 2022 more flights were disrupted in San Diego alone than in Louisiana. This makes sense as Southwest has been referred to as the "unofficial airline of California."

In terms of convenience of the parties, frequent flight service is offered into San Diego International Airport, which is located only three miles from the Southern District Courthouse. This should be convenient for Southwest as Southwest flies to that particular airport. As to the named Plaintiffs alone, all but one named Plaintiff is from California and of the named Plaintiffs

10

from California, all of their cases are pending in the United States District Court of California for the Southern District of California.

The Louis Armstrong New Orleans airport, where the only other consumer case is pending against Southwest, is located approximately 15.2 miles from the Eastern District of Louisiana, which is five times as far in comparison.

Accommodations are available at more than 400 hotels and motels in the local San Diego area.[17] Whereas there are only 142 in the downtown area.[18] There are at least 10,000 hotels available in the San Diego County area[19], compared to 307 hotels in the greater New Orleans metro area.[20]

Furthermore, the Panel has on several occasions found that the Southern District of California to be an appropriate transferee forum. *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, Case No. 3:15-md-02672-CRB (MDL No. 2672). *See also*, Distribution of Pending MDL Dockets by District at 2. Available at: https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2023.pdf (indicating the following MDLs currently pending the United States District Court for the Southern District of California: MDL-2295 (*In re: Portfolio Recovery Associates, LLC, Telephone Consumer Protection Act (TCPA) Litigation*; MDL-2670 (*In re: Packaged Seafood*

---

[17] https://www.expedia.com/Downtown-San-Diego-San-Diego-Hotels.0-n800123-0.Travel-Guide-Filter-Hotels (indicating 443 hotels in Downtown San Diego, California)

[18] https://www.neworleans.com/plan/faqs/#:~:text=There%20are%20142%20hotels%20and,downtown%20hotel%20towers%20and%20more. (indicating 10,000 hotels in the San Diego County area)

[19] https://www.expedia.com/Destinations-In-San-Diego-County.d178304.Hotel-Destinations

[20] https://www.neworleans.com/plan/faqs/#:~:text=There%20are%20142%20hotels%20and,downtown%20hotel%20towers%20and%20more.

*Products Antitrust Litigation*, MDL-2992 (*In re: Bank of America California Unemployment Benefits Litigation. See, MDL Statistics Report*.)

The Southern District of California presently has 5,330 cases pending 12-Motion Period Ending March 31, 2023 with 410 cases pending per Judgeship and median time from filing to disposition (Civil) of 7.4 months and median time from filing to trial (Civil Only) of 46.0 months. *See*, U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (March 31, 2023) at p. 9.[21]

Compare, respectfully, to the congested Eastern District of Louisiana, which presently has 16,935 pending cases with 1,411 cases pending per Judgeship and median time from filing to disposition (Civil) of 68.9 months and median time from filing to trial (civil Only) of 25.6 months. *See*, U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (March 31, 2023) at p. 5.[22]

## CONCLUSION

For the forgoing reasons, Movant respectfully requests that the Panel centralize the Related Actions as well as any tag-along actions or other cases, such as may be subsequently filed in federal court asserting related or similar claims, in the United Stated District Court for the Southern District of California.

Dated: <u>May 30, 2023</u>                                Respectfully submitted,

                                                                    By: <u>/s/  Francis J. "Casey" Flynn, Jr.</u>
                                                                            Francis J. "Casey" Flynn, Jr.
                                                                            **LAW OFFICE OF FRANCIS J. FLYNN, JR.**
                                                                            6057 Metropolitan Plz.
                                                                            Los Angeles, California 90036
                                                                            Fax: (855) 710-7706
                                                                            Tele: 314-662-2836

---

[21] Available at: https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0331.2023.pdf
[22] *Id.*

Email: casey@lawofficeflynn.com
francisflynn@gmail.com

**PLAINTIFFS' COUNSEL IN MARY SMITH V. SOUTHWEST AIRLINES CO., NO. 23CV754-AJB-BLM (S.D. CAL. 2023)**