**Motions**

3:23-cv-00306-AJB-BLM Grove v. Southwest Airlines Co.

## U.S. District Court

### Southern District of California

## Notice of Electronic Filing

The following transaction was entered by Pearson, Matthew on 6/16/2023 at 1:33 PM PDT and filed on 6/16/2023

| | |
|---|---|
| **Case Name:** | Grove v. Southwest Airlines Co. |
| **Case Number:** | 3:23-cv-00306-AJB-BLM |
| **Filer:** | Southwest Airlines Co. |

**Document Number:** 12

**Docket Text:**
**MOTION to Dismiss *, Transfer, Or Stay Under The First-To-File Rule* by Southwest Airlines Co.. (Attachments: # (1) Declaration, # (2) Exhibit Index, # (3) Exhibit 1, # (4) Exhibit 2, # (5) Exhibit 3) (Pearson, Matthew)**

**3:23-cv-00306-AJB-BLM Notice has been electronically mailed to:**

Brian Philip Murray      bmurray@glancylaw.com, brian-murray-4237@ecf.pacerpro.com, jluckey@glancylaw.com

Kevin F. Ruf    kevinruf@gmail.com, kevin-ruf-7394@ecf.pacerpro.com, kruf@glancylaw.com

Matthew D. Pearson      mpearson@bakerlaw.com, ecordero@bakerlaw.com, kbreedlove@bakerlaw.com

**3:23-cv-00306-AJB-BLM Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1106146653 [Date=6/16/2023] [FileNumber=17561119-0] [0362b82e782c78022326b8cc1cae2674311a6fdef544f6c8df827540c5f7c0da15 1e2a9e8d28af485ccd02908edd33214d6a3ec00d971966306e967eeacf4995]]
**Document description:** Declaration
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1106146653 [Date=6/16/2023] [FileNumber=17561119-1] [a265c50b2410a77bb9df74ca4bc76cd3cf85f04384a5bdde038fc486577c1b0728 e1a780b4bbe9e9fdcd1e90eb4da2e33b7075e4847201dc4baec246839307ad]]
**Document description:** Exhibit Index
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1106146653 [Date=6/16/2023] [FileNumber=17561119-2] [3f663d6d14899c9580fc735e28c06ede4029c4b3808cee7ff78ba34fd7e7e8a58e 5eb392c16f61e3393b9d0eafed5195ca25411da78d9b2a9c55b092a743747e]]
**Document description:** Exhibit 1
**Original filename:** n/a
**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1106146653 [Date=6/16/2023] [FileNumber=17561119-3] [c6f81b576fdf46ec4eec3e60323e6c2cfb532e06a7abc488f021866a4c0b2011d2 d0698395869c65e09f30d6b4e33c0ecd086b82df88130f6ee547c3b3c47de3]]
**Document description:**Exhibit 2
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1106146653 [Date=6/16/2023] [FileNumber=17561119-4] [08fae3fca8bd2f8999973729508464f906502df97c0f8f98275f59a4cb91d93f44 114867137641784117ebdec68a9876d161bceeda6f8f0adc6841cf0766d41f]]
**Document description:**Exhibit 3
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1106146653 [Date=6/16/2023] [FileNumber=17561119-5] [b59f9101a56de4a9168ee24bf936dfebb3a259466fb090b1faf4dabcaa769e4a6d 39cce5797ca3d26bd2b836f3af2bdd7f57ef349a04137d5e98d43e1b462d33]]

Matthew D. Pearson, Bar No. 294302
mpearson@bakerlaw.com
**BAKER & HOSTETLER LLP**
600 Anton Blvd, Suite 900
Costa Mesa, California 92626-7221
Telephone: 714.754.6600
Facsimile: 714.754.6611

Alexander Vitruk, Bar No. 315756
avitruk@bakerlaw.com
**BAKER & HOSTETER LLP**
999 Third Avenue, Suite 3900
Seattle, Washington 98104
Telephone: 206.332.1380
Facsimile: 206.624.7317

Attorneys for Defendant
SOUTHWEST AIRLINES CO.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT GROVE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No.: 3:23-cv-00306-AJB-BLM<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER, OR STAY UNDER FIRST-TO-FILE RULE**<br><br>**[Filed Concurrently with Declaration of Matthew D. Pearson; (Proposed) Order]**<br><br>Hearing Date: August 21, 2023<br>Hearing Time: 2:00 p.m.<br>Location: 211 West Broadway<br>San Diego, CA 92101<br>Courtroom 4A<br>Floor: 4th Floor<br><br>Action Filed: February 15, 2023 |

**TO THE COURT, AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** at 2:00 p.m. on August 21, 2023, or as soon thereafter as the matter may be heard, in Courtroom 4A in the Edward J. Schwartz Courthouse for the United States District Court for the Southern District of California, located at 221 West Broadway, San Diego, California 92110, the Honorable Anthony J. Battaglia presiding, Defendant Southwest Airlines Co. ("Southwest") will and hereby does move for an order dismissing the above-captioned action ("*Grove* Action") pursuant to the first-to file rule; or, in the alternative, transferring the *Grove* Action to the United States District Court for the Eastern District of Louisiana, where an earlier-filed, substantially similar putative class action is pending, *Capdeville v. Southwest Airlines Co.,* Case No. 22:18-cv-02876-MWF-E (E.D. La.) (the "*Capdeville* Action"); or, lastly, staying the *Grove* Action pending resolution of the *Capdeville* Action ("Motion").

The *Grove* Action should be dismissed under the first-to-file rule because the *Capdeville* Action involves the same challenged conduct and seeks certification of a purported class that is either entirely inclusive of or substantially similar to the purported class in this case. Therefore, in the interests of judicial economy, this case should be dismissed. If it is not dismissed, this case should be transferred to the Eastern District of Louisiana. Failing both, this Court should stay this matter while the first-filed action (i.e., the *Capdeville* Action) is pending.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declaration of Matthew D. Pearson; all other papers, documents, or exhibits that may be filed in support of this Motion; and the argument of counsel, if any, made at the hearing.

On June 12, 2023, counsel for Southwest sent counsel for Plaintiff Matt Grove ("Plaintiff") an email, stating that "[a]s previously discussed, Southwest plans to file shortly a motion to dismiss, transfer, or stay the *Grove* Action pursuant to the first-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

to-file rule." [Declaration of Matthew D. Pearson ("Pearson Decl."), ¶ 9.] In that email, counsel for Southwest further stated that "Southwest will be seeking:

- An order dismissing the case pursuant to the first-to-file rule;
- In the alternative, an order transferring the case to the Eastern District of Louisiana (where the first-filed *Capdeville* action is pending); or
- In the alternative, an order staying the case pending resolution of the *Capdeville* action."

[*Id.*]

Counsel for Southwest concluded the June 12, 2023 email, stating: "If you would like to discuss over the phone, please just let me know." [*Id.* at ¶ 10.]

Not having received a response from counsel for Plaintiff, counsel for Southwest sent, on June 13, 2023, a follow-up email and attached his original June 12, 2023 email. [*Id.* at ¶ 11.] As of the filing of this Declaration, counsel for Southwest has not received a response from counsel for Plaintiff regarding Southwest's Motion or counsel for Southwest's offer to engage in a telephonic meet-and-confer call prior to filing the Motion. [*Id.* at ¶ 12.]


Dated: June 16, 2023

BAKER & HOSTETLER LLP


By: */s/ Matthew D. Pearson*
    Matthew D. Pearson
    Casie D. Collignon
    Alexander Vitruk

*Attorneys for Defendant*
*Southwest Airlines Co.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In late December 2022, Southwest Airlines suffered a major disruption to its operations, which resulted in flight cancellations. Matt Grove filed a class action complaint, alleging that he was among the group of individuals whose flights were cancelled, and that Southwest failed to properly compensate him and other class members. These allegations, however, are nearly identical to those in an earlier-filed putative class action pending in the United States District Court for the Eastern District of Louisiana, *Capdeville v. Southwest Airlines Co.,* Case No. 22:18-cv-02876-MWF-E (E.D. La.).

Given that (1) the two actions are substantially the same and (2) *Capdeville* was filed first and has progressed further, the *Grove* action should be dismissed under the first-to-file rule. Indeed, another plaintiff in another related action—Mary Smith—has already effectively admitted that the rule applies by filing her own motion to transfer with the Judicial Panel on Multidistrict Litigation, [*see* Mot. for Transfer at 7, 9, MDL No. 3082 (arguing that the *Capdeville* action and this one "Share Common Questions of Law and Fact" and that "Transfer Will Promote Convenient, Just, and Efficient Litigation of the Related Actions")], and Grove has indicated that he does not oppose that motion.

Alternatively, this Court should transfer the *Grove* action to the Eastern District of Louisiana, where Southwest's motion to dismiss is currently pending.[1]

### II.   STATEMENT OF FACTS

#### A.   The First-Filed Action in Federal Court: *Capdeville*[2]

On December 30, 2022, Eric Capdeville filed suit against Southwest in the United States District Court for the Eastern District of Louisiana, Case No. 2:22-cv-

---

[1] Absent dismissal or transfer, the Court should, at a minimum, stay this action to avoid any inconsistent orders and duplication of resources.

[2] A true and correct copy of the docket in the *Capdeville* action is attached as Exhibit 1 to the Pearson Decl.

- 1 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

05590-DJP-KWR. Capdeville asserts two causes of action against Southwest: (1) breach of contract and (2) redhibition. [Compl., 2:22-cv-00590-DJP-KWR, Dkt. No. 1, attached as Exhibit 2 to the Pearson Decl.] These two claims, according to Capdeville, arise out of Southwest's "cancell[ation] [of] flights nationwide" "beginning Friday, December 23, 2022" and "continu[ing]…through Wednesday, December 28, 2022." [*Id.* at ¶ 5.] Capdeville asserts his two claims against Southwest on behalf of himself and, purportedly, on behalf a nationwide class, which he defines as:

> "All persons in the United States who purchased tickets for travel on a Southwest Airlines flight scheduled to operate from December 24, 2022 through the date of the class certification order, whose flight(s) were canceled by Southwest, and who were not provided a refund or reimbursed for incurred expenses as a result of the cancellation." [*Id.* at ¶ 24.]

On May 22, 2023, Southwest filed a motion to dismiss Capdeville's complaint, arguing, among other things, that (1) Capdeville fails to state a plausible claim for breach of contract and redhibition; and (2) Capdeville's redhibition claim is preempted by the Airline Deregulation Act. [2:22-cv-00590-DJP-KWR, Dkt. No. 10.] The motion to dismiss was initially "set for submission before District Judge Ivan L.R. Lemelle on June 7, 2023.'" [*Id.* at Dkt. No. 10-4.] The case was then reassigned to Judge Papillion, [*id.* at Dkt. No. 13], and a new submission date of July 12, 2023 was set, [*id.* at Dkt. No. 15].

## B.    **This Action: _Grove_**

On February 15, 2023, Plaintiff Matt Grove ("Grove") filed in the United States District Court for the Southern District of California the *Grove* Action against Southwest, asserting claims for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing; (3) violation of bailment; (4) injunctive relief; and (5) declaratory relief (28 U.S.C. §§2201-2202). [*See* Dkt. No. 1.] These five claims all

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

- 2 -

arise out of Southwest's "cancell[ing] nearly 16,000 flights" "[b]etween December 22, 2022 and January 2, 2023." [*Id.* at ¶ 60.]

Grove asserts these claims on behalf of himself and, purportedly, on behalf of a "nationwide class" that Grove defines as follows:

> "All persons in the United States who purchased tickets for travel on a Southwest Airlines flight scheduled to operate notably from June 2020 through the date of certification but including the time period allowed by the statute of limitations, and that flight was delayed or cancelled, and who were not provided a refund and reimbursed for incurred expenses as a result of the cancellation." [*Id.* at ¶ 77.]

Southwest's current responsive pleading deadline in the *Grove* Action is June 16, 2023.  [Dkt. No. 8.]

### C.    **The MDL Motion**

Then, on May 30, 2023 and without any notice to Southwest, plaintiff in a related action—*Smith v. Southwest Airlines Co.*, Case No. 3:23-cv-00754-AJB-BLM (S.D. Cal.)—filed with the United States Judicial Panel on Multidistrict Litigation a Motion for Transfer of Actions to the Southern District of California Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings", seeking an order to "transfer the related actions"[3] "and any subsequently filed tag-along actions or related actions, to the Southern District of California for coordinated or consolidated proceedings."  *[In re: Southwest Airlines Co. Flight Disruption Litigation*, MDL No. 3082, Dkt. No. 1, attached as Exhibit 3 to the Pearson Decl. ("MDL Motion").]  In the MDL Motion, Smith admits that "The Related Actions Share Common Questions of Law and Fact" and that "Transfer Will Promote

---

[3] In the MDL Motion, Smith describes the "related actions" as her action, this action, the *Capdeville* action, and one other putative class actions filed against Southwest that arises out of Southwest's flight cancellations and that is pending in this Court—*Grove v. Southwest Airlines Co.*, Case No. 3:23-cv-00306-AJB-BLM (S.D. Cal.).  Southwest has also filed first-to-file motions in the *Smith* and *Grove* actions.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

Convenient, Just, and Efficient Litigation of the Related Actions." [MDL Motion at pp. 7, 9.] Counsel for Hill has indicated that Hill agrees with and will not be opposing the MDL Motion. Southwest's deadline to respond to the MDL Motion is June 20, 2023.

## III. <u>FIRST-TO-FILE RULE STANDARD</u>

"The first-to-file rule is a 'generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.'" *Molander v. Google LLC*, 473 F. Supp. 3d 1013, 1017 (N.D. Cal. 2020) (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982)). In deciding whether the first-to-file rule applies, courts consider three factors: "(1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Id.* The first-to-file rule does not require "exact identity of the parties." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). Nor does it require that the issues be "identical." All that is required is that the parties and issues are "substantially similar." *Id.* ("The issues in both cases also need not be identical, only substantially similar.").

Once it has been determined that the first-to-file rule applies, the court has the discretion to dismiss, transfer, stay, or dismiss the action. *Dewan v. M-I, L.L.C.*, No. 1:14-CV-01151-AWI, 2015 WL 3797462, at *4 (E.D. Cal. June 18, 2015); *see also Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991) (stating that "the well-established 'first to file rule[]'…allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court"). Despite this discretion, a "court's decision to depart from this general rule must present a sound reason that would make it unjust or inefficient to continue the first-filed action." *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 987 (N.D. Cal. 2011) (internal quotations omitted). In fact, "[u]nless compelling circumstances justify departure from the rule, the first-filing party," here, the plaintiffs in the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

Consolidated Action, "should be permitted to proceed without concern about a conflicting order being issued in the later-filed action." *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 269 (C.D. Cal. 1998).

## IV.   ARGUMENT

### A.   The First-to-File Rule Applies.

As noted above, (1) where another action was filed first; (2) where the parties are similar in both actions; and (3) and where the issues are similar in both actions, the first-to-file rule applies. *Alltrade, Inc.*, 946 F.2d at 625-26. Here, all three factors are met.

#### 1.   *Capdeville* Was Filed First.

Under the first-to-file rule, "the date on which the original . . . complaint was filed" governs. *Guthy-Renker Fitness*, 179 F.R.D. at 270. The *Capdeville* complaint was filed on December 30, 2022, 54 days prior to the filing of the *Grove* complaint. [*Compare Capdeville* Complaint *with* Dkt. 1.] Therefore, the first factor under the first-to-file rule is met.

#### 2.   The Parties Are Substantially Similar.

"[T]he first-to-file rule does not require exact identity of the parties," only that they be "substantially similar." *Kohn Law Grp., Inc.*, 787 F.3d at 1240 (collecting cases). Here, Capdeville and the Grove assert claims against a common defendant—Southwest—and seek to represent substantially overlapping nationwide classes concerning the same set of events and alleged injuries.

Capdeville seeks to represent "[a]ll persons in the United States who purchased tickets for travel on a Southwest Airlines flight scheduled to operate from December 24, 2022 through the date of the class certification order, whose flight(s) were canceled by Southwest, and who were not provided a refund or reimbursed for incurred expenses as a result of the cancellation." [*Capdeville* Complaint, ¶ 24.] Grove seeks to represent a nearly identical class. [Dkt. No. 1, ¶ 77 (defining class as "All persons in the United States who purchased tickets for travel on a Southwest

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

Airlines flight scheduled to operate notably from June 2020 through the date of certification but including the time period allowed by the statute of limitations, and that flight was delayed or cancelled, and who were not provided a refund and reimbursed for incurred expenses as a result of the cancellation.").]

Because both *Capdeville* and *Grove* are putative class actions, the fact that the named plaintiffs differ is irrelevant. Most California courts apply "the more widely accepted rule of comparing the putative classes even prior to certification." *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1295 (N.D. Cal. 2013). In other words, "[i]n a class action, the similarity of the classes, and not the class representatives, is assessed." *White v. Home Depot U.S.A., Inc.*, No. 22-CV-00276-AJB-AGS, 2022 WL 2489346, at *6 (S.D. Cal. July 6, 2022).

Additionally, the two proposed classes need not be identical for the first-to-file rule to apply. As this Court observed, "[t]he rule is satisfied if some of the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters." *Id.*; *see also Booker v. Am. Honda Motor Co.*, No. 2:20-CV-05166-SVW, 2020 WL 7263538, at *2 (C.D. Cal. Oct. 20, 2020) ("Exact identity of the proposed classes is not required … and the rule is satisfied as long as both classes seek to represent at least some of the same individuals.").

Here, Capdeville and Grove seek to represent some, if not most, of the same individuals. Indeed, although the *Grove* and *Capdeville* class definitions include nominally different date ranges, the allegations present in each complaint primarily concern the same December 24 to January 2, 2022 time period (and thus the same set of allegedly affected customers). [*Compare Capdeville* Complaint, ¶ 24 *with* Dkt. No. 1, ¶ 77.]. In fact, Grove himself falls within *Capdeville's* proposed class definition and his individual allegations concern the same set of events. [*See* Dkt. No. 1, ¶¶ 9 - 12 (alleging that his Southwest flight was cancelled and that he incurred unreimbursed expenses as a result of same)]; *see also Montijo v. Amazon.com Servs. LLC*, No. 122CV00084ADASAB, 2022 WL 16702134, at *7 (E.D. Cal. Nov. 3,

2022), *report and recommendation adopted*, No. 122CV00084ADASAB, 2022 WL 17722873 (E.D. Cal. Dec. 15, 2022) (applying first-to-file rule where "Plaintiff is an individual that would qualify as a member of a proposed class in the earlier-filed putative class action.").]

In short, the parties in the *Capdeville* and *Grove* Actions are "substantially similar," and the second factor of the first-to-file rule is met.

### 3. The Issues Are Substantially Similar.

Like the similarity of the parties, "[t]he issues in both cases…need not be identical, only substantially similar." *Kohn Law Grp.*, 787 F.3d at 1240-1241. So long as there is "substantial overlap between the two suits," the rule applies. *Id.* Both actions undeniably arise out of the same nucleus of operative facts: the flight disruptions that impacted Southwest in the Winter of 2022. [*Capdeville* Complaint, ¶ 5; Dkt. No. 1, ¶ 60.] Additionally, Capdeville and Grove bring similar state-law claims against Southwest. They assert the exact same breach-of-contact claim. [*Compare Capdeville* Complaint, Count I – Breach of Contract *with* Dkt. No. 1, Count I - Breach of Contract).] And although cast as different causes of action, Capdeville's redhibition cause of action and Grove's breach-of-contract and other claims claim seek the exact same relief. [*Compare Capdeville* Complaint, ¶ 25 (seeking under redhibition claim "return of the price of the ticket when it was paid plus interest from the time paid, the reimbursement of reasonable expenses occasioned by the sale and also for damages and attorney fees") *with* Dkt. No. 1, ¶¶ 95, REQUEST FOR RELIEF (seeking under her breach-of-contract claim "refunds" for cancelled flights and also seeking "attorneys' fees and costs").] Indeed, regardless of the causes of action asserted, in both actions, plaintiffs seek the same relief (compensatory damages, including the cost of the tickets purchased; equitable relief (i.e., specific performance and/or injunctive relief); and reasonable attorneys' fees and costs) on behalf of the same individuals. [*Compare Capdeville* Complaint, Prayer for Relief *with* Dkt. No. 1, REQUEST FOR RELIEF.]

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

Finally, if the Court were to decline to apply the first-to-file rule here, "[j]udicial efficiency"—the ultimate goal of the first-to-file rule—"would not be served." *Pacesetter Sys., Inc.*, 678 F.2d at 96 (affirming dismissal because "the goal of judicial efficiency would not have been served by accepting jurisdiction" over the second-filed action). As this Court stated, "'[e]fficiency is lost, and judicial resources are wasted' where," as here, "multiple actions, comprised of substantially similar claims and parties, continue simultaneously." *White*, 2022 WL 2489346, at *7 (quoting *Treasure Garden, Inc. v. Red Star Traders, LLC*, No. CV 12-0857, 2013 WL 12121989, at *5 (C.D. Cal. Apr. 1, 2013)).[4]

## B. The Court Should Dismiss This Action without Prejudice.

"The district court has the discretion to *transfer, stay, or dismiss an action* once it finds that the first-to-file rule applies." *HiTherm, LLC v. Victaulic Co.*, No. 8:22-00924-ADS, 2022 WL 19239750, at *4 (C.D. Cal. July 7, 2022) (emphasis added). "When evaluating which option [under the first-to-file rule] is appropriate, 'courts should be driven to maximize 'economy, consistency, and comity.''" *Gatlin v. United Parcel Serv., Inc.*, No. 2:18-CV-03135-SVW-AS, 2018 WL 10161198, at *6 (C.D. Cal. Aug. 23, 2018) (quoting *Kohn Law Grp.*, 787 F.3d at 1240).] The Ninth Circuit has looked to the following factors in favoring dismissal over a transfer or stay: "(1) neither the first nor second-filed action ha[s] proceeded past the pleading stage; (2) no apparent bar exist[s] to a second-filing party's presentation of its claims and defenses in the first-filed action; and (3) the first-filed forum [i]s capable of efficiently resolving all issues." *HiTherm, LLC*, 2022 WL 19239750, at *4 (quoting *Ruckus Wireless, Inc. v. Harris Corp.*, No. 11-CV-01944-LHK, 2012 WL 588792, at

---

[4] Although there are a few, narrow exceptions to the first-to-file rule, including "when the filing of the first suit evidences bad faith, anticipatory suit, or forum shopping," *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006), or when the "second-filed matter has proceeded far beyond a first-filed matter, such that it becomes impractical to dismiss or stay the [second]-filed matter," *Intersearch*, 544 F. Supp. 2d at 963, none of those exceptions apply here. Southwest did not file the *Capdeville* action, and the *Capdeville* action has proceeded further than this action.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

*6 (N.D. Cal. Feb. 22, 2012)).

Here, all three factors favoring dismissal are met. First, neither *Capdeville* nor this action has "proceeded past the pleading phase." A motion to dismiss is pending in the *Capdeville* action, and Southwest has not yet filed a responsive pleading in this action. Second, there is no "apparent bar" to Grove presenting his claims in the *Capdeville* action. Indeed, as a class member in the *Capdeville* action, Grove's claims are actively being litigated. Third, there is no reason why the Eastern District of Louisiana cannot "efficiently resolv[e] all issues" in the actions.

Additionally, consistent with the first-to-file rule's purpose, dismissal is the most efficient course of action. It prevents Southwest from having to litigate nearly identical claims arising out of the same cancellations brought on behalf of nearly identical classes while also allowing Grove's interests to be represented and protected as a putative class member in the *Capdeville* action. This action should be dismissed pursuant to the first-to-file rule. *See Pacesetter Sys., Inc*, 678 F.2d at 96 (affirming dismissal under first-to-file rule of second-filed action and "agree[ing] with the district court that the goal of judicial efficiency would not have been served by accepting jurisdiction"); *see also Ward v. Follett Corp.*, 158 F.R.D. 645, 650 (N.D. Cal. 1994) (invoking the first-to-file rule to dismiss a case "without prejudice to any motion to transfer based on convenience made in the" court in which the first-filed complaint had been filed).

## C. Alternatively, This Court Should Transfer the *Grove* Action to the Eastern District of Louisiana.

Should the Court opt not to dismiss the case, transfer is the next best course. It allows the court in *Capdeville* to determine, in the first place, "if the cases should be consolidated or otherwise," *Montijo*, 2022 WL 17722873, without risking the very real possibility of conflicting rulings should dismissal or transfer not occur, *Zerez Holdings Corp. v. Tarpon Bay Partners, LLC*, No. 2:17-CV-00029-TLN-DB, 2018 WL 402238, at *6 (E.D. Cal. Jan. 12, 2018) (stating that "[i]f the [earlier-filed] Action

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

1    were allowed to run parallel in the District of Connecticut with the instant action

2    proceeding in this Court, wasting judicial resources is unavoidable and the risk of

3    'the embarrassment of conflicting judgments' is immediately obvious"). Finally, at

4    the very least, absent dismissal or transfer, a stay of this action until *Capdeville* is

5    resolved is appropriate.

6    **V.**    **CONCLUSION**

7        For these reasons, this Court should dismiss this action under the first-to-file

8    rule. Alternatively, this Court should transfer this action to the Eastern District of

9    Louisiana, where the *Capdeville* action is pending, or stay the action pending final

10    resolution of *Capdeville*.

11

12    Dated: June 16, 2023             **BAKER & HOSTETLER LLP**

13

14                        By: */s/ Matthew D. Pearson*

15                           Matthew D. Pearson
                               Casie D. Collignon

16                           Alexander Vitruk

17                           *Attorneys for Defendant*
                          *Southwest Airlines Co.*

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

1  Matthew D. Pearson, Bar No. 294302
   *mpearson@bakerlaw.com*
2  **BAKER & HOSTETLER LLP**
   600 Anton Blvd, Suite 900
3  Costa Mesa, California 92626-7221
   Telephone:  714.754.6600
4  Facsimile:   714.754.6611

5  Alexander Vitruk, Bar No. 315756
   *avitruk@bakerlaw.com*
6  **BAKER & HOSTETER LLP**
   999 Third Avenue, Suite 3900
7  Seattle, Washington 98104
   Telephone:  206.332.1380
8  Facsimile:   206.624.7317

9  Attorneys for Defendant
   SOUTHWEST AIRLINES CO.
10

11              **UNITED STATES DISTRICT COURT**

12            **SOUTHERN DISTRICT OF CALIFORNIA**

13

14 | MATT GROVE, individually and on behalf of all others similarly situated, | Case No.: 3:23-cv-00306-AJB-BLM |

15                 Plaintiff,                  **DECLARATION OF MATTHEW D. PEARSON IN SUPPORT OF**

16            v.                               **MOTION TO DISMISS, TRANSFER, OR STAY UNDER THE FIRST-TO-FILE RULE**

17 SOUTHWEST AIRLINES CO., a
   Delaware Corporation; and DOES 1
18 through 100, inclusive,                     **[Filed Concurrently with Motion; (Proposed) Order]**

19                 Defendant.

20                                             Hearing Date: August 21, 2023
                                               Hearing Time: 2:00 p.m.
21                                             Location: 211 West Broadway
                                                         San Diego, CA  92101
22                                                        Courtroom 4A
                                               Floor: 4th Floor
23

24                                             Action Filed:      February 15, 2023
25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

## DECLARATION OF MATTHEW D. PEARSON

I, Matthew D. Pearson, declare as follows:

1.     I am an attorney at law duly licensed to practice before all the Courts of the State of California.  I am a partner at the law firm of Baker & Hostetler LLP, counsel of record for Defendant Southwest Airlines Co. ("Southwest").  I have personal knowledge of the facts set forth herein except as to those facts that are asserted on information and belief, and, as to those facts, I believe them to be true. If called as a witness, I could and would testify competently as follows:

2.     I make this declaration in Support of Southwest's concurrently filed Motion to Dismiss, Transfer, or Stay under the First-to-File Rule ("Motion").

### *Capdeville* Action

3.     On December 30, 2022, Eric Capdeville filed suit against Southwest in the United States District Court for the Eastern District of Louisiana, Case No. 2:22-cv-05590-DJP-KWR.

4.     A true and correct copy of the docket sheet from the *Capdeville* Action is attached hereto as Exhibit 1.

5.     A true and correct copy of the Complaint filed in the *Capdeville* Action is attached hereto as Exhibit 2.

### MDL Motion

6.     On May 30, 2023, Plaintiff Mary Smith filed with the United States Judicial Panel on Multidistrict Litigation her MDL Motion, seeking an order to "transfer the related actions" "and any subsequently filed tag-along actions or related actions, to the Southern District of California for coordinated or consolidated proceedings."

7.     The MDL is titled *In re: Southwest Airlines Co. Flight Disruption Litigation*, MDL No. 3082.

8.     A  true and correct copy of the MDL Motion is attached hereto as Exhibit 3.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

**Meet-and-Confer Efforts**

9.      On June 12, 2023, I sent counsel for Plaintiff Matt Grove ("Plaintiff") an email, stating that "[a]s previously discussed, Southwest plans to file shortly a motion to dismiss, transfer, or stay the *Grove* Action pursuant to the first-to-file rule." In that email, I further stated that "Southwest will be seeking:

     o    An order dismissing the case pursuant to the first-to-file rule;

     o    In the alternative, an order transferring the case to the Eastern District of Louisiana (where the first-filed *Capdeville* action is pending); or

     o    In the alternative, an order staying the case pending resolution of the *Capdeville* action."

10.     I concluded my June 12, 2023 email, stating: "If you would like to discuss over the phone, please just let me know."

11.     Not having received a response from counsel for Plaintiff, I sent, on June 13, 2023, a follow-up email and attached my original June 12, 2023 email.

12.     As of the filing of this Declaration, I have not received a response from counsel for Plaintiff regarding Southwest's Motion or my offer to engage in a telephonic meet-and-confer call prior to filing the Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 16th day of June, 2023 at Costa Mesa, California.

*/s/ Matthew D. Pearson*
Matthew D. Pearson

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

- 2 -

# Exhibit Index

| EXHIBIT | DOCUMENT |
|---|---|
| **1.** | *Capdeville* Docket |
| **2.** | *Capdeville* Complaint |
| **3.** | *In re: Southwest Airlines Co. Flight Disruption Litigation*, MDL No. 3082 Motion |

Case 3:23-cv-03836-B Document 11-8 Filed 06/16/23 PageID.20 of 157 Page 1 of 4

# Exhibit 1

CLASS_REQUESTED

# U.S. District Court
## Eastern District of Louisiana (New Orleans)
## CIVIL DOCKET FOR CASE #: 2:22-cv-05590-DJP-KWR

Capdeville v. Southwest Airlines Co                     Date Filed: 12/30/2022
Assigned to: Judge Darrel James Papillion                Jury Demand: Plaintiff
Referred to: Magistrate Judge Karen Wells Roby           Nature of Suit: 190 Contract: Other
Cause: 28:1332 Diversity-Other Contract                  Jurisdiction: Diversity

**Plaintiff**

**Eric F Capdeville**                     represented by   **Jim S. Hall**
*on behalf of himself and all others similarly*          Jim S. Hall & Associates
*situated*                                                800 N. Causeway Blvd.
                                                          Suite 100
                                                          Metairie, LA 70001
                                                          (504) 832-3000
                                                          Email: jodi@jimshall.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Matthew B. Moreland**
                                                          Jim S. Hall & Associates
                                                          800 N. Causeway Blvd.
                                                          Suite 100
                                                          Metairie, LA 70001
                                                          504-832-3000
                                                          Email: mmoreland@jimshall.com
                                                          *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Southwest Airlines, Co.**              represented by   **Michael Raudon Phillips**
                                                          Kean Miller LLP (New Orleans)
                                                          First Bank & Trust Tower
                                                          909 Poydras Street
                                                          Suite 3600
                                                          New Orleans, LA 70112
                                                          504-620-3343
                                                          Fax: 504-599-8125
                                                          Email: mike.phillips@keanmiller.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Jeffrey Joseph Gelpi**
                                                          Kean Miller LLP
                                                          909 Poydras Street

Exhibit 1 Page 1

Suite 3600
New Orleans, LA 70112
504-620-3365
Fax: 504-585-3051
Email: jeff.gelpi@keanmiller.com
*ATTORNEY TO BE NOTICED*

**Karli Glascock Johnson**
Kean Miller, LLP (Baton Rouge)
II City Plaza
400 Convention St.
Suite 700
PO Box 3513 (70821-3513)
Baton Rouge, LA 70802
225-387-0999
Email: karli.johnson@keanmiller.com
*ATTORNEY TO BE NOTICED*

**Robert Devin Ricci**
Kean Miller LLP
909 Poydras Street
Ste 3600
New Orleans, LA 70112
504-585-3050
Fax: 504-585-3051
Email: devin.ricci@keanmiller.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/30/2022 | 1 | COMPLAINT with jury demand against Southwest Airlines, Co. (Filing fee $ 402 receipt number ALAEDC-9725245) filed by Eric Capdeville. (Attachments: # 1 Civil Cover Sheet)Attorney Matthew B. Moreland added to party Eric Capdeville(pty:pla).(Moreland, Matthew) (Entered: 12/30/2022) |
| 12/30/2022 | 2 | Initial Case Assignment to Judge Jay C. Zainey and Magistrate Judge Karen Wells Roby. (mb) (Entered: 12/30/2022) |
| 01/04/2023 | 3 | ORDER OF RECUSAL. Judge Jay C. Zainey recused. Case reassigned to Judge Ivan L.R. Lemelle. Signed by Judge Jay C. Zainey on 1/3/2023.(mmm) (Entered: 01/04/2023) |
| 02/10/2023 | 4 | Request of Summons Issued as to Southwest Airlines, Co. filed by Eric F Capdeville re 1 Complaint,. (Moreland, Matthew) (Entered: 02/10/2023) |
| 02/10/2023 | 5 | Summons Issued as to Southwest Airlines, Co. (pp) (Entered: 02/10/2023) |
| 03/16/2023 | 6 | WAIVER OF SERVICE Returned Executed; waiver sent to Southwest Airlines, Co. on 3/1/2023, answer due 5/1/2023. (Moreland, Matthew) (Entered: 03/16/2023) |
| 05/01/2023 | 7 | EXPARTE/CONSENT MOTION for Extension of Time to Answer re 1 Complaint, by Southwest Airlines, Co.. (Attachments: # 1 Proposed Order)Attorney Jeffrey Joseph Gelpi added to party Southwest Airlines, Co.(pty:dft).(Gelpi, Jeffrey) (Entered: 05/01/2023) |
| 05/01/2023 | 8 | Statement of Corporate Disclosure by Southwest Airlines, Co. (Gelpi, Jeffrey) (Entered: 05/01/2023) |

Exhibit 1 Page 2

| 05/02/2023 | 9 | ORDER granting 7 Motion for Extension of Time to Answer as to Southwest Airlines, Co. Answer due 5/22/2023. Signed by Judge Ivan L.R. Lemelle on 5/2/23. (cg) (Entered: 05/02/2023) |
|---|---|---|
| 05/22/2023 | 10 | MOTION to Dismiss for Failure to State a Claim by Southwest Airlines, Co.. Motion(s) will be submitted on 6/7/2023. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Notice of Submission)(Gelpi, Jeffrey) (Entered: 05/22/2023) |
| 05/23/2023 | 11 | NOTICE: Scheduling Conference set for 6/8/2023 at 10:00 AM before case manager by telephone. All parties are to call into the conference call at 1-888-278-0296, Access Code: 6243426. Issued by Clerk. (dw) (Entered: 05/23/2023) |
| 06/02/2023 | 12 | NOTICE: The scheduling conference set for June 8, 2023, at 10:00 a.m. is hereby CONTINUED, to be reset at a later date. Issued by Clerk on 6/2/2023. (dw) (Entered: 06/02/2023) |
| 06/09/2023 | 13 | ORDER TRANSFERRING CASE. Case transferred to Judge Darrel James Papillion. Judge Ivan L.R. Lemelle no longer assigned to case. Signed by Chief Judge Nannette Jolivette Brown on 06/08/2023.(go) (Entered: 06/09/2023) |
| 06/13/2023 | 14 | EXPARTE/CONSENT Joint MOTION to Continue Submission date re rec. doc. 10 by Eric F Capdeville, Southwest Airlines, Co. (Attachments: # 1 Proposed Order)(Moreland, Matthew) Modified on 6/14/2023 (ko). (Entered: 06/13/2023) |
| 06/14/2023 | 15 | ORDER granting 14 Joint MOTION to Continue Submission date as to 10 MOTION to Dismiss for Failure to State a Claim. Motion(s) will be submitted on 7/12/2023. Signed by Judge Darrel James Papillion on 06/14/2023.(ko) (Entered: 06/14/2023) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/16/2023 13:51:48 | | | |
| **PACER Login:** | matt25pearson | **Client Code:** | 39460.69 |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cv-05590-DJP-KWR |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

Exhibit 1 Page 3

# Exhibit 2

# IN THE UNITED STATES DISTRICT COURT FOR THE FOR THE EASTERN DISTRICT OF LOUISIANA

ERIC F. CAPDEVILLE,
on behalf of himself and all
others similarly situated

CASE NO.

Plaintiff,

SECTION:

v.

SOUTHWEST AIRLINES CO.,

**JURY TRIAL DEMANDED**

Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff, ERIC F. CAPDEVILLE ("Capdeville" or "Plaintiff"), on behalf of himself and all others similarly situated, by and through undersigned counsel, files this Class Action Complaint against Southwest Airlines Co ("Southwest" or "Defendant"), and alleges the following:

### INTRODUCTION

1.      Southwest Airlines Company ("Southwest") became the nation's largest domestic air carrier in 2003 and maintains that ranking based on the U.S. Department of Transportation's most recent reporting of domestic originating passengers boarded.

2.      In its 49th year of service, Dallas-based Southwest serviced over 130 million passengers annually.

3.      In peak travel seasons, Southwest operates more than 4,000 weekday departures among a network of 102 destinations in the United States and 10 additional countries.

Exhibit 2 Page 4

4.     Southwest does not sell airline tickets on any third-party global distribution platform, requiring all customers to purchase directly from Southwest whether it be through its website or by calling a Southwest booking line to make a reservation.

**System Failures Impacts on Southwest's Operations**

5.     Beginning Friday, December 23, 2022, Southwest Airlines began cancelling flights nationwide blaming the failure on a weather-driven issue.  Subsequently, Southwest continued to cancel flights blaming weather through Wednesday, December 28, 2022 resulting in more than 14,500 flights cancelled since the prior Friday.  Wednesday, December 28, 2022 alone Southwest cancelled 2500 flights.  Southwest CEO Bob Jordan confirmed the airline needed to upgrade its legacy systems.  The Department of Transportation also confirmed that the cancellations came about as a result of Southwest's decision and actions.

6.     Southwest's response to the internally created crisis was to suggest customers could submit receipts for flight cancellations from December 24, 2022 through January 2, 2023 for consideration reimbursement.

7.     Southwest's Contract of Carriage mandates refunds in this situation as well as full compensation for incurred costs and resultant cancellations for the failure of the carriage contract.

8.     Southwest's failure to provide prompt refunds for canceled flights violates

not only its own Contract of Carriage, but also federal law.

Exhibit 2 Page 5

**PARTIES, JURISDICTION, AND VENUE**

9.      ERIC F. CAPDEVILLE is a Louisiana citizen who resides in Marrero, Louisiana, Parish of Jefferson.

10.      Defendant is a Texas for-profit corporation having its principal place of business in Dallas, Texas.

11.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendant.

12.      Venue is proper in this Court pursuant to 28 U.S.C. §1391, because this is the judicial district in which a substantial part of the events giving rise to the claims asserted herein occurred.

**GENERAL ALLEGATIONS**

13.      On or about October 10, 2022, Plaintiff purchased two tickets for travel Tuesday, December 27, 2022 from New Orleans, Louisiana (MSY) to Portland, Oregan (PDX) for himself and his daughter, which included a connecting flight to Pheonix, Arizona (PHX) (the "Trip") through Southwest Airlines.

14.      Prior to departing Plaintiff checked saw the news that thousands of flights had been cancelled by Southwest Airlines.  Upon checking, he confirmed that his Southwest flight had been cancelled and hos reservations and stay in Portland would be lost without reimbursement.

Exhibit 2 Page 6

15.     After speaking to customer service Capdeville confirmed that in fact Plaintiff's flights had been canceled.

16.     Despite the fact that Plaintiff could not take the flight he booked, and Defendant could not offer any comparable accommodations on another flight, Plaintiff was not given a refund, but was only offered a credit for use on a future flight.

17.     Every Southwest passenger air travel ticket incorporates by reference (including in some cases by hyperlink) and is governed by Southwest's Contract of Carriage.  Southwest drafted the Contract of Carriage.

18.     Section 9 of the Contract of Carriage governs in a situation where the Carrier cancels a flight, as was the case for Plaintiff and other Class members. Specifically, with respect to Service Interruptions, the Contract of Carriage states:

a. Failure to Operate as Scheduled

> (1) Canceled Flights or Irregular Operations. In the event Carrier cancels or fails to operate any flight according to Carrier's published schedule, or changes the schedule of any flight, Carrier will, at the request of a Passenger with a confirmed Ticket on such flight, take one of the following actions:
>
> > (i) Transport the Passenger at no additional charge on Carrier's next flight(s) on which space is available to the Passenger's intended destination, in accordance with Carrier's established reaccommodation practices; or
> >
> > (ii) Refund the unused portion of the Passenger's fare in accordance with Section 4c.

19.     Section 4(c)(4) specifies that the refused for the "unused transportation" must be "in accordance with the form of payment utilized for the Ticket."

Exhibit 2 Page 7

20.     Further, under Southwest's Customer Service Commitment and 14 C.F.R. § 259.5, which are both incorporated into the Contract of Carriage, Southwest reiterates that "in the event a flight is delayed, canceled, or diverted" by Southwest, the airline will provide one of two options to customers: (1) rebooking on the next available Southwest flight(s) with seats available to the customer's ticketed destination, or (2) a "refund of the unused portion of your Southwest ticket."

21.     Both Section 9 of the Contract of Carriage and paragraph 12 of the Customer Service Commitment clearly provide for either rebooking or a refund in the event that Southwest cancels a flight. Neither provision provides for any "credit" for use on a future Southwest flight.

22.     Paragraph 5 of the Customer Service Commitment further provides that refunds are to be issued within seven business days from the date of a refund request for tickets purchased with a credit card, and within 20 days of a refund request for tickets purchased with cash.

23.     Plaintiff was not given the choice of being transported on the next available flight at no additional charge. His flight was canceled and there were no alternative Southwest flights to accommodate him from the Trip's origin to his destination. He had not used any portion of the ticket for his Trip. Thus, pursuant to the terms of the Contract of Carriage, Plaintiff is entitled to a refund of the fare for the entire Trip in U.S. Dollars to his original form of payment.

**CLASS ACTION ALLEGATIONS**

24.     Pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2) and (b)(3), as applicable, Plaintiff seeks certification of the following nationwide class (the "Class"):

All persons in the United States who purchased tickets for travel on a Southwest Airlines flight scheduled to operate from December 24, 2022 through the date of a class certification

Exhibit 2 Page 8

order, whose flight(s) were canceled by Southwest, and who were not provided a refund and reimbursed for incurred expenses as a result of the cancellation.

25.     Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff, and any Judge sitting in the presiding court system who may hear an appeal of any judgment entered.

26.     Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

27.     The Class meets the criteria for certification under Rule 23(a), (b)(1), (b)(2), (b)(3) and (c)(4).

28.     **Risk of Inconsistent or Varying Adjudications. Fed. R. Civ. P. 23(b)(1).** As the proposed class members include thousands of persons across all 50 states, there is significant risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendant. For example, declaratory relief may be entered in multiple cases, but the ordered relief may vary, causing the Defendant to have to choose the court order with which it will comply.

29.     **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of class members is unknown to Plaintiff at this time, it is believed that the Class is comprised of tens of thousands if not hundreds of thousands of members geographically dispersed throughout the United States. Affected consumer's names and addresses

Exhibit 2 Page 9

are available from Southwest's records, and class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include electronic mail, U.S. Mail, internet notice, and/or published notice.

30. **Predominance of Common Issues. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual class members. The common questions include:

a. Whether Defendant's conduct breaches its Contract of Carriage;

b. Whether Defendant is required to give a refund and reimburse all related expenses as a result of the cancellations, rather than credit on a future flight when it cancels a flight and cannot reaccommodate the passengers within a reasonable time of the original flight schedule;

c. Whether Plaintiff and members of the Class are entitled to damages, costs, or attorneys' fees from Defendant; and

d. Whether Plaintiff and members of the Class are entitled to compensatory damages.

31. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of other Class members' claims because Plaintiff and Class members were subjected to the same unlawful conduct and damaged in the same way. Defendant's conduct that gave rise to the claims of Plaintiff and other Class members (i.e., canceling flights without giving refunds in breach of the Contract of Carriage) is the same for all Class members.

Exhibit 2 Page 10

32.    **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in litigating consumer claims. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of the Class.

33.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs and class members may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class members are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Moreover, individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

34.    **Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a

Exhibit 2 Page 11

whole. Moreover, Defendant continues to offer credits instead of refunds to Plaintiff and Class members for flights that they cancel, thus making declaratory relief a live issue and appropriate to the Class as a whole.

## COUNT I - BREACH OF CONTRACT

35.     Plaintiff realleges and reincorporates its allegations in paragraphs 1 through 34 above as if fully set forth herein.

36.     This claim for breach of contract damages or, in the alternative, specific performance of the contract's refund terms, is based on Defendant's breaches of its Contract of Carriage, including its Customer Service Commitment (the "Contract").

37.     Plaintiff, along with all putative class members, entered into a Contract with Defendant for provision of air travel in exchange for payment. This Contract was drafted by Defendant.

38.     Plaintiff, and all putative class members performed under the Contract, specifically, by tendering payment for the airline tickets to Defendant and complied with all conditions precedent under the Contract.

39.     Due to Defendant's cancellation of their flights, Plaintiff, and all putative class members cannot use their airline tickets through no fault of their own and they are not getting the benefit of their bargain with Defendant.

40.     Under the terms of the Contract of Carriage drafted by Defendant, Plaintiff and putative class members are entitled to refunds because Southwest canceled their flights and did

Exhibit 2 Page 12

not rebook the customers on another flight. By failing to provide refunds, Southwest has breached its Contract of Carriage.

41.　Southwest has further breached its Contract of Carriage by failing to provide refunds within seven days for canceled tickets purchased with credit cards.

42.　As a result of Defendant's breaches of contract, Plaintiff and the putative class members have incurred damages in an amount to be proven at trial.

## COUNT II - REDHIBITION

43.　Plaintiff realleges and reincorporates its allegations in paragraphs 1 through 42 above as if fully set forth herein.

44.　This claim for Redhibition under Louisiana Civil Code Article 2520, et seq. is also based on Defendant's breaches of its Contract of Carriage.

45.　Under the law of Redhibition, Southwest is liable for return of the price of the ticket when it was paid plus interest from the time paid, the reimbursement of reasonable expenses occasioned by the sale and also for damages and attorney fees.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all putative Class members, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

1. For an Order determining at the earliest possible time that this matter may proceed as a class action under Rule 23 and certifying this case as such;

Exhibit 2 Page 13

3. For himself and each Class member their actual compensatory damages, or in the alternative, for specific performance of the refund provisions of the Contract of Carriage;

4. For reasonable attorneys' fees and costs of suit;

5. For pre-judgment interest and interest pursuant to redhibition; and

6. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff, on behalf of himself and the Class of all others similarly situated, hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: December 30, 2022

Respectfully Submitted:

**JIM S. HALL & ASSOCIATES**, LLC.

_/s/ Matthew B. Moreland_
**JIM S. HALL (Bar No.: 21644)**
Jodi@jimshall.com
**MATTHEW B. MORELAND** (#24567)
Mmoreland@jimshall.com
800 N. Causeway Blvd., Suite #100
Metairie, Louisiana 70001
Telephone: 504-832-3000
Facsimile: 504-832-1799

*Counsel for Plaintiff and the Proposed Class*

Exhibit 2 Page 14

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Eric F. Capdeville

## DEFENDANTS

Southwest Airlines Company

**(b)** County of Residence of First Listed Plaintiff  Jefferson
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Matthew Moreland, Jim Hall and Associates, LLC, 800 N.
Causeway Blvd., Metairie, LA 70001

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government
  Plaintiff
- [ ] 2  U.S. Government
  Defendant
- [ ] 3  Federal Question
  *(U.S. Government Not a Party)*
- [x] 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [x] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(d)

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

- [x] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE
12/30/2022

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

Exhibit 2 Page 15

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Exhibit 2 Page 16

Case 3:25-cv-00754-BLM Document 12-58 Filed 06/06/25 PageID.1538 Page 1 of 120

# Exhibit 3

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| | ) | |
| IN RE SOUTHWEST AIRLINES CO. | ) | MDL DOCKET NO. _____ |
| FLIGHT DISRUPTION LITIGATION | ) | |
| | ) | |

## MOTION OF PLAINTIFF FOR TRANSFER OF ACTIONS TO THE SOUTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Plaintiff (hereinafter "Movant") in the matter *Smith v. Southwest Airlines Co.*, Case No. 3-23cv754-AJB-BLM (S.D. Cal. 2023) respectfully moves this Panel, pursuant to 28 U.S.C. § 1407 to transfer the related actions, identified in the Schedule of Actions accompanying this motion and any subsequently filed tag-along actions or related actions ("Actions"), to the Southern District of California for coordinated or consolidated pretrial proceedings. The Southern District of California is the most logical and well-equipped District to address the class claims in the Actions. For the reasons set forth herein and in Movant's accompanying Brief in Support, Movant respectfully requests that this Panel transfer the Actions to the Southern District of California for coordinated or consolidated pretrial proceedings.

Dated: <u>May 30, 2023</u>

By: <u>  /s/  Francis J. Flynn, Jr.  </u>
Francis J. "Casey" Flynn, Jr., CA #304712
**LAW OFFICE OF FRANCIS J. FLYNN, JR.**
6057 Metropolitan Plz
Los Angeles, California 90036
Tele: 314-662-2836
Fax: (855) 710-7706
Email: casey@lawofficeflynn.com
             francisflynn@gmail.com

**PLAINTIFFS' COUNSEL IN MARY
SMITH V. SOUTHWEST AIRLINES, INC.,
NO. 3:23-CV-00754-AJB-BLM (S.D. CAL.)**

1

Exhibit 3 Page 17

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **IN RE SOUTHWEST AIRLINES CO.** | ) | MDL DOCKET NO. _____ |
| **FLIGHT DISRUPTION LITIGATION** | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFF FOR
TRANSFER OF ACTIONS TO THE SOUTHERN DISTRICT OF CALIFORNIA
PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED
PRETRIAL PROCEEDINGS**

Exhibit 3 Page 18

## INTRODUCTION AND BACKGROUND

Plaintiff (hereinafter "Movant") in the matter *Mary Smith v. Southwest Airlines Co.,* No. 23cv754-AJB-BLM (S.D. Cal. 2023) respectfully submits this Memorandum of Law in support of Movant's Motion pursuant to 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation to transfer and consolidate the related actions and yet-to-be filed federal class actions to the United States District Court for the Southern District of California before the Honorable United States District Court Judge Anthony J. Battaglia. This District Court is the most logical and well-equipped District to address the overlapping (but not identical) class claims in each action, all of which have been brought on behalf of a class for Breach of Contract. *Smith* and *Grove* also bring claims for Breach of the Covenant of Good Faith and Fair Dealing, Bailment, Injunctive Relief, and Declaratory Relief; while *Hill/Pena* bring a claim for Violation of the California Business and Professions Code § 17200, *et seq.* ("Unfair Competition"). The *Capdeville* Action brings a second claim for Redhibition.

*Hill/Pena* brings the class action on behalf of:

"[…] all California family members and persons ("the Class") who purchased Southwest Airlines tickets for a flight into a California airport, a flight out of a California airport, or a flight between California airports for travel during the period December 22, 2022, to January 3, 2023 ("Class Period") where the flight(s) purchased were not delivered and travel disrupted.

*Smith* brings a class action regarding:

All persons in the United States who purchased tickets for travel on a Southwest Airlines flight and that flight was delayed and/or cancelled (including, but not limited to in June 2020, October 2021, and December 24, 2022-January 2, 2022), and who were not provided a refund and/or reimbursed for incurred expenses as a result of the delay and/or cancellation.

All persons in the United States who purchased tickets for travel on a Southwest Airlines flight and that flight was delayed and/or cancelled from December 24, 2022 and January 2, 2022 and who were not provided a refund and/or reimbursed for incurred expenses as a result of the delay and/or cancellation and who checked luggage between December 24, 2022 and January 2, 2022.

Exhibit 3 Page 19

*Grove* brings a class action on behalf of:

All persons in the United States who purchased tickets for travel on a Southwest Airlines flight scheduled to operate notably from June 2020 through the date of certification but including the time period allowed by the statute of limitations, and that flight was delayed or cancelled, and who were not provided a refund and reimbursed for incurred expenses as a result of the cancellation.

*Capdeville* brings a class action on behalf of:

All persons in the United States who purchased tickets for travel on a Southwest Airlines flight scheduled to operate from December 24, 2022 through the date of a class certification order, whose flight(s) were canceled by Southwest, and who were not provided a refund and reimbursed for incurred expenses as a result of the cancellation.

As alleged in the pending cases, *all* of these related actions allege that common defendants – namely Southwest Airlines, Co. (the "Common Defendants") – breached one or more provisions of its contracts, and specifically – as to three of the four actions - the Contract of Carriage and/or the Customer Service Agreement.  (**Exhibit 1 to Schedule of Actions**, *Grove* Complaint, ¶ 90; **Exhibit 3 to Schedule of Actions,** *Smith Complaint*, ¶ 97; **Exhibit 4 to Schedule of Actions,** *Capdeville* Complaint, ¶ 36). *See also*, **Exhibit 2 to Schedule of Actions,** *Hill/ Piña Complaint* (alleging breach of contract generally).  All of the actions arise out of disruptions/cancellations of Southwest's flights that were due to the fault of Southwest Airlines Co.

Movant *Smith* filed Movant *Smith's* Complaint in the Northern District of California on January 22, 2023.  On April 24, 2023, the *Smith* Action was transferred to the Southern District of California pursuant to 28 U.S.C. § 1404 and on May 12, 2023, the case was transferred before Honorable Anthony J. Battaglia pursuant to the Low Number Rule. In addition to Movant's action,

Exhibit 3 Page 20

two (2) additional related cases are currently pending in the Southern District of California[1] and one (1) related case has been filed in the Eastern District of Louisiana[2]. Thus, as of the date of this filing, the majority of cases are pending in California.

California is an appropriate location for the litigation. First, Southwest operates more flights in California than in any other place in the nation, including its home state. Southwest "carried more California travelers to, from and within California than any other airline," according to the airline's 2021 annual report.[3] Furthermore, Southwest is the state's busiest airline, and more of its flights depart from California than from any other state in the nation, including Texas, where the company began.[4] Southwest is the top airline at seven of California's ten busiest airports, accounting for more than half of all air traffic at the airports in Oakland, Sacramento, San Jose, Burbank and Long Beach.[5]

Indeed, "Southwest is almost the unofficial airline of California," Henry Harteveldt, an airlines analyst for Atmosphere Research Group, told my colleague Shawn Hubler after the airline's flight cancellations during the holidays left passengers stranded across the country. In fact, "[t]wo-thirds of all seats for sale on flights within California are on Southwest flights,

---

[1] As set forth in the attached Schedule of Related Actions, the California actions are: *Mary Smith v. Southwest Airlines Co.*, No. 3:23-cv-00754-AJB-BLM (S.D. Cal.) (the *Smith* Action); *Paula Hill and Eva Piña v. Southwest Airlines Co.*, Case No. 3:23-cv-00633-AJB-BLM (the *Hill/ Piña* Action); and *Grove v. Southwest Airlines Co.,* Case No. 3:23-cv-00306-AJB-BLM (the *Grove* Action.) (collectively the "California Actions").

[2] As set forth in the attached Schedule of Related Actions, the Louisiana action is: *Capdeville v. Southwest Airlines Co.*, Case No. 2:22-cv-05590-ILRL-KWR (the "Louisiana Action" or the *Capdeville* Action).

[3] Southwest is California's 'Unofficial Airline.' The Meltdown Has Residents Anxious. New York Times. Available at: https://www.nytimes.com/2022/12/29/us/southwest-california-commuters.html?searchResultPosition=1.

[4] How Southwest Became California's 'Unofficial Airline'. Available at: https://www.nytimes.com/2023/01/03/us/southwest-airline-california.html

[5] https://www.nytimes.com/2023/01/03/us/southwest-airline-california.html

Exhibit 3 Page 21

according to Mike Arnot, a spokesman for Cirium, an aviation analytics company. (United is a very distant second with 13 percent.)"[6] "Southwest is California's busiest airline, with some 800 flights scheduled on peak days, many of which ferry residents between Northern and Southern California."[7]

While Southwest is present in 13 California airports,[8] Southwest is only present in one (1) airport in Louisiana[9] and of the 113 destinations Southwest flies to from Louisiana, 13 are to a California airport.[10] Looking at a sample of only three (3) of the 13 airports Southwest operates in California, it is evident that more people in the nation would have been impacted by the Southwest Airlines flight disruption than in Louisiana. In San Diego, California alone, Southwest operates flights to 95 destinations, one (1) of which is to/from Louisiana.[11] In San Jose, California alone, Southwest operates flights to 100 destinations, one (1) of which is to/from Louisiana.[12] In Los Angeles, California alone, Southwest operates flights to 101 destination, only one (1) of which is to/from Louisiana.[13]

Although Movant does not dispute that Louisiana would have an interest in protecting

---

[6] https://www.nytimes.com/2023/01/03/us/southwest-airline-california.html

[7] *Southwest is California's 'Unofficial Airline.' The Meltdown Has Residents Anxious. New York Times.* https://www.nytimes.com/2022/12/29/us/southwest-california-commuters.html?searchResultPosition=1.

[8] *See*, Southwest Airlines landing page. Available at: www.southwest.com (after typing in "California" to the Depart box.)

[9] *See*, *See*, Southwest Airlines landing page. www.southwest.com (after typing in "Louisiana" to the Depart box.)

[10] *See*, Find the Best Flight Deals with Southwest Airlines, https://www.southwest.com/find-best-flight-deals/?originMarket=MSY

[11] *See*, *Find the Best Flight Deals with Southwest Airlines*, https://www.southwest.com/find-best-flight-deals/?originMarket=SAN

[12] *See*, *Find the Best Flight Deals with Southwest Airlines*, https://www.southwest.com/find-best-flight-deals/?originMarket=SJC

[13] *See*, *Find the Best Flight Deals with Southwest Airlines*, https://www.southwest.com/find-best-flight-deals/?originMarket=LAX

4

Exhibit 3 Page 22

Southwest consumers flight to and from its state, California's interest is larger as the number of Southwest flights disrupted in Louisiana pale in comparison to the number of flights disrupted in California. As to Louisiana: *See*, *Most Southwest flights out of New Orleans canceled or delayed as travel woes continue*.[14] (indicating only 38 flight cancelations as of Tuesday, December 27, 2022 at 8pm.); *see,* "Southwest Airlines flight cancellations cause holiday havoc, but Baton Rouge airport spared" because Southwest doesn't even fly into Baton Rouge.[15] Compare, however, to the flight disruption count on the same day in California (Tuesday, December 27, 2022 at 6pm PT): "[…] 18 outbound Southwest flights — or two-thirds of its services — were canceled at Hollywood Burbank Airport on Tuesday, according to the mobile flight tracker Flightview. John Wayne Airport in Orange County had 51 outbound Southwest flights canceled and seven delayed Tuesday morning, while San Diego saw some of the biggest disruptions, with 89 departing Southwest flights canceled and 28 delayed, according to FlightAware."[16]

Given the extensive overlap of the factual and legal issues involved, Movant respectfully suggests that the Related Actions should be centralized before one court pursuant to 28 U.S.C. §1407, and that the United States District Court for the Southern District of California is the most appropriate transferee forum.

Moreover, none of the Actions have advanced to a point that concerns of judicial economy would outweigh that state's inherent lack of interest in the class claims in dispute. The first-filed case in Eastern District of Louisiana, the *Capdeville* Action, has advanced little, if at all, since

---

[14] Available at: https://www.wwltv.com/article/news/local/orleans/southwest-airlines-canceled-flights-new-orleans/289-e3ec9bd5-183b-4a70-80ab-4e6339fe109b.

[15] *See*, https://www.theadvocate.com/baton_rouge/news/courts/southwest-airlines-flight-debacle-spares-baton-rouge/article_cfdc7934-8608-11ed-8915-2bc1dcfd4085.html.

[16] Stranded Southwest fliers face days of waiting as anger, scrutiny over meltdown grow. Available at: https://www.latimes.com/california/story/2022-12-27/flight-cancellations-and-disruptions-continue-at-airports-across-the-country.

Exhibit 3 Page 23

inception in late December 2022, with Defendant only having recently filed a responsive pleading on May 22, 2023.   *See* **Exhibit 4 to Schedule of Actions**, *Capdeville* Docket Sheet, ECF Doc. No. 10.  Also, no Case Management Hearings have taken place and will not take place until June 8, 2023.  *See, id.,* Dkt. 11.

Because California is undoubtedly the center of gravity of this litigation, and because all Related Actions are in a similar state of procedural advancement, the Related Actions should be consolidated in the Southern District of California.

## ARGUMENT

### I.      Transfer and Consolidation in One District is Appropriate

28 U.S.C. § 1407 provides that "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). This Panel shall order such transfer "upon its determination that transfers for such proceedings will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." *Id.*   The Panel has previously ordered centralization of three or fewer cases. *See In re Wireless Telephone Replacement Protection Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (granting transfer and centralization of three consumer protection cases and determining that pending motions can be presented to and decided by the transferee judge); *In re Philadelphia Life Ins. Co. Sales Practices Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L 2001) (granting transfer of two deceptive insurance sales cases and finding that such transfer would promote the just and efficient conduct of the litigation).

Here, there are a multitude of cases with overlapping questions of law and fact among them, and the convenience of the parties and witnesses and considerations of judicial efficiency, all strongly favor transferring the Related Actions to the Southern District of California for

6

Exhibit 3 Page 24

coordinated or consolidated pretrial proceedings.

### A. The Related Actions Share Common Questions of Law and Fact.

In assessing the appropriateness of consolidation under Section 1407, the Panel looks to the pleadings to determine the extent to which common questions of fact are present. Here, the Related Actions share common questions of law and fact since they allege comparable core allegations against primarily the same defendants based on common transactions and events. "Section 1407 does not," however, "required a complete identity or even a majority of common factual issues as a prerequisite to centralization." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1363 (J.P.M.L. 2014) (quoting *In re Park W. Galleries, Inc., Litig.*, 887 F. Supp. 2d 1385, 1385 (J.P.M.L. 2012)).

The individual complaints in the Related Actions involve many common questions of fact. In the Related Actions, the complaints largely focus on Southwest Airlines Co.'s breaches of its contracts, resulting in flight disruptions and/or baggage delays. In comparing the allegations of the Related Actions, common questions abound, including, but not limited to: (a) whether Southwest Airlines Co. breached its contract with Plaintiff and the Class Members. *See*, **Exhibit 1 to Schedule of Actions**, *Grove* Complaint at ¶ 84(a); **Exhibit 2 to Schedule of Actions**, *Hill/Piña* Complaint at ¶ 16; **Exhibit 3 to Schedule of Actions**, *Smith* Complaint at ¶ 91(a); **Exhibit 4 to Schedule of Actions**, *Capdeville* Complaint at ¶ 30; and (b) whether Plaintiffs and the Class Members are entitled to damages as a result. *See*, **Exhibit 1 to Schedule of Actions**, *Grove* Complaint at ¶. 84(b)-(d); **Exhibit 3 to Schedule of Actions**, *Smith* Complaint at ¶ 91(d)-(f). The *Smith* and *Grove* Actions also share the following common questions of law and fact: Breach of Covenant of Good Faith and Fair Dealing, Violation of Bailment; Injunctive Relief; and Declaratory Relief. *See*, **Exhibit 3 to Schedule of Actions**, *Smith* Complaint at ¶ 91(b)-(c); (g)-(h); *See*, **Exhibit 1 to Schedule of Actions**, *Grove* Complaint at ¶84(d); 99-122.

Exhibit 3 Page 25

The overlap here is sufficient to merit transfer and coordination pursuant to Section 1407. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 237 F. Supp. 2d 1377, 1379 (J.P.M.L. 2002) (to the extent non-common issues arise, transfer can have the "salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that [] allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues").

Nor are the additional, non-breach of contract class claims asserted in the Louisiana Action (Redhibition) or in the *Hill/ Piña* Action (Unfair Competition Law) grounds to reject the benefits consolidation will provide. As noted above, while only one Related Actions raises the Redhibition claim and one Related Action raises the Unfair Competition Claim, every single one of Actions raises a claim under breach of contract and seeks damages, and "[m]any MDLs [ ] encompass non-overlapping classes." *In re: N. Sea Brent Crude Oil Futures Litig.*, 978 F. Supp. 2d 1384 (J.P.M.L. 2013); *see also In re: Chrysler LLC 2.7 Liter V–6 Engine Oil Sludge Prods. Liab. Litig.,* 598 F.Supp.2d 1372 (J.P.M.L.2009) (centralizing five non-overlapping putative statewide class actions); *In re: Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011) ("Transferee judges can accommodate common and individual discovery tracks, gaining the benefits of centralization without delaying or compromising consideration of claims on their individual merits"). The breach of contract violations are the ties that bind this litigation and give rise to the need for consolidation. *In re: Park West Galleries, Inc., Litig.,* 887 F.Supp.2d 1385, 1385 (J.P.M.L.2012) ("Section 1407 does not require a complete identity or even a majority of common factual issues as a prerequisite to centralization"). Here, the "common factual issues" are not simply a majority but an overwhelming majority of the issues in play, notwithstanding the additional cause of action asserted in the *Hill/ Piña* Action and the one additional cause of action

8

Exhibit 3 Page 26

asserted in the Louisiana Action. *In re Park W. Galleries, Inc., Litig.*, 887 F. Supp. 2d 1385 (J.P.M.L. 2012) ("Discovery and other pretrial proceedings will focus on the same series of events. Pretrial motions likely will be similar in these actions").

### B. Transfer Will Promote Convenient, Just, and Efficient Litigation of the Related Actions

The Panel will order transfer where it would "eliminate duplicative discovery; prevent inconsistent pre-trial rulings (particularly with respect to the issue of class certification); and conserve the resources of the parties, their counsel and the judiciary." *In re U.S. Foodservice, Inc., Pricing Litig.*, 528 F. Supp. 2d 1370, 1371 (J.P.M.L. 2007). Because each action is based upon similar facts, plaintiffs in each of the Actions are, in turn, likely to seek overlapping discovery. *See In re Auto Body Shop*, 2014 WL 3908000, at *1-2 (J.P.M.L. 2014) (noting that transfer was appropriate to eliminate duplicative discovery when the actions shared a common factual core). Plaintiffs in the Related Actions necessarily will seek similar discovery from the Common Defendants to develop their common allegations and legal theories. The benefits to the Common Defendants are obvious as well, as they would not need to submit to repetitive and duplicative depositions, document discovery, discovery-related motion practice, and class certification briefing. *See, e.g., In re Pilot Flying J Fuel Rebate Contract Litig. (No. II)*, 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014); *In re Fresh & Processed Potatoes Antitrust Litig.*, 744 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010).

That the Related Actions are putative class actions only strengthens the argument for transferring them for coordination or consolidation in a single forum. "The need to eliminate" the risk of inconsistent class certification rulings "presents a highly persuasive reason favoring transfer under Section 1407." *In re Roadway Exp., Inc. Employment Practices Litig.*, 384 F. Supp. 612, 613 (J.P.M.L. 1974). *See also In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, 26 F.

9

Exhibit 3 Page 27

Supp. 3d 1394, 1395 (J.P.M.L. 2014) ("Centralization will . . . prevent inconsistent pretrial rulings (particularly as to class certification) . . ."); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 416 F. Supp. 2d 1346, 1347 (J.P.M.L. 2006) (ordering transfer "in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, particularly with respect to class certification . . ."). In short, this is an ideal circumstance for a transfer order pursuant to Section 1407.

## II.     The Southern District of California is the Most Appropriate Forum

A review of the factors considered by the Panel in determining the most appropriate transferee court demonstrates that the Southern District of California has several attributes which make that Court particularly appropriate here.

Southern California is a logistically convenient location for parties located in Northern California, Southern California, and elsewhere in the United States. *See In re Worldcom, Inc.*; *Sec. and ERISA Litig*,. 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) (noting that "litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well developed support system for legal services"). As indicated in the Introduction and Background at pp. 3-5, California was more significantly impacted by the flight disruption as Southwest operates to and from 13 airports in California compared to one (1) in Louisiana and as of December 27, 2022 more flights were disrupted in San Diego alone than in Louisiana. This makes sense as Southwest has been referred to as the "unofficial airline of California."

In terms of convenience of the parties, frequent flight service is offered into San Diego International Airport, which is located only three miles from the Southern District Courthouse. This should be convenient for Southwest as Southwest flies to that particular airport. As to the named Plaintiffs alone, all but one named Plaintiff is from California and of the named Plaintiffs

10

Exhibit 3 Page 28

from California, all of their cases are pending in the United States District Court of California for the Southern District of California.

The Louis Armstrong New Orleans airport, where the only other consumer case is pending against Southwest, is located approximately 15.2 miles from the Eastern District of Louisiana, which is five times as far in comparison.

Accommodations are available at more than 400 hotels and motels in the local San Diego area.[17]  Whereas there are only 142 in the downtown area.[18] There are at least 10,000 hotels available in the San Diego County area[19], compared to 307 hotels in the greater New Orleans metro area.[20]

Furthermore, the Panel has on several occasions found that the Southern District of California to be an appropriate transferee forum. *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, Case No. 3:15-md-02672-CRB (MDL No. 2672). *See also*, Distribution of Pending MDL Dockets by District at 2. Available at: https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2023.pdf (indicating the following MDLs currently pending the United States District Court for the Southern District of California: MDL-2295 (*In re: Portfolio Recovery Associates, LLC, Telephone Consumer Protection Act (TCPA) Litigation*; MDL-2670 (*In re: Packaged Seafood*

---

[17]       https://www.expedia.com/Downtown-San-Diego-San-Diego-Hotels.0-n800123-0.Travel-Guide-Filter-Hotels (indicating 443 hotels in Downtown San Diego, California)
[18] https://www.neworleans.com/plan/faqs/#:~:text=There%20are%20142%20hotels%20and,downt own%20hotel%20towers%20and%20more. (indicating 10,000 hotels in the San Diego County area)
[19] https://www.expedia.com/Destinations-In-San-Diego-County.d178304.Hotel-Destinations
[20] https://www.neworleans.com/plan/faqs/#:~:text=There%20are%20142%20hotels%20and,downt own%20hotel%20towers%20and%20more.

Exhibit 3 Page 29

*Products Antitrust Litigation*, MDL-2992 (*In re: Bank of America California Unemployment Benefits Litigation. See, MDL Statistics Report.*)

The Southern District of California presently has 5,330 cases pending 12-Motion Period Ending March 31, 2023 with 410 cases pending per Judgeship and median time from filing to disposition (Civil) of 7.4 months and median time from filing to trial (Civil Only) of 46.0 months. *See*, U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (March 31, 2023) at p. 9.[21]

Compare, respectfully, to the congested Eastern District of Louisiana, which presently has 16,935 pending cases with 1,411 cases pending per Judgeship and median time from filing to disposition (Civil) of 68.9 months and median time from filing to trial (civil Only) of 25.6 months. *See*, U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (March 31, 2023) at p. 5.[22]

## CONCLUSION

For the forgoing reasons, Movant respectfully requests that the Panel centralize the Related Actions as well as any tag-along actions or other cases, such as may be subsequently filed in federal court asserting related or similar claims, in the United Stated District Court for the Southern District of California.

Dated: May 30, 2023　　　　　　　　　　　Respectfully submitted,

By: /s/ Francis J. "Casey" Flynn, Jr.
　　Francis J. "Casey" Flynn, Jr.
　　**LAW OFFICE OF FRANCIS J. FLYNN, JR.**
　　6057 Metropolitan Plz.
　　Los Angeles, California 90036
　　Fax: (855) 710-7706
　　Tele: 314-662-2836

---

[21] Available at: https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0331.2023.pdf
[22] *Id.*

12

Exhibit 3 Page 30

Email: casey@lawofficeflynn.com
francisflynn@gmail.com

**PLAINTIFFS' COUNSEL IN MARY SMITH V. SOUTHWEST AIRLINES CO., NO. 23CV754-AJB-BLM (S.D. CAL. 2023)**

13

Exhibit 3 Page 31

## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE SOUTHWEST AIRLINES CO.** | ) |
| **FLIGHT DISRUPTION LITIGATION** | ) MDL DOCKET NO. _____ |
| | ) |
| | ) |

## SCHEDULE OF ACTIONS

| Case Name | Court | Civil Action No. | Assigned Judge |
|---|---|---|---|
| **CALIFORNIA ACTIONS** | | | |
| **Plaintiff**: *Matt Grove*<br><br>**Defendant**: *Southwest Airlines Co.* | Southern District of California | 3:23-cv-00306-AJB-BLM (S.D. Cal.) | Honorable Anthony J. Battaglia |
| **Plaintiffs:** *Paula Hill and Eva Piña*<br><br>**Defendant:** *Southwest Airlines Co.* | Southern District of California | 3:23-cv-00633-AJB-BLM (S.D. Cal.) | Honorable Anthony J. Battaglia |
| **Plaintiff:** *Mary Smith*<br><br>**Defendant:** *Southwest Airlines Co.* | Southern District of California | 3:23-cv-00754-AJB-BLM (S.D. Cal.) | Honorable Anthony J. Battaglia |
| **LOUISIANA ACTIONS** | | | |
| **Plaintiff:** *Eric F. Capdeville*<br><br>**Defendant:** *Southwest Airlines Co.* | Eastern District of Louisiana | 2:22-cv-05590-ILRL-KWR (E.D. La.) | Honorable Ivan L.R. Lemelle |

1

Exhibit 3 Page 32

**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | )
IN RE SOUTHWEST AIRLINES CO. ) MDL DOCKET NO. _____
FLIGHT DISRUPTION LITIGATION )
| )

**PROOF OF SERVICE**

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial

Panel on Multidistrict Litigation, I hereby certify that copies of the foregoing Motion, Brief,

Schedule of Actions (with attendant Exhibits), and this Certificate of Service were served via First

Class Mail or Email as follows on **May 30, 2023**:

**Clerks of Courts – Served Via First Class Mail**

Clerk of Court
Southern District of California, San Diego Division
Edward J. Schwartz
United States Courthouse
221 West Broadway
San Diego, CA 92101

Clerk of Court
Eastern District of Louisiana, New Orleans Division
500 Poydras Street
New Orleans, LA  70130

**Counsel in the California Actions- Served via Email**

**Plaintiffs' Counsel in *Matt Grove v. Southwest Airlines Co.,* Case No. 3:23-cv-00306-AJB-BLM (S.D. Cal.):**

Kevin F. Ruf (SBN 136901)
kruf@glancylaw.com
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel: (301) 201-9150
Fax: (301) 201-9160

1

Exhibit 3 Page 33

Brian P. Murray
bmurray@glancylaw.com
**GLANCY PRONGAY & MURRAY LLP**
230 Park Avenue, Suite 358
New York, NY 10169
Tel: (212) 682-5340
Fax: (212) 884-0988

**Defendant's Counsel in *Matt Grove v. Southwest Airlines Co.,* Case No. 3:23-cv-00306-AJB-BLM (S.D. Cal.):**

Matthew D. Pearson
mpearson@bakerlaw.com
Alexander Vitruk
avitruk@bakerlaw.com
**BAKER & HOSTETLER LLP**
600 Anton Blvd., Ste 900
Costa Mesa, CA 92626
Tele: 714-754-6600
Fax: 714-754-6611

**Plaintiffs' Counsel in *Paula Hill and Eva Piña v. Southwest Airlines Co.,* Case No. 3:23-cv-00633-AJB-BLM (S.D. Cal.):**

Michael J. Aguirre, Esq., SBN 060402
maguirre@amslawyers.com
Maria C. Severson, Esq., SBN 173967
mseverson@amslawyers.com
Elijah T. Gaglio, Esq., SBN 324799
egaglio@amslawyers.com
**AGUIRRE & SEVERSON, LLP**
501 West Broadway, Suite 1050
San Diego, CA 92101
Telephone: (619) 876-5364
Facsimile: (619) 876-5368

**Defendant's Counsel in *Paula Hill and Eva Piña v. Southwest Airlines Co.,* Case No. 3:23-cv-00633-AJB-BLM (S.D. Cal.):**

Alexander Vitruk
**BAKER & HOSTETLER LLP**
999 3rd Ave, Suite 3900
Seattle, WA 98104
Tele: 206-566-7092

2

Exhibit 3 Page 34

Email: avitruk@bakerlaw.com

Matthew D. Pearson
mpearson@bakerlaw.com
**BAKER & HOSTETLER LLP**
600 Anton Blvd.
Ste 900
Costa Mesa, CA 92626
Tele: 714-754-6600
Fax: 714-754-6611

**Plaintiffs' Counsel in *Mary Smith v. Southwest Airlines Co.,* Case No. 3:23-cv-00754-AJB-BLM (S.D. Cal.):**

Francis J. "Casey" Flynn, Jr. (SBN 304712)
casey@lawofficeflynn.com
**LAW OFFICE OF FRANCIS J. FLYNN, JR.**
6057 Metropolitan Plz.
Los Angeles, California 90036
Tele: 314-662-2836

**Defendant's Counsel in *Mary Smith v. Southwest Airlines Co.,* Case No. 3:23-cv-00754-AJB-BLM (S.D. Cal.):**

Matthew D. Pearson
mpearson@bakerlaw.com
**BAKER & HOSTETLER LLP**
600 Anton Blvd., Ste 900
Costa Mesa, CA 92626
714-754-6600
Fax: 714-754-6611

**<u>Counsel in the Louisiana Action- Served via Email</u>**

**Plaintiffs' Counsel in *Capdeville v. Southwest Airlines Co.,* Case No. 2:22-cv-05590-ILRL-KWR (E.D. La.):**

Jim S. Hall (Bar No.: 21644)
Jodi@jimshall.com
Matthew B. Moreland (#24567)
Mmoreland@jimshall.com
**JIM S. HALL & ASSOCIATES, LLC.**
800 N. Causeway Blvd., Suite #100
Metairie, Louisiana 70001
Telephone: 504-832-3000

Exhibit 3 Page 35

Facsimile: 504-832-1799

**Defendant's Counsel in** *Capdeville v. Southwest Airlines Co.,* **Case No. 2:22-cv-05590-ILRL-KWR (E.D. La.):**

Michael R. Phillips (#21020)
mike.phillips@keanmiller.com
R. Devin Ricci (#34724)
devin.ricci@keanmiller.com
Jeffrey J. Gelpi (#37130)
jeff.gelpi@keanmiller.com
**KEAN MILLER LLP**
909 Poydras Street, Suite 3600
New Orleans, Louisiana 70112
Telephone: (504) 585-3050

Karli Glascock Johnson (#26304)
karli.johnson@keanmiller.com
**KEAN MILLER LLP**
400 Convention Street, Suite 700
P. O. Box 3513 (70821-3513)
Baton Rouge, Louisiana 70802
Telephone: (225) 387-0999

Date: <u>May 30, 2023</u>　　　　By:　<u>/s/　Francis J. Flynn, Jr.</u>
　　　　　　　　　　　　　　　　Francis J. "Casey" Flynn, Jr. CA #304712
　　　　　　　　　　　　　　　　**LAW OFFICE OF FRANCIS J. FLYNN, JR.**
　　　　　　　　　　　　　　　　6057 Metropolitan Plz.
　　　　　　　　　　　　　　　　Los Angeles, CA 90036
　　　　　　　　　　　　　　　　Tele: 314-662-2836
　　　　　　　　　　　　　　　　Fax: (855) 710-7706
　　　　　　　　　　　　　　　　Email: casey@lawofficeflynn.com
　　　　　　　　　　　　　　　　　　　francisflynn@gmail.com

　　　　　　　　　　　　　　　　**PLAINTIFFS' COUNSEL IN MARY SMTIH V. SOUTHWEST AIRLINES CO., NO. 3:23-CV-00754-AJB-BLM (S.D. CAL.)**

Exhibit 3 Page 36

# U.S. District Court
## Southern District of California (San Diego)
### CIVIL DOCKET FOR CASE #: 3:23-cv-00306-AJB-BLM

Grove v. Southwest Airlines Co.
Assigned to: Judge Anthony J. Battaglia
Referred to: Magistrate Judge Barbara Lynn Major
Related Cases:     3:23-cv-00633-AJB-BLM
                   3:23-cv-00754-AJB-BLM
Cause: 28:1332 Diversity Action

Date Filed: 02/15/2023
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Matt Grove**
*individually and on behalf of all others
similarly situated*

represented by **Brian Philip Murray**
Glancy Prongay & Murray LLP
122 East 42nd Street
Suite 2920
New York, NY 10168
(212) 682-5340
Fax: (212) 884-0988
Email: bmurray@glancylaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kevin F. Ruf**
Glancy Prongay & Murray LLP
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
310-201-9150
Fax: 310-201-9160
Email: kevinruf@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Southwest Airlines Co.**

represented by **Matthew D. Pearson**
Baker & Hostetler LLP
600 Anton Blvd.
Ste 900
Costa Mesa, CA 92626
714-754-6600
Fax: 714-754-6611
Email: mpearson@bakerlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Exhibit 3 Page 37

| Date Filed | # | Docket Text |
|---|---|---|
| 02/15/2023 | 1 | COMPLAINT with Jury Demand against Southwest Airlines Co. ( Filing fee $ 402 receipt number ACASDC-17591279.), filed by Matt Grove. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit A)<br><br>The new case number is 3:23-cv-306-AJB-AGS. Judge Anthony J. Battaglia and Magistrate Judge Andrew G. Schopler are assigned to the case. (Ruf, Kevin)(mjw) (sjt). (Entered: 02/16/2023) |
| 02/15/2023 | 2 | Summons Issued.<br>**Counsel receiving this notice electronically should print this summons and serve it in accordance with Rule 4, Fed.R.Civ.P and LR 4.1.** (mjw) (sjt). (Entered: 02/16/2023) |
| 03/14/2023 | 3 | MINUTE ORDER OF TRANSFER. Magistrate Judge Andrew G. Schopler is no longer assigned. Case reassigned to Magistrate Judge Barbara Lynn Major for all further proceedings. The new case number is 23cv0306-AJB-BLM.(no document attached) (dlg) (Entered: 03/14/2023) |
| 03/20/2023 | 4 | Joint MOTION to Continue *Defendant Southwest Airlines Co.'s Responsive Pleading Deadline to April 21, 2023* by Southwest Airlines Co.. (Pearson, Matthew)Attorney Matthew D. Pearson added to party Southwest Airlines Co.(pty:dft) (jms). (Entered: 03/20/2023) |
| 03/20/2023 | 5 | ORDER GRANTING Joint Motion to Continue Defendant Southwest Airlines Co.'s Responsive Pleading Deadline to 04/21/2023. Signed by Judge Anthony J. Battaglia on 03/20/2023. (maq) (Entered: 03/21/2023) |
| 04/19/2023 | 6 | Joint MOTION to Continue *Defendant Southwest Airlines Co.'s Responsive Pleading Deadline to May 19, 2023* by Southwest Airlines Co. (Pearson, Matthew) (maq). (Entered: 04/19/2023) |
| 04/20/2023 | 7 | ORDER Granting Joint Motion to Continue Defendant Southwest Airlines CO.'s Responsive Pleading Deadline to May 18, 2023. Signed by Judge Anthony J. Battaglia on 4/19/2023. (maq) (Entered: 04/20/2023) |
| 05/17/2023 | 8 | Joint MOTION to Continue Defendant Southwest Airlines, Co.'s Responsive Pleading Deadline to 6/16/2023, by Southwest Airlines Co. (Pearson, Matthew) (maq). (Entered: 05/17/2023) |
| 05/23/2023 | 9 | ORDER granting 8 Joint Motion to Continue Defendant Southwest Airlines Co.'s responsive pleading to June 16, 2023. Signed by Judge Anthony J. Battaglia on 5/23/2023. (jpp) (Entered: 05/23/2023) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/26/2023 14:05:19 | | | |
| **PACER Login:** | tyiatras | **Client Code:** | SOUTHWEST |
| **Description:** | Docket Report | **Search Criteria:** | 3:23-cv-00306-AJB-BLM |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**GLANCY PRONGAY & MURRAY LLP**
Kevin F. Ruf (SBN 136901)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel: (301) 201-9150
Fax: (301) 201-9160
kruf@glancylaw.com

**GLANCY PRONGAY & MURRAY LLP**
Brian P. Murray
230 Park Avenue, Suite 358
New York, NY 10169
Tel: (212) 682-5340
Fax: (212) 884-0988
bmurray@glancylaw.com

*Attorneys For Plaintiffs*
*And The Proposed Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT GROVE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO.,<br><br>Defendant. | Case No.: '23CV0306 AJB AGS<br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR:**<br><br>**1) Breach of Contract**<br>**2) Breach of Covenant of Good Faith and Fair Dealing**<br>**3) Violation of Bailment**<br>**4) Injunctive Relief; and**<br>**5) Declaratory Relief**<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Matt Grove ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's undersigned counsel, brings this class action lawsuit against Southwest Airlines Co. ("Defendant" or "Southwest") and alleges, based upon information and belief and the investigation of Plaintiff's counsel, as follows:

# I.  **INTRODUCTION**

1.  In 2003 Southwest Airlines Company ("Southwest") became the largest domestic air carrier in the United States.  Now in its 49th year of service, Southwest, which services over 130 million passengers annually, is one of three of the top ranked airlines.

2.  In its peak travel seasons, Southwest operates more than 4,000 weekday departures among a network of 102 destinations in the United States and 10 additional countries.

3.  Southwest does not sell airline tickets on any third-party global distribution platform, requiring all customers to purchase directly from Southwest whether it be through its website or by calling a Southwest booking line to make a reservation.

4.  Beginning Friday, December 23, 2022, Southwest Airlines began cancelling flights nationwide blaming the failure on a weather-driven issue. Subsequently, Southwest continued to cancel flights blaming weather through Wednesday, December 28, 2022, resulting in more than 14,500 flights cancelled since the prior Friday. On Wednesday, December 28, 2022 alone, Southwest cancelled 2,500 flights.  Southwest CEO Bob Jordan confirmed the airline needed to upgrade its legacy systems. The Department of Transportation also confirmed that the cancellations came about as a result of Southwest's decision and actions.

5.  Southwest's response to the internally created crisis was to suggest customers could submit receipts for flight cancellations from December 24, 2022 through January 2, 2023 for consideration of reimbursement.

6.     Southwest's Contract of Carriage mandates refunds in this situation as well as full compensation for incurred costs and resultant cancellations for the failure of the carriage contract.

7.     Southwest's failure to provide prompt refunds for cancelled flights violates not only its own Contract of Carriage, but also federal law.

## II.   PARTIES

### A.   Plaintiff

8.     Plaintiff Matt Grove is a citizen of the state of California residing in San Diego, California.

9.     Plaintiff purchased from Southwest a ticket for a flight on December 23, 2022 from Oakland, California to San Diego, California: Confirmation # 52621915818.

10.     On December 23, 2022, Plaintiff was at the airport waiting for the delayed flight until Southwest cancelled Plaintiff's flight.  He waited for over 1.5 hours before Southwest cancelled the flight.

11.     Southwest was unable to rebook him on a same day flight.  Plaintiff was forced to rent a car and then drive from Oakland to San Diego in a rental car at a cost of approximately $200.00.

12.     Defendant did not issue Plaintiff a refund of the price of Plaintiff's ticket.  Instead Southwest issued a flight credit.

13.     Defendant did not reimburse Plaintiff for his out-of-pocket expenses caused by cancelling his ticket within hours of the flight during the holiday season.

### B.   Defendant

14.      Defendant Southwest Airlines Co. is a corporation organized under the laws of Texas with its principal place of business located in Dallas, Texas.

15.     Southwest operates Southwest Airlines, a major passenger airline that provides scheduled air transportation in the United States including California and near-international markets. As of December 31, 2021, Southwest had a total of 728

Exhibit 3 Page 41

Boeing 737 aircraft in its fleet and 121 destinations in 42 states, the District of Columbia, the Commonwealth of Puerto Rico, and 10 near-international countries.[1]

16.     For 2021, the Company's average aircraft trip stage length was 790 miles, with an average duration of approximately 2.1 hours, as compared with an average aircraft trip stage length of 743 miles and an average duration of approximately 2.0 hours in 2020, and as compared with an average aircraft trip stage length of 748 miles and an average duration of approximately 2.0 hours in 2019.[2]

## III.  **JURISDICTION AND VENUE**

17.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because (a) the aggregated claims of putative class members exceed $5 million, exclusive of interest and costs; (b) there are at least hundreds of putative class members; and (c) at least one of the members of the putative class is a citizen of a different state than Defendant.

18.     This Court has personal jurisdiction over Defendant because Defendant, directly or through its agents, conducts business in the State of California and within this District. Specifically, Defendant markets in this District and operates flights to and from this District. Through its business operations in this District, Defendant intentionally avails itself of the markets within this District to render the exercise of jurisdiction by this Court just and proper.

19.     Through its business operations in this District, Defendant intentionally availed itself of the markets within this District and has sufficient minimum contacts with this State to render the exercise of jurisdiction by this Court just and proper.

20.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the Court sits in a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

---

[1] https://otp.tools.investis.com/clients/us/southwest/SEC/secshow.aspx?Type= html&FilingId=15534609&CIK=0000092380&Index=10000

[2] https://otp.tools.investis.com/clients/us/southwest/SEC/secshow.aspx?Type= html&FilingId= 15534609&CIK=0000092380&Index=10000

Exhibit 3 Page 42

**A.**     **Southwest Has A Strong California Presence**

21.    "Once singularly associated with Texas, Southwest is now an essential bridge across the north-south geographic divide in California, where white-collar workers, college students and families have come to rely on the airline the way New Yorkers depend on Amtrak or the Long Island Rail Road."[3]

22.    "Southwest is California's busiest airline, with some 800 flights scheduled on peak days, many of which ferry residents between Northern and Southern California."[4]

23.    "Despite mild winter weather, California's medium-size airports suffered some of the worst cancellation rates in the nation over the past week because Southwest accounts for so much of their traffic."[5]

24.    "Southwest is almost the unofficial airline of California," said Henry Harteveldt, an analyst based in San Francisco who covers airlines for Atmosphere Research Group.[6]

25.    Southwest operates more flights in California than in any other place in the nation, including its home state of Texas. Southwest "carried more California travelers to, from and within California than any other airline," according to the airline's 2021 annual report.[7]

26.    Southwest remains a minor player on California's busiest intrastate route between San Francisco and Los Angeles, but it overwhelmingly dominates air travel at seven of California's 10 busiest airports. The airline accounts for 68% of total seats for sale on flights within California, said Mike Arnot, a spokesperson for Cirium, an aviation analytics company, and serves tens of millions of passengers

---

[3] Southwest is California's 'Unofficial Airline.' The Meltdown Has Residents Anxious. New York Times. https://www.nytimes.com/2022/12/29/us/southwest-california-commuters.html?searchResultPosition=1

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

Exhibit 3 Page 43

annually.[8]

27.    Southwest accounts for more than half of all air traffic at Sacramento International Airport.[9]

28.    Southwest accounted for 80% of traffic at nearby Oakland International Airport and 63% at San Jose International Airport in the 12-month period ending on Sept. 30, according to the Bureau of Transportation Statistics.

## IV.    FACTS

### A.    Southwest's Outdated Software And The Resulting Chaos

29.    On June 13, 2020, the Baltimore Sun released an article titled "Southwest Glitch Delays BWI Flights: Problem With Computer System Affected Airports Nationwide, Airline's Website." This article discussed how Southwest Airlines experienced problems with its computer system for a significant part of an afternoon, causing "significant flight delay" at airports around the country. Specifically, for about three hours, visitors to Southwest.com could not check into their flights, purchase tickets, or check their flight's status. One traveler commented, "I'd like to know how a company as big as Southwest can have their whole server go down [. . .] Where's the backup plan?"

30.    According to FlightAware.com, this system failure delayed more than 600 flights as of 9:00 PM that day and resulted in 17 cancelled flights. On August 12, 2020, USA Today released an article titled "'So I Guess Southwest has Invented Time Travel': Airline Sends Passengers Bizarre Flight Changes." This article detailed how Southwest Airlines' system would re-route travelers, but would make the crucial mistake of scheduling travelers to arrive at a given airport after their connecting flights were due to leave. To illustrate, a traveler booked a nonstop flight from San Diego, California to Reno, Nevada, which was then re-routed to contain a connecting flight via Oakland, California. However, the connecting flight was due to leave 10

---

[8] *Id.*

[9] *Id.*

Exhibit 3 Page 44

minutes before the first flight was scheduled to land.

31.    Southwest Airlines attempted to downplay the nonsensical flight changes by saying that passengers receiving such schedules had received preliminary flight change information that had not been finalized. One affected passenger was reportedly an information technology worker. She suspected that a computer glitch was to blame, and commented "[t]his should have been literally impossible."

32.    But despite Southwest's assurances to the public, Southwest made no effort to remedy the technical flaws in its system but instead gave a dividend to its investors.

33.    Southwest relies on crew-assignment software called SkySolver, an off-the-shelf application that it has customized and updated, but that is nearing the end of its life, according to the airline.[10]

34.    The program was developed decades ago and is now owned by General Electric Co.[11]

35.    Southwest Airlines employees said about the company's technology that it was "antiquated."[12]

36.    "We've been harping on them since 2015-ish every year," Mike Santoro, a captain and vice president of the Southwest Airlines Pilots Association, told CNN.[13]

37.    Southwest's scheduling system hasn't changed much since the 1990s, according to Captain Casey Murray, president of the Southwest Airlines Pilots Association.[14]

---

[10] Southwest Meltdown Shows Airlines Need Tighter Software Integration. https://www.wsj.com/articles/southwest-meltdown-shows-airlines-need-tighter-software-integration-11672687980

[11] Id.

[12] Insiders at Southwest reveal how the airline's service imploded. https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html

[13] Id.

[14] How Southwest failed the holidays: Four charts explaining the cancellations. https://www.cnn.com/2022/12/29/business/southwest-cancellations-history-charts-dg/index.html

38.     Winter storms disrupted holiday travel during the 2022 holiday season, leaving thousands of travelers stranded in airports around the United States. However, not all domestic airlines were affected equally. Southwest Airlines flight cancellations accounted for the vast majority of domestic flight cancellations, leaving travelers unable to visit loved ones over the holidays, and attracting the ire of the federal government.

39.     As flights were getting cancelled around the country, it soon emerged that the root cause behind Southwest Airlines' cancellations was outdated and ineffective technology, in particular, Sky Solver, its crew scheduling system. Further compounding this issue, Southwest Airlines used an aggressive flight schedule that left it prone to greater cancellations than its competitors in the event of unusual conditions, such as nationwide storms.

40.     The result: A massive Christmas travel meltdown that scuttled holiday plans for hundreds of thousands of passengers. Nearly 16,000 flights cancelled. Orphaned baggage piling up at airports and travelers told to give a shipping address.[15]

41.     During the winter storm, amid a huge volume of changes to crew schedules to work through, SkySolver couldn't handle the task of matching crew members and which flights they should work, executives of the Dallas-based carrier said.[16]

42.     Southwest's software wasn't designed to solve problems of that scale, according to Chief Operating Officer Andrew Watterson, forcing the airline to revert to manual scheduling.[17]

43.     "The magnitude and scale of this disruption stressed our technology and

---

[15] Insiders at Southwest reveal how the airline's service imploded. https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html

[16] Southwest Meltdown Shows Airlines Need Tighter Software Integration. https://www.wsj.com/articles/southwest-meltdown-shows-airlines-need-tighter-software-integration-11672687980

[17] *Id.*

processes, forcing a great deal of manual processing," Southwest said. "Our crews are showing up in every way throughout this challenge."[18]

44.    Other airlines managed to recover by Christmas; at Southwest, the cancellations only increased.[19]

45.    While Southwest does have major connecting airports, much of its schedule involves planes and crews crisscrossing the country -- a network that aviation watchers say is more vulnerable than legacy carriers' hub-and-spoke model that can contain a disruption to particular geographic regions.[20]

46.    When something goes wrong, the Southwest software -- including the crew scheduling system tool -- leaves much of the work of rebuilding that delicate network to be done manually.[21]

47.    "It can't see the best way to fix anything when flights are canceled," said Brian Brown, president of Transport Workers Union Local 550, representing Southwest dispatchers and meteorologists. "It requires a lot more human intervention and human eyesight or brainpower, and can only handle so much."[22]

48.    The result is that airline officials "don't necessarily know where our crews are, where our planes are," Brown said.[23]

49.    Crew schedulers in another department are manually checking which pilots and flight attendants meet strict federal rules on work hours -- rules meant to keep inflight safety professionals from excessive fatigue.[24]

50.    "You end up with thousands of crew members having to call in and

---

[18] Insiders at Southwest reveal how the airline's service imploded.
https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*

Exhibit 3 Page 47

their wait times were hours just to talk to someone," Brown said. Software enhancements would make the process more efficient, he added.[25]

51.     The manual work meant crew members who could be working were instead stuck in lengthy phone queues waiting for instructions or for a hotel assignment to get their federally mandated rest.[26]

52.     "The phone systems that the company uses is just not working," Lyn Montgomery, who represents Southwest flight attendants at TWU Local 556, told CNN.[27]

53.     "They're just not manned with enough manpower in order to give the scheduling changes to flight attendants and that's created a ripple effect that is creating chaos throughout the nation."[28]

54.     Another complicating factor is that unlike some large rivals with hub-and-spoke networks, Southwest planes hopscotch from city to city.[29]

55.     Multiple systems are involved in crew scheduling, according to a spokesman for GE Aerospace.[30]

56.     The company said its software isn't an end-to-end solution.[31] Rather, it's a so-called backend algorithm that airlines can supplement with other software.[32] The algorithm gathers input from other systems to provide recommendations to resolve crew-related disruptions, according to GE Aerospace.[33]

57.     Dr. Edward Rothberg, chief scientist of Gurobi Optimization LLC, a

---

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] Southwest Meltdown Shows Airlines Need Tighter Software Integration. https://www.wsj.com/articles/southwest-meltdown-shows-airlines-need-tighter-software-integration-11672687980

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

Exhibit 3 Page 48

startup that develops mathematical optimization software used by carriers including Air France-KLM, said Southwest's hopscotched "point-to-point" model—rather than the hub-and-spoke model – greatly increases the difficulty of the problem, requiring more computational power than its current systems are likely able to handle.[34]

58.     Southwest Chief Executive Officer Bob Jordan said that while the carrier has good systems in some areas, those systems still need "better intelligence to talk to each other."[35] For instance, he said "The Baker," an optimization system developed by Southwest to automate disruption recovery and select flights to cancel, needs "better visibility" into its crew-scheduling systems.[36] Airlines generally have done a better job of maintenance and repair operations, but are much further behind in "the human aspect" of matching up crews, equipment, and passengers, said R. "Ray" Wang, founder and principal analyst at IT consulting firm Constellation Research Inc.[37]

59.     Updating technology systems is particularly challenging for air carriers because of the business and operations risk of taking down a system, which can include grounded planes or stranded passengers, according to Tim Crawford, a CIO strategic advisor at enterprise IT advisory firm AVOA.[38]

**B.     Southwest's Flight Cancellation Debacle**

60.     Between December 22, 2022 and January 2, 2023, Southwest cancelled nearly 16,000 flights, stranding thousands of passengers during one of the busiest travel weeks of the year.[39]

61.     From Dec. 22 to January 2, the beleaguered airline cancelled more than

---

[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html

Exhibit 3 Page 49

half of its typical flight schedule, and by Dec. 28 about 87% of all cancelled flights in the US were from Southwest alone, according to industry trackers FlightRadar24 and FlightAware.

62.     Southwest has consistently failed to perform as well as its competitors when it comes to cancellations, according to bureau data.[40]

63.     Many Southwest passengers, told they might be stranded for days, scrambled to find tickets on buses, trains, and other airlines. At one point, the only one-way ticket on short notice from Sacramento to Los Angeles was a first-class seat on Delta Air Lines for nearly $700, several times more than passengers are used to paying on that leg.[41] Others made a beeline for the rental car offices and opted to endure the six to nine hours it normally takes to drive from Northern to Southern California, or vice versa.[42]

64.     The airline said in a statement on December 29 that it had stabilized its operations and that it planned to resume its full flight schedule December 30 "with minimal disruptions." Only a few dozen December 30 flights had been cancelled by midday Thursday — "good news for everyone," Harteveldt said.[43]

65.     Similarly, alternative non-Southwest flights from Saint Louis, Missouri to Los Angeles, California reached a price of over $2,300.00 – one way – a flight that would have taken 18 hours to arrive.  Saint Louis, Missouri to Long Beach, California on the same day would have cost up to $2,901 (with 3 stops) and would have taken nearly 20 and a half hours to arrive.

66.     In several years over the last decade, the airline had higher cancellation rates compared to other major airlines, the data shows.[44]

---

[40] https://www.cnn.com/2022/12/29/business/southwest-cancellations-history-charts-dg/index.html
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] https://www.cnn.com/2022/12/29/business/southwest-cancellations-history-charts-dg/index.html

Exhibit 3 Page 50

67.     The meltdown is not the first time Southwest has found itself in this predicament. In October 2021, Southwest cancelled more than 2,000 flights over a four-day period. While the airline blamed the crisis partly on bad weather in Florida, Southwest cancelled flights for far longer than its competitors.

68.     Similar to this month's service mayhem, Southwest fared far worse than its competitors last October. While Southwest cancelled hundreds of flights in the days following the peak of October's disruption, competitors quickly returned to normal service. Later that month, on a call with Wall Street analysts, then-CEO Gary Kelly said the company had made adjustments to prevent a similar meltdown in the future:

> "We have reined in our capacity plans to adjust to the current staffing environment, and our ontime performance has improved, accordingly," said Kelly on October 21. "We are aggressively hiring to a goal of approximately 5,000 new employees by the end of this year, and we are currently more than halfway toward that goal."[45]

69.     And, just like the latest disruption, the Southwest Airlines Pilots Association claimed the cancellations were due to "management's poor planning."[46]

C.    **Southwest Airline's Contract Of Carriage**

70.     Southwest reservations, purchases, ticketing, and/or transportation are governed by Southwest's Contract of Carriage. *See*, Exhibit A.

71.     Specifically, the Contract of Carriage provides, in pertinent part:

**"1. Introduction**

**a. Application of Conditions of Contract**

(1)    Except as otherwise provided within specific fare rules, **reservations, purchase, ticketing and/or transportation by Southwest Airlines Co.** (hereafter "Southwest Airlines" and its Officers, Employees, contractors, and agents acting in their official capacities under the direction of Southwest Airlines [collectively, together with Southwest

---

[45] *See* https://www.cnn.com/2022/12/27/business/southwest-airlines-service meltdown/index.html#:~:text=In%20October%202021%2C%20Southwest%20canc eled,to%20adjust%20to%20those%20problems.
[46] *Id.*

Airlines hereafter "Carrier"]) **are subject to this Contract of Carriage in effect on the earliest of the date on which the Ticket is reserved, purchased, or issued, and as amended through the date of travel**, in addition to any terms, conditions, and restrictions applicable to your booking channel and included on any Ticket. The terms and conditions contained in this Contract of Carriage shall govern all published routes and services provided by the Carrier as well as all fares and charges published by the Carrier. […]"

Exhibit A, Contract of Carriage at 4.
[Emphasis added]

72.     The Contract of Carriage further provides:

    4.      Tickets […]

    […]

        c.      Refunds […]

(6)     Significant Delays or Involuntary Cancellations. If a Passenger's scheduled transportation is significantly disrupted by the Carrier before the Passenger has reached his or her final destination as a result of a flight cancellation, Carrier-caused missed connection, significant flight delay, significant schedule change, or omission of a scheduled stop caused by the Carrier, Carrier may do one of the following:

(i)     Transport the Passenger at no additional charge on another of Southwest Airlines flight(s);

(ii)    Refund the fare for the unused transportation in accordance with this Section 4; or

(iii)   Provide a Flight Credit or a Transferable Flight Credit depending on the fare purchased for the unused portion of the Customer's fare in accordance with this Section 4. See also Section 9.a.

73.     The Contract of Carriage further provides:

    4.      Tickets […]

    […]

        c.      Refunds […]

(3)     Form of Refunds. The Carrier shall make all refunds in U.S. dollars. See Section 8 for additional information for international travel. Eligible refunds must be requested no later than one year from the date the Ticket was issued. When no portion of the transportation has been provided,

the eligible refund will be issued in accordance with this Section in an amount equal to the fare paid. When a portion of the transportation has been provided, the eligible refund will be issued in accordance with this Section in an amount equal to the difference, if any, between the total fare paid and the fare applicable to the transportation provided. Except as otherwise provided in this Contract of Carriage, following a request made by the Customer and received by the Carrier, if a Ticket or unused ancillary fee for optional services paid by a Customer is eligible for a refund, Carrier will issue such refunds as follows:

(i)    At the direction of the Customer, refunds for Tickets purchased with a credit card shall be processed either:

    (a)    For crediting to the credit card account used to purchase the Ticket, typically no later than seven (7) business days from the date the refund request is received by Southwest Airlines or;

    (b)    To the form of a Flight Credit or a Transferable Flight Credit depending on the fare purchased.

(ii)    Refunds for Tickets purchased with cash, if cash is accepted by Carrier, typically will be issued by check no later than twenty (20) business days after the refund request is received by the Carrier.

(iii)    Refunds for Tickets purchased with an exchanged Ticket, Flight Credit, or Transferable Flight Credit, will be processed to the form of a Flight Credit or a Transferable Flight Credit depending on the fare purchased.

(iv)    Refunds for Tickets purchased with a Southwest® gift card will have the amount applied from the Southwest® gift card held as a Flight Credit or a Transferable Flight Credit depending on the fare purchased.

(v)    Refunds for Tickets purchased outside of Southwest Airlines (for example, through a travel agent or with a universal air travel plan number) shall be processed for crediting via the ticket issuer and may, for example, take the form of a credit to the subscriber against whose number the Ticket was charged or a Miscellaneous Charge Order, as applicable.

(vi)    Refunds for Tickets paid with any other form of payment (such as a Southwest LUV Voucher) will, in the Carrier's sole discretion, be issued back to the original form of payment (and subject to any limitations on the original form of payment, such as an expiration date) or be processed to the form of a Flight Credit or a

Transferable Flight Credit depending on the fare purchased.

(vii)  Transferable Flight Credit. Unless otherwise stated by Southwest Airlines, at the direction of the Customer, the fare paid for unused Anytime or Business Select® fare segments, including taxes and government fees, may be held as a Transferable Flight Credit. When a Ticket combines an Anytime or Business Select fare segment with a Wanna Get Away® fare segment, if the Customer does not travel and the Customer cancels the Ticket at least ten (10) minutes prior to the scheduled departure time, then the fare paid for unused travel, including taxes and government fees, may be held as a Transferable Flight Credit. The Passenger named on the Ticket can (A) request a refund of the refundable segment associated with the Transferable Flight Credit in accordance with Section 4.c.(3), (B) use a Transferable Flight Credit for travel on Southwest Airlines, or (C) if such Passenger is a Rapid Rewards Member and their Rapid Rewards number is associated with the Transferable Flight Credit prior to transfer, transfer the Transferable Flight Credit to another Rapid Rewards Member. A Transferable Flight Credit may only be transferred once. Any Transferable Flight Credit resulting from a Ticket purchased via a corporate booking tool, a GDS, SWABIZ.com, or a Southwest Airlines mobile app or the Southwest Airlines mobile website using a valid corporate credential issued by Southwest Airlines may only be transferred between employees within the same organization. A refundable flight segment associated with a Transferable Flight Credit becomes nonrefundable following the transfer to another Passenger. Although transferable, a Transferable Flight Credit may not be sold or bartered by the Passenger, a Customer, or any designee. Transferable Flight Credits obtained through prohibited sale or barter transactions are void and will not be honored for travel.

(viii)  Limitation of Liability. As provided in this Contract of Carriage, Southwest Airlines may, at the discretion of Southwest Airlines, refund all or a portion of a refund payment to a person or entity other than the Passenger, which shall be deemed a valid refund. Carrier shall not be liable to the Passenger for another refund or Flight Credit or Transferable Flight Credit.

(4)  Nonrefundable Tickets.

(i)  General. As the term "nonrefundable" reflects, the fare paid for unused travel by Passengers who purchase restricted, nonrefundable Tickets (including taxes and government fees) are

Exhibit 3 Page 54

not eligible for refunds, except as specifically stated in this Contract of Carriage, as provided in this Section, and as provided in Section 9.

(ii) Flight Credit. Unless otherwise stated by Southwest Airlines, the fare paid for unused Wanna Get Away® fare segments, including taxes and government fees, is, in the Carrier's sole discretion, refunded in accordance with Section 4(c)(3) or held as a Flight Credit either for use by the Passenger on Southwest Airlines or, as agreed to by Southwest Airlines, if evidence satisfactory to Southwest Airlines, in its sole discretion, is submitted to Southwest Airlines that an employer purchased the Ticket on behalf of its employee or the travel agent has made a refund to its client, then the Flight Credit may be held for use by the company or travel agent, as applicable.

(iii) Transferable Flight Credit. Unless otherwise stated by Southwest Airlines, the fare paid for unused Wanna Get Away Plus fare segments, including taxes and government fees, is, in the Carrier's sole discretion, refunded in accordance with Section 4(c)(3) or held as a Transferable Flight Credit. When a Ticket combines a Wanna Get Away Plus fare segment with a Wanna Get Away® fare segment, if the Customer does not travel and the Customer cancels the Ticket at least ten (10) minutes prior to the scheduled departure time, then the fare paid for unused travel, including taxes and government fees, may be held as a Transferable Flight Credit. The Passenger named on the Ticket can; (A) use a Transferable Flight Credit for travel on Southwest Airlines or, (B) if such Passenger is a Rapid Rewards Member and their Rapid Rewards number is associated with the Transferable Flight Credit prior to transfer, transfer the Transferable Flight Credit to another Rapid Rewards Member. A Transferable Flight Credit may only be transferred once. Any Transferable Flight Credit resulting from a Ticket purchased via a corporate booking tool, a GDS, SWABIZ.com, or a Southwest Airlines mobile app or the Southwest Airlines mobile website using a valid corporate credential issued by Southwest may only be transferred between employees within the same organization. A refundable flight segment associated with a Transferable Flight Credit becomes nonrefundable following the transfer to another Passenger. Although transferable, a Transferable Flight Credit may not be sold or bartered by the Passenger, a Customer, or any designee. Transferable Flight Credits obtained through prohibited

sale or barter transactions are void and will not be honored for travel.

    (iv)   Changes and Exchanges. Ticket changes and exchanges within the same reservation will result in the initial Ticket being applied as the form of payment for the new Ticket. The new Ticket may be more or less expensive or subject to different terms, conditions, or restrictions from the original Ticket. If the fare is lower, in the Carrier's sole discretion, the difference will be refunded in accordance with Section 4(c)(3) or a Flight Credit or a Transferable Flight Credit depending on the fare purchased will be issued for the difference. No cash refund or credit card adjustments will be made for nonrefundable Tickets.

(5)   For Flight Credits or Transferable Flight Credits with an Expiration Date of July 27, 2022 or Earlier. If a Flight Credit or Transferable Flight Credit is not applied and travel completed on or before its expiration date, the entire amount of the Flight Credit or Transferable Flight Credit, including all taxes and government fees is forfeited.

74.   The Contract of Carriage provides the following in Section 9:

**9.   Service Interruptions**

Refer to <u>Section 8</u> for conditions applicable to international travel.

a. Failure to Operate as Scheduled

(1)   Canceled Flights or Irregular Operations. In the event the Carrier cancels or fails to operate any flight according to Southwest Airlines published schedule, or significantly changes the schedule of any flight, or there is a significant delay, Carrier will, at the request of a Passenger with a confirmed Ticket on such flight, take one of the following actions: (i) Transport the Passenger at no additional charge on Southwest Airlines next flight(s) on which space is available to the passenger's intended destination, in accordance with Southwest Airlines established re-accommodation practices; or (ii) Following a request by the Customer, refund the unused portion of the Customer's fare in accordance with Section 4.c.

(2)   Diverted Flights. In the event the Carrier diverts any flight, the Carrier, at its sole discretion, will take reasonable steps to transport Passenger on Southwest Airlines next flight(s) on which space is available to his or her intended final destination or to provide reasonable accommodations as approved in writing in advance by Southwest Airlines.

(3)   Flight Schedule Changes. Flight schedules are subject to change without

notice, and times shown are not guaranteed. At times, without prior notice to Passengers, Southwest Airlines may need to substitute other aircraft and may change, add, or omit intermediate stops. The Carrier cannot guarantee that Passengers will make connections to other flights operated by Southwest Airlines or by other airlines. In the event of flight schedule changes or service withdrawals, the Carrier will attempt to notify affected Passengers as early as possible.

(4)   Limitation of Liability. Except to the extent provided in Section 9.a., the Carrier shall not be liable for any failure or delay in operating any flight, with or without notice, for reasons of aviation safety or when advisable, in its sole discretion, due to Force Majeure Events, as defined above. For the avoidance of doubt, under no circumstances will Carrier be liable to Passenger or Customer for consequential damages.

## D.   Southwest Airline's Customer Service Plan

75.   Southwest Airline's Customer Service Plan states the following with respect to delays within seven days of departure:

### 2.   Notifying Customers of known delays, cancelations, and diversions (for flights within seven days of departure)

If your flight experiences a delay of 30 minutes or more, is canceled, or is diverted, we use an automated system to notify you within 30 minutes of our being made aware of such flight status change. Unless you opt out, you will be notified by email, voice, or text, depending on the selection made at the time the reservation was booked (voice notification is not available for international reservations). At the airport, including the departure gate and Flight Information Display screens under our control, we will make every reasonable effort to notify you of the updated status of your flight within 30 minutes of our being made aware of such flight status change. For an international itinerary, if you do not provide contact information at the time of booking, you will not receive automated notifications. For changes to a flight that is more than seven days from departure, see Section 10 below.

### 3.   Delivering baggage on time

We make every reasonable effort to load the items you entrust into our care onto the same plane you board and return them to you promptly at your destination. If delayed, we make every

reasonable effort to return your luggage to you within 24 hours.

If your luggage is delayed or lost for reasons outside of your control, you may file a mishandled baggage report at the airport and submit a claim for consideration of reimbursement of reasonable expenses you may have incurred. Southwest does not charge fees for the first and second checked bags (provided they are not oversize or overweight). If you paid a baggage fee to Southwest and your checked bag was delayed and not recovered, we refund the applicable fee(s) paid. See Southwest.com for more information on traveling with checked baggage.

[…]

**5.      When a refund is due, providing it promptly**

Eligible refunds are provided according to the ticket's original form of payment and rules associated with that form of payment.

Refunds for eligible Southwest tickets purchased with a credit card will be credited back to the same credit card. Our Refunds Department processes credit card refunds within seven business days from the date we receive the request. Your credit card company may then take up to 10 business days to post the credit to your account, and, based on your individual billing cycle, you will see the refund on your credit card statement within one to two billing statements.

Refunds for eligible Southwest tickets purchased with cash will be issued by check no later than 20 business days after we receive your request.

Additional information on refunds is available at Southwest.com.

[…]

**8.      Handling "bumped" Passengers with fairness and consistency**

Southwest does not typically overbook flights; however, there may be instances where the number of Customers holding reservations exceeds the available seating capacity resulting in an oversale. In these situations, our Customer Service Agents will ask those who have checked in and received a boarding pass if they are willing to volunteer to take a later flight.

If we do not receive enough volunteers to accommodate all Customers who have purchased travel and have met our check-in requirements, we have to involuntarily deny boarding to

Customers. If you are involuntarily denied boarding you will be given a written Notice of Denied Boarding to help understand our policies, compensation, and travel alternatives. You will generally be entitled to compensation and transportation on the next available Southwest flight. See Southwest.com for additional information.

**9. Disclosing cancelation policies, frequent flyer rules, aircraft seating configuration, and lavatory availability**

Information about our cancelation policies, frequent flyer rules, aircraft-seating configuration, and lavatory availability is available over the phone with a Southwest Representative or by following the links to Southwest.com below:

● Cancelation of confirmed reservations

● Rapid Rewards Frequent Flyer Program

● Our Airplanes

**10. Notifying Customers in a timely manner of changes in travel itineraries (more than seven days from departure)**

We sell flights several months in advance, and at times, we may adjust our schedules. We will notify you as far in advance as practicable of any change to your itinerary, including routing, departure time, and/or arrival time. We will attempt to notify you within 48 hours of our becoming aware of the change.

You will have the option to select the revised itinerary, or, if the itinerary change is significant, you may choose an alternate flight/date within a 14-day parameter of your original travel, or cancel your trip without penalty and receive a refund upon request in accordance with our Contract of Carriage. For changes within seven days of departure, refer to Section 2 above.

**11. Ensuring responsiveness to Customer complaints**

Compliments, complaints, or questions about service? Email, call, or write to us. Written complaints will receive an acknowledgement in writing indicating receipt of the complaint within 30 days of receipt. You will also receive a substantive response no later than 60 days after our receipt of your complaint. Contact information is available at Southwest.com.

**12.    Identifying the services we offer to help mitigate Customer inconveniences during irregular operations**

Southwest intends to operate flights as scheduled; however, there are situations that arise based on either uncontrollable and/or controllable circumstances that may cause a flight to be significantly delayed and/or canceled.

For significant flight delays or Southwest-initiated cancelations that are within our control (e.g., mechanical problems, aircraft swap) we will rebook you on the next available Southwest flight(s) with seats available to your ticketed destination at no additional cost. If you choose not to travel due to a significant delay and/or cancelation, Southwest will issue a refund of the unused portion of your Southwest ticket upon request in accordance with our Contract of Carriage.

During flight delays that are within our control of three (3) or more hours and/or Southwest-initiated cancelations that are within our control that result in a wait of three (3) or more hours for a flight at the airport, we will provide a meal voucher upon request at the airport for participating vendors within the airport or, if participating vendors and/or vouchers are not available, we will honor reasonable requests for reimbursement for meals purchased during such irregular operations. Additionally, we may provide complimentary snacks and beverages for Customers.

If Southwest flight accommodations departing on the same day to your intended destination or applicable co-terminal city are not available following a flight delay or Southwest-initiated cancelation that is within our control (e.g., mechanical problems, aircraft swap), resulting in an overnight delay or stay, we will arrange lodging accommodations upon request if available, or will honor reasonable requests for reimbursement for lodging accommodations (provided you do not reside locally). If the lodging accommodation we arrange does not provide shuttle service to/from the airport, we will offer a voucher upon request or honor reasonable requests for reimbursement for ground transportation.

For significant flight delays or Southwest-initiated cancelations that are not within our control (e.g., weather, Air Traffic Control, safety/security-related events, FAA-required crew duty limitations, infrastructure/utility problems), we will rebook you

21
COMPLAINT

Exhibit 3 Page 60

on the next available Southwest flight(s) with seats available to the Customer's ticketed destination at no additional cost. If you choose not to travel due to a significant delay and/or cancellation, Southwest will issue a refund of the unused portion of your Southwest ticket upon request in accordance with our Contract of Carriage.

Although we do not offer complimentary lodging accommodations for significant flight delays or Southwest-initiated cancelations that are not in our control, we will seek to arrange a discount off of a lodging accommodation near the airport.

## V. DAMAGES

76. Plaintiff was not given the choice of being transported on the next available flight at no additional charge. His flight was cancelled and there were no alternative Southwest flights to accommodate him from the Trip's origin to his destination. He had not used any portion of the ticket for his Trip. Thus, pursuant to the terms of the Contract of Carriage, Plaintiff is entitled to a refund of the fare for the entire Trip in U.S. Dollars to his original form of payment

## VI. CLASS ACTION ALLEGATIONS

77. Pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2) and (b)(3), as applicable, Plaintiff seeks certification of the following nationwide class (the "Class"):

All persons in the United States who purchased tickets for travel on a Southwest Airlines flight scheduled to operate notably from June 2020 through the date of certification but including the time period allowed by the statute of limitations, and that flight was delayed or cancelled, and who were not provided a refund and reimbursed for incurred expenses as a result of the cancellation.

78. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members

1  of their judicial staff, and any Judge sitting in the presiding court system who may
2  hear an appeal of any judgment entered.

3  79.   Plaintiff reserves the right to amend or modify the Class definition with
4  greater specificity or division after having had an opportunity to conduct discovery.

5  80.   Plaintiff seeks only damages and injunctive relief on behalf of himself
6  and the Class members. Plaintiff disclaims any intent or right to seek any recovery in
7  this action for personal injuries, wrongful death, or emotional distress suffered by
8  Plaintiff and/or the Class members.

9  81.   The Class meets the criteria for certification under Rule 23(a), (b)(1),
10 (b)(2), (b)(3) and (c)(4).

11 82.   **Risk of Inconsistent or Varying Adjudications. Fed. R. Civ. P.**
12 **23(b)(1).** As the proposed class members include thousands of persons across all 50
13 states, there is significant risk of inconsistent or varying adjudications with respect to
14 individual class members that would establish incompatible standards of conduct for
15 the Defendant. For example, declaratory relief may be entered in multiple cases, but
16 the ordered relief may vary, causing the Defendant to have to choose the court order
17 with which it will comply.

18 83.   **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1),
19 the members of the Class are so numerous and geographically dispersed that the
20 joinder of all members is impractical. While the exact number of class members is
21 unknown to Plaintiff at this time, it is believed that the Class is comprised of tens of
22 thousands if not hundreds of thousands of members geographically dispersed
23 throughout the United States. Affected consumer's names and addresses are available
24 from Southwest's records, and class members may be notified of the pendency of this
25 action by recognized, court-approved notice dissemination methods, which may
26 include electronic mail, U.S. Mail, internet notice, and/or published notice.

27 84.   **Predominance of Common Issues. Fed. R. Civ. P. 23(a)(2) and**
28 **(b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement,

this action involves common questions of law and fact that predominate over any questions affecting individual class members. The common questions include:

    a.    Whether Defendant's conduct breaches its Contract of Carriage and/or Customer Service Plan;

    b.    Whether Defendant is required to give a refund and reimburse all related expenses as a result of the cancellations, rather than credit on a future flight when it cancels a flight and cannot reaccommodate the passengers within a reasonable time of the original flight schedule;

    c.    Whether Plaintiff and members of the Class are entitled to damages, costs, or attorneys' fees from Defendant; and

    d.    Whether Plaintiff and members of the Class are entitled to compensatory damages.

85. **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claims are typical of other Class members' claims because Plaintiff and Class members were subjected to the same unlawful conduct and damaged in the same way. Defendant's conduct that gave rise to the claims of Plaintiff and other Class members (i.e., cancelling flights without giving refunds in breach of the Contract of Carriage) is the same for all Class members.

86. **Adequacy. Fed. R. Civ. P. 23(a)(4)**. Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in litigating consumer claims. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of the Class.

87. **Superiority. Fed. R. Civ. P. 23(b)(3)**. Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be

encountered in the management of this class action. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs and class members may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class members are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Moreover, individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

88. **Declaratory Relief**. Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole. Moreover, Defendant continues to offer credits instead of refunds to Plaintiff and Class members for flights that they cancel, thus making declaratory relief a live issue and appropriate to the Class as a whole.

**COUNT I**
**BREACH OF CONTRACT**
**(on behalf of Plaintiff and the Class)**

89. Plaintiff realleges and reincorporates its allegations in the paragraphs above as though fully stated herein.

90. This claim for breach of contract damages or, in the alternative, specific performance of the contract's refund terms, is based on Defendant's breaches of its Contract of Carriage and/or Customer Service Plan (the "Contract").

91. Plaintiff, along with all putative class members, entered into a Contract

25
COMPLAINT

Exhibit 3 Page 64

of Carriage and/or Customer Service Plan with Defendant for provision of air travel in exchange for payment.

92.     The Contract of Carriage and/or Customer Service Plan were each drafted by Defendant.

93.     Plaintiff, and all putative class members performed under the Contract of Carriage and/or Customer Service Plan, specifically, by tendering payment for the airline tickets to Defendant and complied with all conditions precedent under the Contract.

94.     Due to Defendant's cancellation of their flights, Plaintiff and all putative class members cannot use their airline tickets through no fault of their own and they are not getting the benefit of their bargain with Defendant.

95.     Under the terms of the Contract of Carriage and/or Customer Service Plan drafted by Defendant, Plaintiff and putative class members are entitled to refunds because Southwest cancelled their flights and did not rebook the customers on another flight. By failing to provide refunds, Southwest has breached its Contract of Carriage and/or Customer Service Plan.

96.     In fact, Plaintiff had to incur the rental of a vehicle and drove from Oakland, California to his home in San Diego, and has not been reimbursed for incurred expenses as a result of the cancellation.

97.     Southwest has further breached its Contract of Carriage and/or Customer Service Plan by failing to provide refunds within seven days for cancelled tickets purchased with credit cards.

98.     As a result of Defendant's breaches of contract, Plaintiff and the putative class members have incurred damages in an amount to be proven at trial.

## <u>COUNT II</u>
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (on behalf of Plaintiff and the Class)

99.     Plaintiff realleges and reincorporates its allegations in the paragraphs above as though fully stated herein.

Exhibit 3 Page 65

100.   Southwest Airlines owed a duty of good faith and fair dealing in regards to its Contract of Carriage and/or Customer Service Plan with Plaintiff and Class Members, notably having working software allowing its flights to be properly staffed and having contingencies for foreseeable winter storms.

101.   Southwest Airlines breached its duty of good faith and fair dealing in regards to its Contract of Carriage and/or Customer Service Plan with Plaintiff and Class Members for the reasons stated herein.

102.   Southwest Airlines' breaches of its duty of good faith and fair dealing in regards to its Contract of Carriage and/or Customer Service Plan are the direct and proximate cause of Plaintiff's and class members' damages.

103.   As a result, Plaintiff and class members are each entitled to an award of damages in an amount to be determined at trial.

## COUNT III
### BAILMENT
### (on behalf of Plaintiff and the Class)

104.   Plaintiff realleges and reincorporates its allegations in the paragraphs above as though fully stated herein.

105.   Plaintiff and Class Members delivered and entrusted their luggage to Defendant for the purpose of enabling Defendant to conduct its business flying Plaintiff and Class Members to their destinations.

106.   A bailment arises where possession, but not ownership, of property is transferred from one party ("bailor") to another ("bailee"). Where a bailee has received a bailment from a bailor, a duty of care is owed. Typically, a bailee is strictly liable for the bailment.

107.   In delivering and entrusting their luggage, Plaintiff and Class members intended and understood that Defendants would adequately safeguard their luggage.

108.   Defendant accepted possession of Plaintiff's and Class members' luggage, and by accepting possession of Plaintiff's and Class members' luggage,

Exhibit 3 Page 66

1    Defendant understood that Plaintiff and Class members expected it to adequately
2    safeguard their luggage. Accordingly, a bailment was established for the mutual
3    benefit of the parties.

4         109.   During the period of bailment, Defendant, as bailee, owed Plaintiff and
5    all other Class members a duty of care to safeguard their luggage by maintaining
6    adequate procedures and infrastructure to protect such luggage. In failing to maintain
7    such adequate procedures and infrastructure, Southwest breached this duty.

8         110.   Defendant, as bailee, is expected to return to its owner the bailed goods
9    (the luggage) when the bailee's time for possession of them is over.

10        111.   During the period of bailment, Defendant, as bailee, owed Plaintiff and
11   Class Members a duty of care to safeguard their luggage by maintaining reasonable
12   procedures and practices to protect such luggage.

13        112.   As alleged herein, Defendant breached this duty.

14        113.   As a result of Defendant's breach of this duty, Plaintiff and all other
15   Class Members have been harmed as alleged herein.

## COUNT IV
## INJUNCTIVE RELIEF

16
17        114.   Plaintiff realleges and reincorporates his allegations in the paragraphs
18   above as though fully stated herein.
19
20        115.   Plaintiff and Class Members have clear and ascertainable rights in need
21   of protection – namely: (a) the right to have Defendant abide by its obligations under
22   the Contract of Carriage and/or Customer Service Plan when they book a flight with
23   Defendant; (b) the right to not have travel impacted due to Defendant's antiquated
24   crew scheduling technology and/or SkySolver technology and inability to schedule
25   crews and get flights off of the ground in a timely manner.

26        116.   Plaintiff and Class Members have no adequate remedy at law because a
27   legal remedy cannot protect Plaintiff and Class Members from future flights being
28   impacted as a result of antiquated crew scheduling technology and/or SkySolver

technology and cannot otherwise prevent Defendant's antiquated crew scheduling technology and/or SkySolver technology from causing delays and cancellations in the future.

117. Plaintiff and Class Members will suffer irreparable harm, as alleged herein, caused by Defendant if its antiquated crew scheduling technology and/or SkySolver technology is not replaced or updated, requiring injunctive relief.

118. Plaintiff and Class Members are likely to succeed on the merits because, as alleged herein, Defendant promised to provide a flight at a particular time and date and, unless they are forced to update their technology in a timely manner, Plaintiff's travel may be negatively impacted via unnecessary flight delays and/or cancellations due to its antiquated crew scheduling technology. Plaintiff and Class Members seek injunctive relief: (a) requiring Defendant to update or replace its antiquated crew scheduling technology and/or SkySolver technology; and (b) refunding Plaintiff's and the Class Members' ticket fees automatically.

## COUNT V
## DECLARATORY RELIEF
### 28 U.S.C. §§ 2201 and 2202

119. Plaintiff realleges and reincorporates its allegations in the paragraphs above as though fully stated herein.

120. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant fails to comply with applicable laws, including both common law and statutory law.

121. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

122. Plaintiff's claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

1

## **REQUEST FOR RELIEF**

2   **WHEREFORE**, Plaintiff, individually and on behalf of all putative Class

3  members, respectfully requests that the Court enter judgment in his favor and against

4  Defendant as follows:

5   A.    For an Order determining at the earliest possible time that this matter

6  may proceed as a class action under Rule 23 and certifying this case as such;

7   B.    For Plaintiff and each Class member their actual compensatory

8  damages, or in the

9  alternative, for specific performance of the refund provisions of the Contract of

10  Carriage and/or Customer Service Plan;

11   C.    For injunctive relief requiring Southwest to replace and/or update its

12  antiquated crew scheduling technology and/or SkySolver technology.

13   D.    For reasonable attorneys' fees and costs of suit;

14   E.    For pre-judgment interest and interest pursuant to redhibition; and

15   F.    Such further and other relief the Court deems reasonable and just.

16   ## **JURY DEMAND**

17   Plaintiff, on behalf of himself and the Class of all others similarly situated,

18  hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the

19  Federal Rules of Civil Procedure.

20  Date: February 15, 2023          **GLANCY PRONGAY & MURRAY LLP**

21

22                    By: *s/ Kevin F. Ruf*
                          Kevin F. Ruf (SBN 136901)
23                        1925 Century Park East, Suite 2100
                          Los Angeles, CA 90067
24                        Tel: (301) 201-9150
                          Fax: (301) 201-9160
25                        kruf@glancylaw.com

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GLANCY PRONGAY & MURRAY LLP**
Brian P. Murray
230 Park Avenue, Suite 358
New York, NY 10169
Tel: (212) 682-5340
Fax: (212) 884-0988
bmurray@glancylaw.com

*Attorneys for Plaintiff and the Class*

Exhibit 3 Page 70

.,LNO

# U.S. District Court
## Southern District of California (San Diego)
### CIVIL DOCKET FOR CASE #: 3:23-cv-00633-AJB-BLM

Hill et al v. Southwest Airlines Co. et al

Assigned to: Judge Anthony J. Battaglia

Referred to: Magistrate Judge Barbara Lynn Major

Related Case: 3:23-cv-00306-AJB-BLM

Case in other court: Superior Court, San Diego County, 37-02023-00000474-CU-BC-CTL

Cause: 28:1446bc Notice of Removal - Breach of Contract

Date Filed: 04/07/2023

Jury Demand: Both

Nature of Suit: 370 Other Fraud

Jurisdiction: Diversity

**Plaintiff**

**Paula Hill**
*on behalf of themselves and all others similarly situated*

represented by **Elijah Thomas Gaglio**
Aguirre & Severson, LLP
501 West Broadway
Suite 1050
San Diego, CA 92101
619-876-5364
Email: egaglio@amslawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maria C Severson**
Aguirre and Severson, LLP
501 West Broadway
Suite 1050
San Diego, CA 92101-3597
(619)876-5364
Fax: (619)876-5368
Email: mseverson@amslawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J Aguirre**
Aguirre & Severson, LLP
501 West Broadway
Suite 1050
San Diego, CA 92101
(619)876-5364
Fax: (619)876-5368
Email: maguirre@amslawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Exhibit 3 Page 71

**Eva Pina**
*on behalf of themselves and all others*
*similarly situated*

represented by **Elijah Thomas Gaglio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maria C Severson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J Aguirre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Southwest Airlines Co.**
*a Delaware corporation*

represented by **Alexander Vitruk**
Baker & Hostetler LLP
999 3rd Ave
Suite 3900
Seattle, WA 98104
206-566-7092
Email: avitruk@bakerlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew D. Pearson**
Baker & Hostetler LLP
600 Anton Blvd.
Ste 900
Costa Mesa, CA 92626
714-754-6600
Fax: 714-754-6611
Email: mpearson@bakerlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Does 1 through 100**
*inclusive*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/07/2023 | [1] | NOTICE OF REMOVAL With Jury Demand (Filing fee $402.00 receipt number ACASDC-17740601.), filed by Southwest Airlines Co. (Attachments: # [1] Civil Cover Sheet, # [2] Exhibit A - State Court First Amended Class Action Complaint, # [3] Exhibit B - State Court Other Filings)<br><br>The new case number is 3:23-cv-633-BEN-BGS. Judge Roger T. Benitez and Magistrate Judge Bernard G. Skomal are assigned to the case.(mjw)(jrd) (Entered: 04/07/2023) |

Exhibit 3 Page 72

| 04/10/2023 | 2 | Corporate Disclosure Statement by Southwest Airlines Co. identifying Other Affiliate The Vanguard Group for Southwest Airlines Co... (Pearson, Matthew) (alns). (Entered: 04/10/2023) |
|---|---|---|
| 04/10/2023 | 3 | MINUTE ORDER OF RECUSAL. Judge Roger T. Benitez is no longer assigned. Case reassigned to Judge Barry Ted Moskowitz for all further proceedings. The new case number is 23-cv-0633-BTM-BGS.(no document attached) (dim)(anh). (Entered: 04/10/2023) |
| 04/12/2023 | 4 | Joint MOTION to Continue *Defendant Southwest Airlines Co.'s Deadline To Respond To Complaint* by Southwest Airlines Co.. (Pearson, Matthew) (alns). (Entered: 04/12/2023) |
| 04/24/2023 | 5 | ORDER granting 4 Joint Motion to Continue Defendant Southwest Airlines Co.'s deadline to respond to Complaint. Signed by Judge Barry Ted Moskowitz on 4/24/2023. (jpp) (rmc). (Entered: 04/24/2023) |
| 04/25/2023 | 6 | Joint MOTION to Continue Defendant Southwest Airlines Co.'s Deadline To Respond To Complaint, by Southwest Airlines Co. (Pearson, Matthew) (maq). (Entered: 04/25/2023) |
| 04/28/2023 | 7 | ORDER OF TRANSFER PURSUANT TO LOW NUMBER RULE. Case reassigned to Judge Anthony J. Battaglia and Magistrate Judge Barbara Lynn Major for all further proceedings. Judge Barry Ted Moskowitz, Magistrate Judge Bernard G. Skomal no longer assigned to case. Create association to 3:23-cv-00306-AJB-BLM. The new case number is 23cv633-AJB-BLM. Signed by Judge Barry Ted Moskowitz on 4/26/2023. Signed by Judge Anthony J. Battaglia on 4/28/2023.(sjt) (Entered: 04/28/2023) |
| 05/18/2023 | 8 | Joint MOTION to Continue Defendant Southwest Airlines Co.'s Deadline to Respond to Complaint, by Southwest Airlines Co. (Pearson, Matthew) (maq). (Entered: 05/18/2023) |
| 05/18/2023 | 9 | ORDER Granting Joint Motion to Continue Defendant Southwest Airlines Co.'s Deadline to Respond to Complaint. Southwest's responsive pleading deadline due by 6/19/2023. Signed by Judge Anthony J. Battaglia on 5/18/2023. (maq) (Entered: 05/18/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/26/2023 14:03:41 | | |
| **PACER Login:** | tyiatras | **Client Code:** | SOUTHWEST |
| **Description:** | Docket Report | **Search Criteria:** | 3:23-cv-00633-AJB-BLM |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

Exhibit 3 Page 73

Case 2:23-cv-00846-JLB-NPM Document 18-3 Filed 06/09/2023 Page 96 of 157 Page 59 of 120

# EXHIBIT A

Exhibit 3 Page 74

Michael J. Aguirre, Esq., SBN 060402
Maria C. Severson, Esq., SBN 173967
Elijah T. Gaglio, Esq., SBN 324799
AGUIRRE & SEVERSON, LLP
501 West Broadway, Suite 1050
San Diego, CA 92101
Telephone: (619) 876-5364
Facsimile: (619) 876-5368

Attorneys for Plaintiffs

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**03/06/2023** at 11:53:00 AM

Clerk of the Superior Court
By Lee McAlister,Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

**'23 CV 0633 BEN BGS**

| | |
|---|---|
| PAULA HILL and EVA PIÑA, on behalf of themselves and all others similarly situated, | Case No. 37-2023-00000474-CU-BC-CTL<br>Assigned for All Purposes to<br>Hon. James A. Mangione, Dept. 75 |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT FOR:** |
| v. | |
| SOUTHWEST AIRLINES CO., a Delaware corporation; and DOES 1 through 100, inclusive, | **(1) BREACH OF CONTRACT;**<br>**(2) VIOLATIONS OF CAL. BUS. CODE §17200** *et al* |
| Defendants. | **Demand for Jury Trial** |
| | Complaint filed: January 5, 2023 |
| | **IMAGED FILE** |

### INTRODUCTION

1.      This class action is brought on behalf of all California family members who purchased Southwest Airlines tickets for a flight into a California airport, a flight out of a California airport, or a flight between California airports during the period December 22, 2022, to January 3, 2023, where the flight(s) purchased were not delivered and travel disrupted.

2.      This class action is based on the common questions and fact of law that Southwest Airlines failed to maintain proper software and computer systems to track reservations and to administer proper flight information so that customers could complete their travel plans, or would have alternatives to complete their travel plans.

1

3.      Southwest Airlines knew that it had made reservations far beyond its ability to serve its customers, but failed to notify its customers because it wanted the financial advantage of being able to retain customer purchase funds so that Southwest Airlines could garner interest on those funds and could otherwise burden its customers by having to request the return of their funds or to bring litigation to recover their damages.

4.      The lawsuit seeks compensatory damages including the cost of the ticket and damages incidental to the canceled flights, including relating to baggage loss and delay.

5.      This lawsuit further seeks to stop Southwest Airlines from collecting money for airlines tickets until it has systems in place that can deliver the flights.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over the action because this is a civil action involving purchasers of airline flights into, out of, and between cities in California. The matter in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of the Court.

7.      Venue is proper because the acts and/or omissions complained of took place, in whole or in part, within the venue of this Court. Venue is also proper because the Plaintiffs reside in, and the Defendant does business in, this county.

**PARTIES**

8.      Plaintiff Paula Hill is a resident of the County of San Diego who purchased Southwest Airline tickets for roundtrip travel between San Diego, California and Kansas City from December 25, 2022 through January 2, 2023, but said flights were canceled by Southwest Airlines and travel was delayed.  Because of the Southwest Airlines wrongful conduct as alleged herein, Plaintiff was not able to spend Christmas and New Years with family as intended upon her purchase of the tickets.

9.      Plaintiff Eva Piña is a resident of the County of San Diego who purchased Southwest Airline tickets for roundtrip travel between San Diego and Sacramento, California from December 21, 2022 through December 26, 2022, but said flights were canceled by Southwest Airlines and travel was delayed. Because of the Southwest Airlines wrongful conduct as alleged herein, Plaintiff Piña was forced to find an alternative means of travel to get back to

San Diego by booking a car through a rental service for an 8-hour drive from Sacramento to San Diego.

10.     Defendant is Southwest Airlines Co., a Delaware corporation that does business in in San Diego, California and throughout California. It is called by some the "unofficial airlines of California."

11.     Plaintiffs are informed and believe, and thereupon allege, that at all times relevant and mentioned herein, Defendant and DOES 1 through 100, inclusive, and each of them, were the agents, servants, employees, independent contractors, co-conspirators, retailers, distributors, wholesalers, management companies, subsidiaries and/or joint ventures of the remaining Defendants, and each of them, and were at all times material hereto acting within the authorized course, scope and purpose of said agency and employment, and/or that all of said acts were subsequently performed with the knowledge, acquiescence, ratification and consent of the respective principals, and the benefits thereof accepted by said principals.

12.     The true names and/or capacities, whether individual, corporate, governmental, associate, or otherwise, of Defendant DOES 1 through 100, inclusive, and each of them, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe, and thereon allege, that each Defendant fictitiously named herein as a DOE is legally responsible as alleged herein, for the events and damages hereinafter referred to, and which legally caused the injuries and damages to Plaintiffs, and other class members, as hereinafter alleged. Plaintiffs will seek leave of Court to amend this Complaint to insert the true names and/or capacities of such fictitiously named Defendants when the, same have been ascertained.

## CLASS ACTION

13.     Plaintiffs bring this action pursuant to California Code of Civil Procedure 382 on behalf of all California family members and persons ("the Class") who purchased Southwest Airlines tickets for a flight into a California airport, a flight out of a California airport, or a flight between California airports for travel during the period December 22, 2022, to January 3, 2023 ("Class Period") where the flight(s) purchased were not delivered and travel disrupted.

3

14. Plaintiffs sue as representative parties on behalf of the Class. The Class is so numerous that joinder would be impracticable.

15. The overwhelming common question is the liability of Southwest Airlines in breaching its duty to its customers to provide the flights for the tickers it sold.

16. There is a well-developed community of interest, with fundamental questions of law and fact common to the class including, but not limited to Southwest Airlines' breach of its contract for flights with the Class, Southwest Airlines' unfair business practices of selling airline tickets with known deficient software and other systems that prohibit or impede its ability to perform on the contract and provide flights as purchased.

17. The proposed class is ascertainable because there is a well-defined community of interest in the questions of law and fact involved. A substantial benefit both to the litigants and to the court will result because the claims will not have to be litigated separately and conflicting rulings will be avoided.

18. The causes of action of the representative party are typical of the claims of the class. The representative parties and counsel will fairly and adequately protect the interests of the class. The common questions of law and fact common to the class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

19. The knowledge and decisions of the Southwest, and Southwest's misrepresentations and omissions identified in this operative complaint are common to all.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

20. The knowledge and decisions of the Southwest, and Southwest's misrepresentations and omissions identified in this operative complaint are common to all.

21. Southwest Airlines is California's busiest airline, with approximately 800 flights scheduled on peak days, many between Northern and Southern California.

22. "Southwest is almost the unofficial airline of California," according to one industry analyst.

/ / /

4

23.     Southwest Airlines holds itself out as a reliable carrier, but those representations are belied by the antiquated manner in which the airline operates.

24.     Plaintiffs are informed and believe Southwest's old software systems failing appears to be a key factor in why Southwest Airlines could not provide the flights in California as purchased during the period of December 22, 2022 through January 3, 2023.

25.     More than 15,000 of Southwest flights were canceled starting on December 22, 2022.

26.     Plaintiffs are informed and believe, and thereon allege, Southwest Airlines knew of its software deficiencies, and had been warned of those software issues impacting customer travel.

27.     Southwest Airlines admitted its "technology struggled to align our resources, requiring Southwest personnel to respond to its scheduling issues manually.

28.     Southwest Airlines admitted during the Class Period, it had aircrafts available, but "[t]he process of matching up those crew members with the aircraft could not be handled by Southwest's technology," according to Southwest's chief operating officer Andrew Watterson.

29.     Southwest admits that its systems needed upgrades.

30.     As other airlines have spent billions of dollars into upgrading technology for employees, passengers and operations, Southwest has resisted in favor of older methods that, which in part, helped make it the most profitable airline in the country.

31.     During the class period, Southwest canceled more than 15,000 flights, and did not have the systems in place to process customers' luggage.

32.     Southwest's systems failed to give adequate notice to customers about flight cancellations or delays, and failed to provide refunds or other remuneration so that customers could make alternate arrangements.

33.     The breaches of contract and unfair business practices disrupted customers' travel during the 2022 holiday season from Christmas through the new year. Customers were prevented from seeing loved ones, and had to deal with baggage disruptions, delays, alternative travel, and other losses.

5

Exhibit 3 Page 79

34.     Southwest Airlines did not refund monies to those who paid for tickets, and when refunds were made, there was no care to ensure the funds were returned to those who spent them.

### **FIRST CAUSE OF ACTION**

### **(BREACH OF CONTRACT)**

35.     Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

36.     Plaintiffs and class members entered into a contract with Southwest Airlines for flights during December 22, 2022 to January 3, 2023.

37.     Plaintiffs and class members did all, or substantially all, of the significant things that the contract required including, but not limited to, purchasing the airline tickets.

38.     Southwest Airlines made reservations far beyond its ability to serve its customers, but failed to notify its customers because it wanted the financial advantage of being able to retain customer purchase funds so that Southwest Airlines could garner interest on those funds and could otherwise burden its customers by having to request the return of their funds or to bring litigation to recover their damages.

39.     Southwest Airlines failed to provide the flights purchased by Plaintiffs and class members.

40.     Southwest Airlines failed to use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and failed to exercise a reasonable degree of skill.

41.     Southwest Airlines failed to give to Plaintiffs and class members such accommodations as are usual and reasonable, and must treat them with civility and give them a reasonable degree of attention. Southwest Airlines failed to give its passengers all such accommodations that are usual and reasonable.

42.     Southwest Airlines failed to provide to Plaintiffs and class members a reasonable rate of speed for their travel, without any unreasonable delay, or deviation from his proper route.

43.     A common carrier, such as Southwest Airlines, is liable for delay when it is cause by its own want of ordinary care and diligence.

/ / /

6

Exhibit 3 Page 80

44.     Plaintiffs and the Class was harmed as a result of Southwest Airlines' actions.

## **SECOND CAUSE OF ACTION**

### **(Unfair Competition)**

45.     Plaintiffs incorporate by reference and reallege the previous paragraphs as though set forth fully herein.

46.     Southwest Airlines has engaged and continue to engage in unfair and/or unlawful business practices in California in violation of California Business and Professions Code § 17200 *et seq* by failing to provide air flights as purchased and collecting funds for airline tickets knowing it did not have a system that can deliver the flights.

47.     Southwest Airlines' utilization of these unfair and/or unlawful business practices deprived Plaintiffs and continues to deprive members of the Class the damages that resulted from the cancelled and delayed flights constitutes unfair and/or unlawful competition, and provides an unfair advantage over Southwest Airlines' competitors who provided similar air flights.

48.     In selling airline tickets to Plaintiffs and the Class, while failing to have and maintain software, technology and systems in place to deliver those flights purchased and otherwise accommodate customers so that travel could be completed as purchased, defendant engaged in unfair business practices under Bus & Prof Code 17200 *et seq*.

49.     Because Plaintiffs and the Class are victims of Defendant's unfair and/or unlawful conduct alleged herein, Plaintiffs for themselves and on behalf of the members of the Class seek full restitution of monies, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by Defendant pursuant to Business and Professions Code §§17203 and 17208.

50.     Plaintiffs seek an order restoring funds taken from Plaintiffs and the Class, and enjoining Defendant from continuing to take payments for flights until it has systems in place that can deliver the flights purchased.

51.     Upon these premises Defendants are liable to plaintiffs for the damages they suffered in connection with their investments with defendants.

/ / /

Exhibit 3 Page 81

52. The acts complained of herein occurred during the period of December 22, 2022 to January 3, 2023.

53. Plaintiffs were compelled to retain the services of counsel to file this court action and to protect her interest and those of the Class, to obtain restitution and injunctive relief, and to enforce important rights affecting the public interest. Plaintiffs thereby incurred the financial burden of attorneys' fees and costs, which they are entitled to recover.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray judgment against Defendant as follows:

**On the Breach of Contract Action:**

1. For compensatory damages to Plaintiffs and the Class, including but not limited to, the cost of the tickets purchased and damages incidental to the canceled and delayed flights in an amount according to proof;

**On the Unfair Competition Law Claim:**

2. For an order granting injunctive relief to prohibiting Southwest Airlines from collecting funds for airline tickets until it demonstrates that it has systems in place that can deliver the flights sold;

3. For restitution to Plaintiffs and the Class in an amount according to proof

**On all Claims:**

4. For reasonable attorneys' fees and costs of suit; and

5. For all other relief the Court determines is warranted.

AGUIRRE & SEVERSON, LLP

Dated: March 6, 2023

_/s/Maria Severson_
Maria C. Severson, Esq.
Attorneys for Plaintiffs

FIRST AMENDED CLASS ACTION COMPLAINT

CASE NO. 37-2023-00007489-CU-BC-CTL

Exhibit 3 Page 82

LNO

# U.S. District Court
## Southern District of California (San Diego)
## CIVIL DOCKET FOR CASE #: 3:23-cv-00754-AJB-BLM

Smith v. Southwest Airlines Co.                     Date Filed: 04/25/2023
Assigned to: Judge Anthony J. Battaglia            Jury Demand: Plaintiff
Referred to: Magistrate Judge Barbara Lynn Major   Nature of Suit: 190 Contract: Other
Demand: $9,999,000                                 Jurisdiction: Diversity
Related Case: 3:23-cv-00306-AJB-BLM
Case in other court:  U. S. Dist. Court, Northern Dist. of CA, 3:23-
                      cv-00313-CRB
Cause: 28:1332bc Diversity-Breach of Contract

**Petitioner**

**Mary Smith**                        represented by   **Francis J Flynn , Jr**
*individually and on behalf of all others*             Law Office of Francis J. Flynn, Jr.
*similarly situated*                                   422 South Curson Avenue
                                                       Los Angeles, CA 90036
                                                       314-662-2836
                                                       Email: francisflynn@gmail.com
                                                       *ATTORNEY TO BE NOTICED*

V.

**Respondent**

**Southwest Airlines Co**             represented by   **Matthew D. Pearson**
                                                       Baker & Hostetler LLP
                                                       600 Anton Blvd.
                                                       Ste 900
                                                       Costa Mesa, CA 92626
                                                       714-754-6600
                                                       Fax: 714-754-6611
                                                       Email: mpearson@bakerlaw.com
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/22/2023 | 1 | COMPLAINT against Southwest Airlines Co. ( Filing fee $ 402, receipt number ACANDC-17917433.). Filed byMary Smith. (Attachments: # 1 Civil Cover Sheet)(Flynn, Francis) (Filed on 1/22/2023) [Transferred from California Northern on 4/25/2023.] (Entered: 01/22/2023) |
| 01/22/2023 | 2 | Proposed Summons. (Flynn, Francis) (Filed on 1/22/2023) [Transferred from California Northern on 4/25/2023.] (Entered: 01/22/2023) |
| 01/22/2023 | 3 | Case assigned to Magistrate Judge Thomas S. Hixson. |

Exhibit 3 Page 83

| | | Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening.

Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 2/6/2023. (bw, COURT STAFF) (Filed on 1/22/2023) [Transferred from California Northern on 4/25/2023.] (Entered: 01/23/2023) |
|---|---|---|
| 01/23/2023 | [4](#) | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 4/20/2023. Initial Case Management Conference set for 4/27/2023 10:00 AM in San Francisco, Courtroom G, 15th Floor. (dhm, COURT STAFF) (Filed on 1/23/2023) [Transferred from California Northern on 4/25/2023.] (Entered: 01/23/2023)** |
| 01/23/2023 | [5](#) | Summons Issued as to Southwest Airlines Co.. (dhm, COURT STAFF) (Filed on 1/23/2023) [Transferred from California Northern on 4/25/2023.] (Entered: 01/23/2023) |
| 02/04/2023 | [6](#) | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Mary Smith.. (Flynn, Francis) (Filed on 2/4/2023) [Transferred from California Northern on 4/25/2023.] (Entered: 02/04/2023) |
| 02/04/2023 | [7](#) | SUMMONS Returned Executed by Mary Smith. Southwest Airlines Co. served on 1/24/2023, answer due 2/14/2023. (Flynn, Francis) (Filed on 2/4/2023) [Transferred from California Northern on 4/25/2023.] (Entered: 02/04/2023) |
| 02/06/2023 | 8 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now randomly reassign this case to a District Judge because either (1) a party has not consented to the jurisdiction of a Magistrate Judge, or (2) time is of the essence in deciding a pending judicial action for which the necessary consents to Magistrate Judge jurisdiction have not been secured. You will be informed by separate notice of the district judge to whom this case is reassigned.

ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE-NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED.

*This is a text only docket entry; there is no document associated with this notice.* (rmm2, COURT STAFF) (Filed on 2/6/2023) [Transferred from California Northern on 4/25/2023.] (Entered: 02/06/2023) |
| 02/06/2023 | [9](#) | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge Charles R. Breyer for all further proceedings. Magistrate Judge Thomas S. Hixson no longer assigned to case, Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras.. Signed by Clerk on 2/6/2023. (Attachments: # [1](#) Notice of Eligibility for Video Recording)(ark, COURT STAFF) (Filed on 2/6/2023) [Transferred from California Northern on 4/25/2023.] (Entered: 02/06/2023)** |
| 02/06/2023 | 10 | CLERK'S NOTICE: A Joint Case Management Statement due by 5/5/2023. Initial Case Management Conference set for 5/12/2023 at 8:30 AM in San Francisco - To be determined. *(This is a text-only entry generated by the court. There is no document* |

Exhibit 3 Page 84

| | | *associated with this entry.)* (ls, COURT STAFF) (Filed on 2/6/2023) [Transferred from California Northern on 4/25/2023.] (Entered: 02/06/2023) |
|---|---|---|
| 02/08/2023 | [11](#) | STIPULATION re [1](#) Complaint *JOINT STIPULATION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT* filed by Southwest Airlines Co.. (Pearson, Matthew) (Filed on 2/8/2023) [Transferred from California Northern on 4/25/2023.] (Entered: 02/08/2023) |
| 03/13/2023 | [12](#) | STIPULATION re [1](#) Complaint *JOINT STIPULATION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT* filed by Southwest Airlines Co.. (Pearson, Matthew) (Filed on 3/13/2023) [Transferred from California Northern on 4/25/2023.] (Entered: 03/13/2023) |
| 04/11/2023 | [13](#) | STIPULATION WITH PROPOSED ORDER re [12](#) Stipulation *JOINT STIPULATION TO CONTINUE DEFENDANT SOUTHWEST AIRLINES CO.S RESPONSIVE PLEADING TO 30 DAYS AFTER THE COURT RULES ON PLAINTIFFS MOTION TO TRANSFER* filed by Southwest Airlines Co.. (Attachments: # [1](#) Proposed Order)(Pearson, Matthew) (Filed on 4/11/2023) [Transferred from California Northern on 4/25/2023.] (Entered: 04/11/2023) |
| 04/11/2023 | [14](#) | **STIPULATION AND ORDER by Judge Charles R. Breyer: Granting [13](#) Stipulation. (ls, COURT STAFF) (Filed on 4/11/2023) [Transferred from California Northern on 4/25/2023.] (Entered: 04/11/2023)** |
| 04/21/2023 | [15](#) | Joint MOTION to Transfer Case *To the Southern District of California Pursuant to 28 U.S.C. 1404(a) (Stipulation)* filed by Mary Smith. Responses due by 5/5/2023. Replies due by 5/12/2023. (Flynn, Francis) (Filed on 4/21/2023) [Transferred from California Northern on 4/25/2023.] (Entered: 04/21/2023) |
| 04/24/2023 | [16](#) | **STIPULATION AND ORDER TRANSFERRING CASE TO THE SOUTHERN DISTRICT OF CALIFORNIA. Signed by Judge Charles R. Breyer on 4/24/2023. (ls, COURT STAFF) (Filed on 4/25/2023) [Transferred from California Northern on 4/25/2023.] (Entered: 04/24/2023)** |
| 04/25/2023 | [17](#) | Case transferred in from the Northern District of California; Case Number 3:23-cv-00313-CRB. Original file received electronically. (Entered: 04/25/2023) |
| 04/25/2023 | 18 | Judge M. James Lorenz and Magistrate Judge Jill L. Burkhardt assigned to transfer case from Northern District of California. (no document attached) (smy1) (Entered: 04/25/2023) |
| 05/02/2023 | [19](#) | NOTICE OF RELATED CASE(S) by Southwest Airlines Co of case(s) 22-cv-05590-ILRL-KWR; 23-cv-00306-AJB-BLM; 23-cv-00633-AJB-BLM . (Attachments: # [1](#) Proof of Service)(Pearson, Matthew) (cxl1). (Entered: 05/02/2023) |
| 05/12/2023 | [20](#) | ORDER OF TRANSFER PURSUANT TO LOW NUMBER RULE. Case reassigned to Judge Anthony J. Battaglia and Magistrate Judge Barbara Lynn Major for all further proceedings. Judge M. James Lorenz, Magistrate Judge Jill L. Burkhardt no longer assigned to case. Create association to 3:23-cv-00306-AJB-BLM. The new case number is 23cv754-AJB-BLM.. Signed by Judge M. James Lorenz on 05/12/2023. Signed by Judge Anthony J. Battaglia on 05/02/2023.(cxl1) (Entered: 05/12/2023) |
| 05/24/2023 | [21](#) | Joint MOTION to Continue Defendant Southwest Airlines Co.'s Responsive Pleading Deadline to 6/16/2023, by Southwest Airlines Co. (Pearson, Matthew) (maq). (Entered: 05/24/2023) |
| 05/26/2023 | [22](#) | ORDER Granting Joint Motion to Continue Defendant Southwest Airlines CO.'s. Responsive Pleading Deadline to 6/16/2023. Southwest's Deadline to Respond to Plaintiff's Complaint is continued from 5/25/2023 to 6/16/2023. Signed by Judge Anthony J. Battaglia on 5/26/2023. (maq) (Entered: 05/26/2023) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 05/27/2023 11:43:37 | | | |
| **PACER Login:** | tyiatras | **Client Code:** | SOUTHWEST |
| **Description:** | Docket Report | **Search Criteria:** | 3:23-cv-00754-AJB-BLM |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

Exhibit 3 Page 86

1  **LAW OFFICE OF FRANCIS J. FLYNN, JR.**
   Francis J. Flynn, Jr., SBN 304712
2  6057 Metropolitan Plz.
   Los Angeles, California 90036-3211
3  Tele: 314-662-2836
   Email: casey@lawofficeflynn.com
4

5  **ATTORNEY FOR PLAINTIFFS**
   **AND THE PROPOSED CLASS**
6

7              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
8              **SAN FRANCISO DIVISION**

9                                        )
10                                       ) **CASE NO.: 3:23-cv-00313**
11                                       )
                                         ) **CLASS ACTION COMPLAINT FOR**
12                                       ) **DECLARATORY AND INJUNCTIVE**
                                         ) **RELIEF FOR:**
13 **MARY SMITH, individually and on behalf** )
14 **of all others similarly situated**     )   **(I)**     **BREACH OF CONTRACT;**
                                         )
15              **PLAINTIFFS,**           )   **(II)**    **BREACH OF COVENANT OF**
                                         )            **GOOD FAITH AND FAIR**
16      **v.**                            )            **DEALING;**
                                         )
17 **SOUTHWEST AIRLINES CO.**            )   **(III)**   **VIOLATION OF BAILMENT;**
18              **DEFENDANT.**            )
                                         )   **(IV)**    **INJUNCTIVE RELIEF; AND**
19                                       )
                                         )   **(V)**     **DECLARATORY RELIEF (28**
20                                       )            **U.S.C. §§ 2201 and 2202)**
                                         )
21                                       ) **JURY TRIAL DEMANDED**
22                                       )
                                         )
23 _____ )

24      Plaintiff MARY SMITH, ("Plaintiff"), individually and on behalf of all others similarly

25 situated, by and through Plaintiffs' undersigned counsel, bring this class action lawsuit against

26 SOUTHWEST AIRLINES CO. ("Defendant" or "Southwest") and alleges, based upon information

27 and belief and the investigation of Plaintiff's counsel as follows:

28
                                        1

## I.    JURISDICTION

1.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because (a) the aggregated claims of putative class members exceeds $5 million, exclusive of interest and costs; (b) there are at least hundreds of putative class members; and (c) at least one of the members of the putative class is a citizen of a different state than Defendants.

2.    This Court has personal jurisdiction over Defendant because Defendant, directly or through their agents, conduct business in the State of California and within this District. Specifically, Defendants markets in this District and operates flights to and from this District. Through their business operations in this District, Defendants intentionally avail themselves of the markets within this District to render the exercise of jurisdiction by this Court just and proper.

3.    Through its business operations in this District, Defendants intentionally availed themselves of the markets within this District and have sufficient minimum contacts with this State to render the exercise of jurisdiction by this Court just and proper.

### VENUE

4.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the Court sits in a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

### INTRADISTRICT ASSIGNMENT

5.    Pursuant to Northern Dist. LR 3-5 and Civil L.R. 3-2(c), assignment of this case to the San Jose Division of the United States District Court for the Northern District of California is proper because a large portion of the Class reside in this District and a substantial amount of substantial part of the events or omissions giving rise to the Class Members' claims occurred in this Division.

2

## II.    PARTIES

### A. PLAINTIFF

6.    Plaintiff MARY SMITH, over seventy years old, is a citizen of the state of California residing in Milpitas, California.

7.    Plaintiff purchased from Southwest a ticket for a flight on December 29, 2022 from San Jose, California (stop in Las Vegas) to Indianapolis, Indiana:   Confirmation# 3GQRVZ, 12/29/22: SJC(6:50AM) -LAS(10:20AM) -IND(Arrival @ 4:45PM)

8.    December 29, 2022, while Plaintiff, who is over seventy years old, was at the airport waiting for the delayed flight until Southwest cancelled Plaintiff's flight.  She waited for over 10 hours before the canceled the flight, and she was without her luggage for twelve hours.

9.    Southwest was unable to rebook her on a same day flight, but instead booked a flight for December 30, 2022.

10.    On December 30, 2022, Southwest canceled that booked flight.

11.    In fact, the next available flight on Southwest from San Jose, California to Indianapolis, Indiana was not until after January 3, 2022 (assuming that the next available flight would even take off.)

12.    As a result, Plaintiff was forced to purchase a replacement flight through Delta Airlines.

13.    Given the holiday season and the increased supply and demand created as a result of the Southwest debacle, the cost of the Delta Airlines ticket was $720.00 for one way flight.

14.    Defendant did not issue Plaintiff a refund of the price of Plaintiff's ticket.

15.    Defendant did not reimburse Plaintiff for her out of pocket expenses caused a result of cancelling her ticket within hours of the flight during the holiday season.

16.    To make matters worse, Plaintiff was without her luggage for nearly twelve hours,

which included (among other important belongings) her medication.

**B. DEFENDANT**

17.    Defendant SOUTHWEST AIRLINES CO. ("Southwest") is a corporation organized under the laws of Texas with a principal place of business located in Dallas, Texas.

18.    Southwest Airlines Co. (the "Company" or "Southwest") operates Southwest Airlines, a major passenger airline that provides scheduled air transportation in the United States and near-international markets. As of December 31, 2021, Southwest had a total of 728 Boeing 737 aircraft in its fleet and 121 destinations in 42 states, the District of Columbia, the Commonwealth of Puerto Rico, and ten near-international countries: Mexico, Jamaica, The Bahamas, Aruba, Dominican Republic, Costa Rica, Belize, Cuba, the Cayman Islands, and Turks and Caicos.[1]

19.    For 2021, the Company's average aircraft trip stage length was 790 miles, with an average duration of approximately 2.1 hours, as compared with an average aircraft trip stage length of 743 miles and an average duration of approximately 2.0 hours in 2020, and as compared with an average aircraft trip stage length of 748 miles and an average duration of approximately 2.0 hours in 2019.[2]

## A STRONG CALIFORNIA PRESENCE

20.    "Once singularly associated with Texas, Southwest is now an essential bridge across the north-south geographic divide in California, where white-collar workers, college students and families have come to rely on the airline the way New Yorkers depend on Amtrak or the Long Island Rail Road."[3]

---

[1]                    https://otp.tools.investis.com/clients/us/southwest/SEC/sec-show.aspx?Type=html&FilingId=15534609&CIK=0000092380&Index=10000
[2]                    https://otp.tools.investis.com/clients/us/southwest/SEC/sec-show.aspx?Type=html&FilingId=15534609&CIK=0000092380&Index=10000
[3] Southwest is California's 'Unofficial Airline.' The Meltdown Has Residents Anxious.  New York Times. https://www.nytimes.com/2022/12/29/us/southwest-california-commuters.html?searchResultPosition=1

4

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313

Exhibit 3 Page 90

21.     Southwest is the state's busiest airline, and more of its flights depart from California than from any other state in the nation, including Texas, where the company began.[4] Southwest is the top airline at seven of California's 10 busiest airports, accounting for more than half of all air traffic at the airports in Oakland, Sacramento, San Jose, Burbank and Long Beach.[5]

22.     "Southwest is almost the unofficial airline of California," Henry Harteveldt, an airlines analyst for Atmosphere Research Group, told my colleague Shawn Hubler after the airline's flight cancellations during the holidays left passengers stranded across the country.[6]

23.     In fact, "[t]wo-thirds of all seats for sale on flights within California are on Southwest flights, according to Mike Arnot, a spokesman for Cirium, an aviation analytics company. (United is a very distant second with 13 percent.)"[7]

24.     "Southwest is California's busiest airline, with some 800 flights scheduled on peak days, many of which ferry residents between Northern and Southern California."[8]

25.     "Despite mild winter weather, California's medium-size airports suffered some of the worst cancellation rates in the nation over the past week because Southwest accounts for so much of their traffic."[9]

26.     "Southwest is almost the unofficial airline of California," said Henry Harteveldt, an analyst based in San Francisco who covers airlines for Atmosphere Research Group.[10]

27.     Many Southwest passengers, told they might be stranded for days, scrambled to find tickets on buses, trains and other airlines. At one point this week, the only one-way ticket on short

---

[4] https://www.nytimes.com/2023/01/03/us/southwest-airline-california.html
[5] https://www.nytimes.com/2023/01/03/us/southwest-airline-california.html
[6] https://www.nytimes.com/2023/01/03/us/southwest-airline-california.html
[7] https://www.nytimes.com/2023/01/03/us/southwest-airline-california.html
[8] Southwest is California's 'Unofficial Airline.' The Meltdown Has Residents Anxious.  New York Times.  https://www.nytimes.com/2022/12/29/us/southwest-california-commuters.html?searchResultPosition=1
[9] Southwest is California's 'Unofficial Airline.' The Meltdown Has Residents Anxious.  New York Times.  https://www.nytimes.com/2022/12/29/us/southwest-california-commuters.html?searchResultPosition=11
[10] Southwest is California's 'Unofficial Airline.' The Meltdown Has Residents Anxious.  New York Times.  https://www.nytimes.com/2022/12/29/us/southwest-california-commuters.html?searchResultPosition=1

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313

Exhibit 3 Page 91

notice from Sacramento to Los Angeles was a first-class seat on Delta Air Lines for nearly $700, several times more than passengers are used to paying on that leg.[11] Others made a beeline for the rental car offices and opted to endure the six to nine hours it normally takes to drive from Northern to Southern California, or vice versa.[12]

28.     The airline said in a statement Thursday that it had stabilized its operations and that it planned to resume its full flight schedule Friday "with minimal disruptions." Only a few dozen Friday flights had been canceled by midday Thursday — "good news for everyone," Harteveldt said.[13]

29.     Southwest operates more flights in California than in any other place in the nation, including its home state. Southwest "carried more California travelers to, from and within California than any other airline," according to the airline's 2021 annual report.[14]

30.     Southwest remains a minor player on California's busiest intrastate route between San Francisco and Los Angeles, but it overwhelmingly dominates air travel at seven of California's 10 busiest airports. The airline accounts for 68% of total seats for sale on flights within California, said Mike Arnot, a spokesperson for Cirium, an aviation analytics company, and serves tens of millions of passengers annually.[15]

31.     Southwest accounts for more than half of all air traffic at Sacramento International Airport.[16]

---

[11] Southwest is California's 'Unofficial Airline.' The Meltdown Has Residents Anxious.  New York Times. https://www.nytimes.com/2022/12/29/us/southwest-california-commuters.html?searchResultPosition=1
[12] Southwest is California's 'Unofficial Airline.' The Meltdown Has Residents Anxious.  New York Times. https://www.nytimes.com/2022/12/29/us/southwest-california-commuters.html?searchResultPosition=1
[13] Southwest is California's 'Unofficial Airline.' The Meltdown Has Residents Anxious.  New York Times. https://www.nytimes.com/2022/12/29/us/southwest-california-commuters.html?searchResultPosition=1
[14] Southwest is California's 'Unofficial Airline.' The Meltdown Has Residents Anxious.  New York Times. https://www.nytimes.com/2022/12/29/us/southwest-california-commuters.html?searchResultPosition=1
[15]
[16] Southwest is California's 'Unofficial Airline.' The Meltdown Has Residents Anxious.  New York Times. https://www.nytimes.com/2022/12/29/us/southwest-california-commuters.html?searchResultPosition=1

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313                                    Exhibit 3 Page 92

32.     While it barely has a toehold at San Francisco International Airport, Southwest accounted for 80% of traffic at nearby Oakland International Airport and 63% at San Jose International Airport in the 12-month period ending on Sept. 30, according to the Bureau of Transportation Statistics.

33.     Similarly, alternative non-Southwest flights from Saint Louis, Missouri to Los Angeles California reached a price of over $2,300.00 – one way – a flight that would have taken 18 hours to arrive.  Saint Louis, Missouri to Long Beach, California on the same day would have cost up to $2,901 (with 3 stops) for $2,901 and which would have taken nearly 20 and a half hours to arrive.

## SOUTHWEST'S OUTDATED SOFTWARE
## AND THE RESULTING CHAOS

34.     On June 13, 2020, when, the Baltimore Sun released an article titled "Southwest Glitch Delays BWI Flights: Problem With Computer System Affected Airports Nationwide, Airline's Website." This article discussed how Southwest Airlines experienced problems with its computer system for a significant part of an afternoon, causing "significant flight delay" at airports around the country. Specifically, for about three hours, visitors to Southwest.com could not check into their flights, purchase tickets, or check their flight's status. One traveler commented, "I'd like to know how a company as big as Southwest can have their whole server go down [. . .] Where's the backup plan?"

35.     According to FlightAware.com, this system failure delayed more than 600 flights as of 9:00 PM that day and resulted in 17 cancelled flights.

On August 12, 2020, USA Today released an article titled "'So I Guess Southwest has Invented Time Travel': Airline Sends Passengers Bizarre Flight Changes." This article detailed how Southwest Airlines' system would re-route travelers, but would make the crucial mistake of

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313

Exhibit 3 Page 93

scheduling travelers to arrive at a given airport after their connecting flights were due to leave. To illustrate, a traveler booked a nonstop flight from San Diego, California to Reno, Nevada, which was then re-routed to contain a connecting flight via Oakland, California. However, the connecting flight was due to leave 10 minutes before the first flight was scheduled to land.

36.     Southwest Airlines attempted to downplay the nonsensical flight changes by saying that passengers receiving such schedules had received preliminary flight change information that had not been finalized. One affected passenger was reportedly an information technology worker. She suspected that a computer glitch was to blame, and commented "[t]his should have been literally impossible [. . .]."

37.     But despite Southwest's assurances to the public, Southwest made no effort to remedy the technical flaws in its system but instead gave a dividend to its investors.

38.     Southwest relies on crew-assignment software called SkySolver, an off-the-shelf application that it has customized and updated, but that is nearing the end of its life, according to the airline.[17]

39.     The program was developed decades ago and is now owned by General Electric Co.[18]

40.     Ask Southwest Airlines employees about their company's technology, and one word keeps coming up: "antiquated."[19]

41.     "We've been harping on them since 2015-ish every year," Mike Santoro, a captain

---

[17]     Southwest     Meltdown     Shows     Airlines     Need     Tighter     Software     Integration. https://www.wsj.com/articles/southwest-meltdown-shows-airlines-need-tighter-software-integration-11672687980
[18]     Southwest     Meltdown     Shows     Airlines     Need     Tighter     Software     Integration. https://www.wsj.com/articles/southwest-meltdown-shows-airlines-need-tighter-software-integration-11672687980
[19]     Insiders     at     Southwest     reveal     how     the     airline's     service     imploded. https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html

8

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313

Exhibit 3 Page 94

1    and vice president of the Southwest Airlines Pilots Association, told CNN.[20]

2        42.    Southwest's scheduling system hasn't changed much since the 1990s, according to

3    Captain Casey Murray, president of the Southwest Airlines Pilots Association.[21]

4        43.    Winter storms disrupted holiday travel during the 2022 holiday season, leaving

5    thousands of travelers stranded in airports around the United States. However, not all domestic

6    airlines were affected equally. Southwest Airlines flight cancellations accounted for the vast

7    majority domestic flight cancellations, leaving travelers unable to visit loved ones over the holidays,

8    and attracting the ire of the federal government.

9        44.    As flights were getting cancelled around the country, it soon emerged that the root

10   cause behind Southwest Airlines' cancellations was outdated and ineffective technology, in

11   particular, its crew scheduling system (called "Sky Solver"). Further compounding on this issue,

12   Southwest Airlines used an aggressive flight schedule that left it prone to greater cancellations than

13   its competitors in the event of unusual conditions, such as nationwide storms.

14       45.    The result: A massive Christmas travel meltdown that scuttled holiday plans for

15   hundreds of thousands of passengers. Nearly 16,000 flights canceled. Orphaned baggage piling up

16   at airports and travelers told to give a shipping address.[22]

---

[20]    Insiders    at    Southwest    reveal    how    the    airline's    service    imploded.
https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html
[21] How Southwest failed the holidays: Four charts explaining the cancellations.
https://www.cnn.com/2022/12/29/business/southwest-cancellations-history-charts-dg/index.html
[22]    Insiders    at    Southwest    reveal    how    the    airline's    service    imploded.
https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html



*See*, Insiders at Southwest reveal how the airline's service imploded. Available at:

https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html.

(Updated 30th December 2022); Last visited: January 11, 2023.

46.     During the winter storm, amid a huge volume of changes to crew schedules to work

through, SkySolver couldn't handle the task of matching crew members and which flights they

should work, executives of the Dallas-based carrier said.[23]

47.     Southwest's software wasn't designed to solve problems of that scale, Chief

Operating Officer Andrew Watterson said Thursday, forcing the airline to revert to manual

scheduling.[24]

48.     "The magnitude and scale of this disruption stressed our technology and processes,

forcing a great deal of manual processing," Southwest said. "Our crews are showing up in every

---

[23]    Southwest     Meltdown     Shows     Airlines     Need     Tighter     Software     Integration.
https://www.wsj.com/articles/southwest-meltdown-shows-airlines-need-tighter-software-integration-
11672687980
[24]    Southwest     Meltdown     Shows     Airlines     Need     Tighter     Software     Integration.
https://www.wsj.com/articles/southwest-meltdown-shows-airlines-need-tighter-software-integration-
11672687980

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313                                    Exhibit 3 Page 96

1  way throughout this challenge."[25]

2  49.  Other airlines managed to recover by early this week; at Southwest, the cancellations

3  only increased.[26]

4  50.  While Southwest does have major connecting airports, much of its schedule involves

5  planes and crews crisscrossing the country -- a network that aviation watchers say is more

6  vulnerable than legacy carriers' hub-and-spoke model that can contain a disruption to particular

7  geographic regions.[27]

8  51.  When something goes wrong, the Southwest software -- including the crew

9  scheduling system tool -- leaves much of the work of rebuilding that delicate network to be done

10  manually.[28]

11  52.  "It can't see the best way to fix anything when flights are canceled," said Brian

12  Brown, president of Transport Workers Union Local 550, representing Southwest dispatchers and

13  meteorologists. "It requires a lot more human intervention and human eyesight or brainpower, and

14  can only handle so much."[29]

15  53.  The result is that airline officials "don't necessarily know where our crews are,

16  where our planes are," Brown said.[30]

17  54.  Crew schedulers in another department are manually checking which pilots and

18  flight attendants meet strict federal rules on work hours -- rules meant to keep inflight safety

---

[25]  Insiders at Southwest reveal how the airline's service imploded. https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html
[26]  Insiders at Southwest reveal how the airline's service imploded. https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html
[27]  Insiders at Southwest reveal how the airline's service imploded. https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html
[28]  Insiders at Southwest reveal how the airline's service imploded. https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html
[29]  Insiders at Southwest reveal how the airline's service imploded. https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html
[30]  Insiders at Southwest reveal how the airline's service imploded. https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313                                    Exhibit 3 Page 97

1    professionals from excessive fatigue.[31]

2    55.    "You end up with thousands of crew members having to call in and their wait

3    times were hours just to talk to someone," Brown said. Software enhancements would make the

4    process more efficient, he added.[32]

5    56.    The manual work meant crew members who could be working were instead stuck

6    in lengthy phone queues waiting for instructions or for a hotel assignment to get their federally

7    mandated rest.[33]

8    57.    "The phone systems that the company uses is just not working," Lyn Montgomery,

9    who represents Southwest flight attendants at TWU Local 556, told CNN.[34]

10   58.    "They're just not manned with enough manpower in order to give the scheduling

11   changes to flight attendants and that's created a ripple effect that is creating chaos throughout the

12   nation."[35]

13   59.    Unlike some large rivals with hub-and-spoke networks, Southwest planes hopscotch

14   from city to city, which may have been another complicating factor.[36]

15   60.    Multiple systems are involved in crew scheduling, according to a spokesman for GE

16   Aerospace.[37]

---

[31]   Insiders at Southwest reveal how the airline's service imploded. https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html
[32]   Insiders at Southwest reveal how the airline's service imploded. https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html
[33]   Insiders at Southwest reveal how the airline's service imploded. https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html
[34]   Insiders at Southwest reveal how the airline's service imploded. https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html
[35]   Insiders at Southwest reveal how the airline's service imploded. https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html
[36]   Southwest Meltdown Shows Airlines Need Tighter Software Integration. https://www.wsj.com/articles/southwest-meltdown-shows-airlines-need-tighter-software-integration-11672687980
[37]   Southwest Meltdown Shows Airlines Need Tighter Software Integration. https://www.wsj.com/articles/southwest-meltdown-shows-airlines-need-tighter-software-integration-11672687980

12

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313

Exhibit 3 Page 98

61.     The company said its software isn't an end-to-end solution.[38] Rather, it's a so-called backend algorithm that airlines can supplement with other software.[39] The algorithm gathers input from other systems to provide recommendations to resolve crew-related disruptions, according to GE Aerospace.[40]

62.     Dr. Edward Rothberg, chief scientist of Gurobi Optimization LLC, a startup that develops mathematical optimization software used by carriers including Air France-KLM, said Southwest's hopscotched "point-to-point" model—rather than the hub-and-spoke model – greatly increases the difficulty of the problem, requiring more computational power than its current systems are likely able to handle.[41]

63.     Southwest Chief Executive Officer Bob Jordan said that while the carrier has good systems in some areas, those systems still need "better intelligence to talk to each other."[42] For instance, he said "The Baker," an optimization system developed by Southwest to automate disruption recovery and select flights to cancel, needs "better visibility" into its crew-scheduling systems.[43] Airlines generally have done a better job of maintenance and repair operations, but are

---

[38] Southwest Meltdown Shows Airlines Need Tighter Software Integration.
https://www.wsj.com/articles/southwest-meltdown-shows-airlines-need-tighter-software-integration-11672687980
[39] Southwest Meltdown Shows Airlines Need Tighter Software Integration.
https://www.wsj.com/articles/southwest-meltdown-shows-airlines-need-tighter-software-integration-11672687980
[40] Southwest Meltdown Shows Airlines Need Tighter Software Integration.
https://www.wsj.com/articles/southwest-meltdown-shows-airlines-need-tighter-software-integration-11672687980
[41] Southwest Meltdown Shows Airlines Need Tighter Software Integration.
https://www.wsj.com/articles/southwest-meltdown-shows-airlines-need-tighter-software-integration-11672687980
[42] Southwest Meltdown Shows Airlines Need Tighter Software Integration.
https://www.wsj.com/articles/southwest-meltdown-shows-airlines-need-tighter-software-integration-11672687980
[43] Southwest Meltdown Shows Airlines Need Tighter Software Integration.
https://www.wsj.com/articles/southwest-meltdown-shows-airlines-need-tighter-software-integration-11672687980

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313

Exhibit 3 Page 99

much further behind in "the human aspect" of matching up crews, equipment, and passengers, said R "Ray" Wang, founder and principal analyst at IT consulting firm Constellation Research Inc.[44]

64. Updating technology systems is particularly challenging for air carriers because of the business and operations risk of taking down a system, which can include grounded planes or stranded passengers, Mr. Crawford said.[45]

## SOUTHWEST'S FLIGHT CANCELLATION DEBACLE

65. Between December 22, 2022 and January 2, 2022, Southwest cancelled nearly 16,000 flights, stranding thousands of passengers during one of the busiest travel weeks of the year.[46]

66. Since Dec. 22, the beleaguered airline has canceled more than half of its typical flight schedule, and by late Wednesday about 87% of all canceled flights in the US were from Southwest alone, according to industry trackers FlightRadar24 and FlightAware.

67. Southwest has consistently failed to perform as well as its competitors when it comes to cancellations, according to bureau data.[47]

68. In several years over the last decade, the airline had higher cancellation rates compared to other major airlines, the data shows.[48]

69. The December 2022 meltdown is not the first time the company has found itself in this predicament. In October 2021, Southwest canceled more than 2,000 flights over a four-

---

[44] Southwest Meltdown Shows Airlines Need Tighter Software Integration.
https://www.wsj.com/articles/southwest-meltdown-shows-airlines-need-tighter-software-integration-11672687980
[45] Southwest Meltdown Shows Airlines Need Tighter Software Integration.
https://www.wsj.com/articles/southwest-meltdown-shows-airlines-need-tighter-software-integration-11672687980
[46] https://www.cnn.com/travel/article/southwest-airlines-meltdown-closer-look/index.html
[47] https://www.cnn.com/2022/12/29/business/southwest-cancellations-history-charts-dg/index.html
[48] https://www.cnn.com/2022/12/29/business/southwest-cancellations-history-charts-dg/index.html

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313

Exhibit 3 Page 100

day period. While the airline blamed the crisis partly on bad weather in Florida, Southwest canceled flights for far longer than its competitors.

70.    Similar to this month's service mayhem, Southwest fared far worse than its competitors last October. While Southwest canceled hundreds of flights in the days following the peak of October's disruption, competitors quickly returned to normal service. Later that month, on a call with Wall Street analysts, then-CEO Gary Kelly said the company had made adjustments to prevent a similar meltdown in the future:

> "We have reined in our capacity plans to adjust to the current staffing environment, and our ontime performance has improved, accordingly," said Kelly on October 21. "We are aggressively hiring to a goal of approximately 5,000 new employees by the end of this year, and we are currently more than halfway toward that goal."

*See*,                     https://www.cnn.com/2022/12/27/business/southwest-airlines-service-meltdown/index.html#:~:text=In%20October%202021%2C%20Southwest%20canceled,to%20adjust%20to%20those%20problems.

71.    And, just like the latest disruption, the Southwest Airlines Pilots Association claimed the cancellations were due to "management's poor planning."[49]

72.    As early as 2020, Southwest has suffered from computer system glitches and/or crew scheduling technology issues.  For example, in June 2020, Baltimore Sun released an article titled "Southwest Glitch Delays BWI Flights: Problem With Computer System Affected Airports Nationwide, Airline's Website." This article discussed how Southwest Airlines experienced problems with its computer system for a significant part of an afternoon, causing "significant flight delay" at airports around the country. Specifically, for about three hours, visitors to Southwest.com could not check into their flights, purchase tickets, or check their flight's status. One traveler

---

[49] https://www.cnn.com/2022/12/27/business/southwest-airlines-service-meltdown/index.html#:~:text=In%20October%202021%2C%20Southwest%20canceled,to%20adjust%20ust%20to%20those%20problems.

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313                                    Exhibit 3 Page 101

commented, "I'd like to know how a company as big as Southwest can have their whole server go down [. . .] Where's the backup plan?"

<u>**SOUTHWEST AIRLINE'S CONTRACT OF CARRIAGE**</u>

73.     Southwest reservations, purchases, ticketing, and/or transportation are governed by Southwest's Contract of Carriage.  *See*, Exhibit A.

74.     Specifically, the Contract of Carriage provides, in pertinent part:

**"1. Introduction**

**a. Application of Conditions of Contract**

(1) Except as otherwise provided within specific fare rules, **reservations, purchase, ticketing and/or transportation by Southwest Airlines Co.** (hereafter "Southwest Airlines" and its Officers, Employees, contractors, and agents acting in their official capacities under the direction of Southwest Airlines [collectively, together with Southwest Airlines hereafter "Carrier"]) **are subject to this Contract of Carriage in effect on the earliest of the date on which the Ticket is reserved, purchased, or issued, and as amended through the date of travel**, in addition to any terms, conditions, and restrictions applicable to your booking channel and included on any Ticket. The terms and conditions contained in this Contract of Carriage shall govern all published routes and services provided by the Carrier as well as all fares and charges published by the Carrier. […]"

Exhibit A, Contract of Carriage at 4.

75. The Contract of Carriage further provides:

**2. Reservations**

**a. Reservations**

(1) A reservation on a given flight is confirmed by the issuance of a Ticket.

See, Exhibit A: Contract of Carriage at page 9.

76.     The Contract of Carriage further provides:

4.      Tickets […]

[…]

c.      Refunds […]

16

(6) Significant Delays or Involuntary Cancellations. If a Passenger's scheduled transportation is significantly disrupted by the Carrier before the Passenger has reached his or her final destination as a result of a flight cancellation, Carrier-caused missed connection, significant flight delay, significant schedule change, or omission of a scheduled stop caused by the Carrier, Carrier may do one of the following:

(i)     Transport the Passenger at no additional charge on another of Southwest Airlines flight(s);

(ii)    Refund the fare for the unused transportation in accordance with this Section 4; or

(iii)   Provide a Flight Credit or a Transferable Flight Credit depending on the fare purchased for the unused portion of the Customer's fare in accordance with this Section 4. See also Section 9.a.

77.     The Contract of Carriage further provides:

        4.      Tickets […]

        […]

                c.      Refunds […]

   (3)  Form of Refunds. The Carrier shall make all refunds in U.S. dollars. See Section 8 for additional information for international travel. Eligible refunds must be requested no later than one year from the date the Ticket was issued. When no portion of the transportation has been provided, the eligible refund will be issued in accordance with this Section in an amount equal to the fare paid. When a portion of the transportation has been provided, the eligible refund will be issued in accordance with this Section in an amount equal to the difference, if any, between the total fare paid and the fare applicable to the transportation provided. Except as otherwise provided in this Contract of Carriage, following a request made by the Customer and received by the Carrier, if a Ticket or unused ancillary fee for optional services paid by a Customer is eligible for a refund, Carrier will issue such refunds as follows:

   (i) At the direction of the Customer, refunds for Tickets purchased with a credit card shall be processed either:
      (a) For crediting to the credit card account used to purchase the Ticket, typically no later than seven (7) business days from the date the refund request is received by Southwest Airlines or;
      (b) To the form of a Flight Credit or a Transferable Flight Credit depending on the fare purchased.

   (ii) Refunds for Tickets purchased with cash, if cash is accepted by Carrier,

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313                          Exhibit 3 Page 103

typically will be issued by check no later than twenty (20) business days after the refund request is received by the Carrier.

(iii) Refunds for Tickets purchased with an exchanged Ticket, Flight Credit, or Transferable Flight Credit, will be processed to the form of a Flight Credit or a Transferable Flight Credit depending on the fare purchased.

(iv) Refunds for Tickets purchased with a Southwest® gift card will have the amount applied from the Southwest® gift card held as a Flight Credit or a Transferable Flight Credit depending on the fare purchased.

(v) Refunds for Tickets purchased outside of Southwest Airlines (for example, through a travel agent or with a universal air travel plan number) shall be processed for crediting via the ticket issuer and may, for example, take the form of a credit to the subscriber against whose number the Ticket was charged or a Miscellaneous Charge Order, as applicable.

(vi) Refunds for Tickets paid with any other form of payment (such as a Southwest LUV Voucher) will, in the Carrier's sole discretion, be issued back to the original form of payment (and subject to any limitations on the original form of payment, such as an expiration date) or be processed to the form of a Flight Credit or a Transferable Flight Credit depending on the fare purchased.

(vii) Transferable Flight Credit. Unless otherwise stated by Southwest Airlines, at the direction of the Customer, the fare paid for unused Anytime or Business Select® fare segments, including taxes and government fees, may be held as a Transferable Flight Credit. When a Ticket combines an Anytime or Business Select fare segment with a Wanna Get Away® fare segment, if the Customer does not travel and the Customer cancels the Ticket at least ten (10) minutes prior to the scheduled departure time, then the fare paid for unused travel, including taxes and government fees, may be held as a Transferable Flight Credit. The Passenger named on the Ticket can (A) request a refund of the refundable segment associated with the Transferable Flight Credit in accordance with Section 4.c.(3), (B) use a Transferable Flight Credit for travel on Southwest Airlines, or (C) if such Passenger is a Rapid Rewards Member and their Rapid Rewards number is associated with the Transferable Flight Credit prior to transfer, transfer the Transferable Flight Credit to another Rapid Rewards Member. A Transferable Flight Credit may only be transferred once. Any Transferable Flight Credit resulting from a Ticket purchased via a corporate booking tool, a GDS, SWABIZ.com, or a Southwest Airlines mobile app or the Southwest Airlines mobile website using a valid corporate credential issued by Southwest Airlines may only be transferred between employees within the same organization. A refundable flight segment associated with a Transferable Flight Credit becomes nonrefundable following the transfer to another Passenger. Although transferable, a Transferable Flight Credit may

18

not be sold or bartered by the Passenger, a Customer, or any designee. Transferable Flight Credits obtained through prohibited sale or barter transactions are void and will not be honored for travel.

(viii) Limitation of Liability. As provided in this Contract of Carriage, Southwest Airlines may, at the discretion of Southwest Airlines, refund all or a portion of a refund payment to a person or entity other than the Passenger, which shall be deemed a valid refund. Carrier shall not be liable to the Passenger for another refund or Flight Credit or Transferable Flight Credit.

(4)     Nonrefundable Tickets.

(i) General. As the term "nonrefundable" reflects, the fare paid for unused travel by Passengers who purchase restricted, nonrefundable Tickets (including taxes and government fees) are not eligible for refunds, except as specifically stated in this Contract of Carriage, as provided in this Section, and as provided in Section 9.

(ii) Flight Credit. Unless otherwise stated by Southwest Airlines, the fare paid for unused Wanna Get Away® fare segments, including taxes and government fees, is, in the Carrier's sole discretion, refunded in accordance with Section 4(c)(3) or held as a Flight Credit either for use by the Passenger on Southwest Airlines or, as agreed to by Southwest Airlines, if evidence satisfactory to Southwest Airlines, in its sole discretion, is submitted to Southwest Airlines that an employer purchased the Ticket on behalf of its employee or the travel agent has made a refund to its client, then the Flight Credit may be held for use by the company or travel agent, as applicable.

(iii) Transferable Flight Credit. Unless otherwise stated by Southwest Airlines, the fare paid for unused Wanna Get Away Plus fare segments, including taxes and government fees, is, in the Carrier's sole discretion, refunded in accordance with Section 4(c)(3) or held as a Transferable Flight Credit. When a Ticket combines a Wanna Get Away Plus fare segment with a Wanna Get Away® fare segment, if the Customer does not travel and the Customer cancels the Ticket at least ten (10) minutes prior to the scheduled departure time, then the fare paid for unused travel, including taxes and government fees, may be held as a Transferable Flight Credit. The Passenger named on the Ticket can; (A) use a Transferable Flight Credit for travel on Southwest Airlines or, (B) if such Passenger is a Rapid Rewards Member and their Rapid Rewards number is associated with the Transferable Flight Credit prior to transfer, transfer the Transferable Flight Credit to another Rapid Rewards Member. A Transferable Flight Credit may only be transferred once. Any Transferable Flight Credit resulting from a Ticket purchased via a corporate booking tool, a GDS, SWABIZ.com, or a Southwest Airlines mobile app or the Southwest Airlines mobile website using a valid corporate credential issued by Southwest may only be transferred between employees within the same

19

organization. A refundable flight segment associated with a Transferable Flight Credit becomes nonrefundable following the transfer to another Passenger. Although transferable, a Transferable Flight Credit may not be sold or bartered by the Passenger, a Customer, or any designee. Transferable Flight Credits obtained through prohibited sale or barter transactions are void and will not be honored for travel. (iv) Changes and Exchanges. Ticket changes and exchanges within the same reservation will result in the initial Ticket being applied as the form of payment for the new Ticket. The new Ticket may be more or less expensive or subject to different terms, conditions, or restrictions from the original Ticket. If the fare is lower, in the Carrier's sole discretion, the difference will be refunded in accordance with Section 4(c)(3) or a Flight Credit or a Transferable Flight Credit depending on the fare purchased will be issued for the difference. No cash refund or credit card adjustments will be made for nonrefundable Tickets.

(5)    For Flight Credits or Transferable Flight Credits with an Expiration Date of July 27, 2022 or Earlier. If a Flight Credit or Transferable Flight Credit is not applied and travel completed on or before its expiration date, the entire amount of the Flight Credit or Transferable Flight Credit, including all taxes and government fees is forfeited.

78. The Contract of Carriage provision the following in Section 9.

**9.    Service Interruptions**

Refer to Section 8 for conditions applicable to international travel.

a. Failure to Operate as Scheduled

(1) Canceled Flights or Irregular Operations. In the event the Carrier cancels or fails to operate any flight according to Southwest Airlines published schedule, or significantly changes the schedule of any flight, or there is a significant delay, Carrier will, at the request of a Passenger with a confirmed Ticket on such flight, take one of the following actions: (i) Transport the Passenger at no additional charge on Southwest Airlines next flight(s) on which space is available to the passenger's intended destination, in accordance with Southwest Airlines established re-accommodation practices; or (ii) Following a request by the Customer, refund the unused portion of the Customer's fare in accordance with Section 4.c.

(2) Diverted Flights. In the event the Carrier diverts any flight, the Carrier, at its sole discretion, will take reasonable steps to transport Passenger on Southwest Airlines next flight(s) on which space is available to his or her intended final destination or to provide reasonable accommodations as approved in writing in advance by Southwest Airlines.

(3) Flight Schedule Changes. Flight schedules are subject to change without notice, and times shown are not guaranteed. At times, without prior notice to

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313                                    Exhibit 3 Page 106

Passengers, Southwest Airlines may need to substitute other aircraft and may change, add, or omit intermediate stops. The Carrier cannot guarantee that Passengers will make connections to other flights operated by Southwest Airlines or by other airlines. In the event of flight schedule changes or service withdrawals, the Carrier will attempt to notify affected Passengers as early as possible.

(4) Limitation of Liability. Except to the extent provided in Section 9.a., the Carrier shall not be liable for any failure or delay in operating any flight, with or without notice, for reasons of aviation safety or when advisable, in its sole discretion, due to Force Majeure Events, as defined above. For the avoidance of doubt, under no circumstances will Carrier be liable to Passenger or Customer for consequential damages.

### SOUTHWEST AIRLINE'S CUSTOMER SERVICE PLAN

79.    Southwest Airline's Customer Service Plan states the following with respect to delays within seven days of departure:

**2.    Notifying Customers of known delays, cancelations, and diversions (for flights within seven days of departure)**

If your flight experiences a delay of 30 minutes or more, is canceled, or is diverted, we use an automated system to notify you within 30 minutes of our being made aware of such flight status change. Unless you opt out, you will be notified by email, voice, or text, depending on the selection made at the time the reservation was booked (voice notification is not available for international reservations). At the airport, including the departure gate and Flight Information Display screens under our control, we will make every reasonable effort to notify you of the updated status of your flight within 30 minutes of our being made aware of such flight status change. For an international itinerary, if you do not provide contact information at the time of booking, you will not receive automated notifications. For changes to a flight that is more than seven days from departure, see Section 10 below.

**3.    Delivering baggage on time**

We make every reasonable effort to load the items you entrust into our care onto the same plane you board and return them to you promptly at your destination. If delayed, we make every reasonable effort to return your luggage to you within 24 hours.

If your luggage is delayed or lost for reasons outside of your control, you may file a mishandled baggage report at the airport and submit a claim for consideration of reimbursement of reasonable expenses you may have incurred.  Southwest does not charge fees for the first and second checked bags (provided they are not oversize or overweight). If you paid a baggage fee to Southwest and your checked bag was delayed and not recovered, we refund the applicable fee(s) paid. See

21

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313

Exhibit 3 Page 107

Southwest.com for more information on traveling with checked baggage.

[…]

**5.      When a refund is due, providing it promptly**

Eligible refunds are provided according to the ticket's original form of payment and rules associated with that form of payment.

Refunds for eligible Southwest tickets purchased with a credit card will be credited back to the same credit card. Our Refunds Department processes credit card refunds within seven business days from the date we receive the request. Your credit card company may then take up to 10 business days to post the credit to your account, and, based on your individual billing cycle, you will see the refund on your credit card statement within one to two billing statements.

Refunds for eligible Southwest tickets purchased with cash will be issued by check no later than 20 business days after we receive your request.

Additional information on refunds is available at Southwest.com.

[…]

**8.      Handling "bumped" Passengers with fairness and consistency**

Southwest does not typically overbook flights; however, there may be instances where the number of Customers holding reservations exceeds the available seating capacity resulting in an oversale. In these situations, our Customer Service Agents will ask those who have checked in and received a boarding pass if they are willing to volunteer to take a later flight.

If we do not receive enough volunteers to accommodate all Customers who have purchased travel and have met our check-in requirements, we have to involuntarily deny boarding to Customers. If you are involuntarily denied boarding you will be given a written Notice of Denied Boarding to help understand our policies, compensation, and travel alternatives. You will generally be entitled to compensation and transportation on the next available Southwest flight. See Southwest.com for additional information.

**9.      Disclosing cancelation policies, frequent flyer rules, aircraft seating configuration, and lavatory availability**

Information about our cancelation policies, frequent flyer rules, aircraft-seating configuration, and lavatory availability is available over the phone with a Southwest Representative or by following the links to Southwest.com below:

● Cancelation of confirmed reservations

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313

Exhibit 3 Page 108

● Rapid Rewards Frequent Flyer Program

● Our Airplanes

**10.    Notifying Customers in a timely manner of changes in travel itineraries (more than seven days from departure)**

We sell flights several months in advance, and at times, we may adjust our schedules. We will notify you as far in advance as practicable of any change to your itinerary, including routing, departure time, and/or arrival time. We will attempt to notify you within 48 hours of our becoming aware of the change.

You will have the option to select the revised itinerary, or, if the itinerary change is significant, you may choose an alternate flight/date within a 14-day parameter of your original travel, or cancel your trip without penalty and receive a refund upon request in accordance with our Contract of Carriage. For changes within seven days of departure, refer to Section 2 above.

**11.    Ensuring responsiveness to Customer complaints**

Compliments, complaints, or questions about service? Email, call, or write to us. Written complaints will receive an acknowledgement in writing indicating receipt of the complaint within 30 days of receipt. You will also receive a substantive response no later than 60 days after our receipt of your complaint. Contact information is available at Southwest.com.

**12.    Identifying the services we offer to help mitigate Customer inconveniences during irregular operations**

Southwest intends to operate flights as scheduled; however, there are situations that arise based on either uncontrollable and/or controllable circumstances that may cause a flight to be significantly delayed and/or canceled.

For significant flight delays or Southwest-initiated cancelations that are within our control (e.g., mechanical problems, aircraft swap) we will rebook you on the next available Southwest flight(s) with seats available to your ticketed destination at no additional cost. If you choose not to travel due to a significant delay and/or cancelation, Southwest will issue a refund of the unused portion of your Southwest ticket upon request in accordance with our Contract of Carriage.

During flight delays that are within our control of three (3) or more hours and/or Southwest-initiated cancelations that are within our control that result in a wait of three (3) or more hours for a flight at the airport, we will provide a meal voucher upon request at the airport for participating vendors within the airport or, if participating vendors and/or vouchers are not available, we will honor reasonable requests for reimbursement for meals purchased during such irregular operations. Additionally, we may provide complimentary snacks and beverages for Customers.

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313                          Exhibit 3 Page 109

If Southwest flight accommodations departing on the same day to your intended destination or applicable co-terminal city are not available following a flight delay or Southwest-initiated cancelation that is within our control (e.g., mechanical problems, aircraft swap), resulting in an overnight delay or stay, we will arrange lodging accommodations upon request if available, or will honor reasonable requests for reimbursement for lodging accommodations (provided you do not reside locally). If the lodging accommodation we arrange does not provide shuttle service to/from the airport, we will offer a voucher upon request or honor reasonable requests for reimbursement for ground transportation.

For significant flight delays or Southwest-initiated cancelations that are not within our control (e.g., weather, Air Traffic Control, safety/security-related events, FAA-required crew duty limitations, infrastructure/utility problems), we will rebook you on the next available Southwest flight(s) with seats available to the Customer's ticketed destination at no additional cost. If you choose not to travel due to a significant delay and/or cancellation, Southwest will issue a refund of the unused portion of your Southwest ticket upon request in accordance with our Contract of Carriage.

Although we do not offer complimentary lodging accommodations for significant flight delays or Southwest-initiated cancelations that are not in our control, we will seek to arrange a discount off of a lodging accommodation near the airport.

## EQUITABLE TOLLING OF STATUTES OF LIMITATIONS

80. The running of any statute of limitations has been equitably tolled by Defendants' fraudulent concealment and/or omissions of critical information about the cause of its delays and/or cancellations. Through its affirmative misrepresentations and omissions, Southwest actively concealed from Plaintiffs reason(s) for the flight delays and/or cancellations.

81. As a result of Defendants' actions, Plaintiffs were unaware, and could not have reasonably known or learned through reasonable diligence, the true reason that the flights were delayed and/or cancelled and which caused Plaintiff and the class members the harms set forth herein and that those harms were the direct and proximate result of Defendants' acts and omissions.

## CLASS ACTION ALLEGATIONS

82. Pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2) and (b)(3), as applicable, Plaintiff seeks certification of the following nationwide class (the "Nationwide Class"):

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313

Exhibit 3 Page 110

All persons in the United States who purchased tickets for travel on a Southwest Airlines flight and that flight was delayed and/or cancelled (including, but not limited to in June 2020, October 2021, and December 24, 2022-January 2, 2022), and who were not provided a refund and/or reimbursed for incurred expenses as a result of the delay and/or cancellation.

83.     Pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2) and (b)(3), as applicable, Plaintiff seeks certification of the following nationwide sub-class (the "Nationwide Sub-Class"):

All persons in the United States who purchased tickets for travel on a Southwest Airlines flight and that flight was delayed and/or cancelled from December 24, 2022 and January 2, 2022 and who were not provided a refund and/or reimbursed for incurred expenses as a result of the delay and/or cancellation and who checked luggage between December 24, 2022 and January 2, 2022.

84.     Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff, and any Judge sitting in the presiding court system who may hear an appeal of any judgment entered.

85.     The Class and Sub-Class are collectively referred to herein as the "Class".

86.     Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

87.     Plaintiff seeks only damages and injunctive relief on behalf of themselves and the Class members. Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class members.

88.     The Class meets the criteria for certification under Rule 23(a), (b)(1), (b)(2), (b)(3) and (c)(4).

89.     **Risk of Inconsistent or Varying Adjudications. Fed. R. Civ. P. 23(b)(1).** As the proposed class members include thousands of persons across all 50 states, there is significant risk of inconsistent or varying adjudications with respect to individual class members that would

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313                                    Exhibit 3 Page 111

establish incompatible standards of conduct for the Defendant. For example, declaratory relief may be entered in multiple cases, but the ordered relief may vary, causing the Defendant to have to choose the court order with which it will comply.

90. **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of class members is unknown to Plaintiff at this time, it is believed that the Class is comprised of tens of thousands if not hundreds of thousands of members geographically dispersed throughout the United States. Affected consumer's names and addresses are available from Southwest's records, and class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include electronic mail, U.S. Mail, internet notice, and/or published notice.

91. **Predominance of Common Issues. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual class members. The common questions include:

a. Whether Defendant's conduct breaches its Contract of Carriage and/or Customer Service Plan;

b. Whether Defendant breached the Covenant of Good Faith and Fair Dealing;

c. Whether Defendant committed a Violation of Bailment;

d. Whether Defendant is required to give a refund and reimburse all related expenses as a result of the cancellations;

e. Whether Plaintiff and members of the Class are entitled to damages, costs, or attorneys' fees from Defendant; and

f. Whether Plaintiff and members of the Class are entitled to compensatory damages.

g. Whether Plaintiff and the Class are entitled to declaratory relief;

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313

Exhibit 3 Page 112

h.      Whether Plaintiff and the Class are entitled to injunctive relief.

92.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of other Class members' claims because Plaintiff and Class members were subjected to the same unlawful conduct and damaged in the same way. Defendant's conduct that gave rise to the claims of Plaintiff and other Class members (i.e., canceling flights without giving refunds in breach of the Contract of Carriage) is the same for all Class members.

93.     **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in litigating consumer claims. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of the Class.

94.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs and class members may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class members are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Moreover, individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313

Exhibit 3 Page 113

1    scale, and comprehensive supervision by a single court.

2        95.    **Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and

3    (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable

4    to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

5    Moreover, Defendant continues to offer credits instead of refunds to Plaintiff and Class members

6    for flights that they cancel, thus making declaratory relief a live issue and appropriate to the Class

7    as a whole.

8

9                            **COUNT I**
                     **BREACH OF CONTRACT**
10                 **(on behalf of Plaintiffs and the Class)**

11       96.    Plaintiff realleges and reincorporates its allegations in paragraphs 1 through 87

12   above as if fully set forth herein.

13       97.    This claim for breach of contract damages or, in the alternative, specific performance

14   of the contract's refund terms, is based on Defendant's breaches of its Contract of Carriage and/or

15   Customer Service Plan (the "Contract").

16       98.    Plaintiff, along with all putative class members, entered into a Contract of Carriage

17   and/or Customer Service Plan with Defendant for provision of air travel in exchange for payment.

18       99.    The Contract of Carriage and/or Customer Service Plan were each drafted by

19   Defendant.

20       100.   Plaintiff, and all putative class members performed under the Contract of Carriage

21   and/or Customer Service Plan, specifically, by tendering payment for the airline tickets to

22   Defendant and complied with all conditions precedent under the Contract.

23       101.   Due to Defendant's cancellation of their flights, Plaintiff, and all putative class

24   members cannot use their airline tickets through no fault of their own and they are not getting the

25   benefit of their bargain with Defendant.

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313

Exhibit 3 Page 114

102.    Under the terms of the Contract of Carriage and/or Customer Service Plan drafted by Defendant, Plaintiff and putative class members are entitled to refunds because Southwest canceled their flights and did not rebook the customers on another flight. By failing to provide refunds, Southwest has breached its Contract of Carriage and/or Customer Service Plan.

103.    In fact, Plaintiff had to incur the exorbitant out-of-pocket expenses by buying a different ticket home to San Jose on Delta Air Lines and has not been reimbursed for incurred expenses as a result of the cancellation.

104.    Southwest has further breached its Contract of Carriage and/or Customer Service Plan by failing to provide refunds within seven days for canceled tickets purchased with credit cards.

105.    As a result of Defendant's breaches of contract, Plaintiff and the putative class members have incurred damages in an amount to be proven at trial.

## COUNT II
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
#### (on behalf of Plaintiffs and the Class)

106.    Plaintiff realleges and reincorporates its allegations in paragraphs 1 through 97 above as if fully set forth herein.

107.    Southwest Airlines were owed a duty of good faith and fair dealing in regards to its Contract of Carriage and/or Customer Service Plan with Plaintiff and Class Members, notably having working software allowing its flights to be properly staffed and having contingencies for foreseeable winter storms.

108.    Southwest Airlines' breaches of its' duty of good faith and fair dealing in regards to its Contract of Carriage and/or Customer Service Plan with Plaintiff and Class Members for the reasons stated herein.

109.    Southwest Airlines' breaches of its' duty of good faith and fair dealing in regards to

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313

Exhibit 3 Page 115

its Contract of Carriage and/or Customer Service Plan with are the direct and proximate cause of Plaintiff and class members' damages.

110.    As a result, Plaintiff and class members are each entitled to an award of damages in an amount to be determined at trial.

### COUNT III
### VIOLATION OF BAILMENT
**(on behalf of Plaintiff and the Nationwide Sub-Class Members)**

111.    Plaintiff realleges and reincorporates its allegations in paragraphs 1 through 87 above as if fully set forth herein.

112.    Plaintiffs and Class Members delivered and entrusted their luggage to Defendant for the purpose of enabling Defendant to conduct its business flying Plaintiff and Class Members to their destinations.

113.    A bailment arises where possession, but not ownership, of property is transferred from one party ("bailor") to another ("bailee"). Where a bailee has received a bailment from a bailor, a duty of care is owed. Typically, a bailee is strictly liable for the bailment.

114.    In delivering and entrusting their luggage, Plaintiff and Class members intended and understood that Defendants would adequately safeguard their luggage.

115.    Defendants accepted possession of Plaintiffs' and Class members' luggage, and by accepting possession of Plaintiff's and Class members' luggage, Defendants understood that Plaintiff and other Class members expected it to adequately safeguard their luggage. Accordingly, a bailment was established for the mutual benefit of the parties.

116.    During the period of bailment, Defendant, as bailee, owed Plaintiff and all other Class members a duty of care to safeguard their luggage by maintaining adequate procedures and infrastructure to protect such luggage. In failing to maintain such adequate procedures and infrastructure, Southwest breached this duty.

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313

Exhibit 3 Page 116

117.    Defendant, as bailee, is expected to return to its owner the bailed goods (the luggage) when the bailee's time for possession of them is over.

118.    During the period of bailment, Defendant, as bailee, owed Plaintiffs and Class Members a duty of care to safeguard their luggage by maintaining reasonable procedures and practices to protect such luggage.

119.    As alleged herein, Defendant breached this duty.

120.    As a result of Defendant's breach of this duty, Plaintiffs and all other Class Members have been harmed as alleged herein.

**COUNT IV**
**INJUNCTIVE RELIEF**
**(on behalf of Plaintiff and the Class Members)**

121.    Plaintiff restates and realleges paragraphs 1-117 of this Class Action Complaint as though fully set forth herein.

122.    Plaintiff and Class Members have clear and ascertainable rights in need of protection – namely: (a) the right to have Defendants abide by their obligations under the Contract of Carriage and/or Customer Service Plan when they book a flight with Defendant; (b) the right to not have travel impacted due to Defendant's antiquated crew scheduling technology and/or SkySolver technology and inability to schedule crews and get flights off of the ground in a timely manner.

123.    Plaintiff and Class Members have no adequate remedy at law because a legal remedy cannot protect Plaintiffs from future flights being impacted as a result of antiquated crew scheduling technology and/or SkySolver technology and cannot otherwise prevent Defendant's antiquated crew scheduling technology and/or SkySolver technology from causing delays and cancellations in the future.

124.    Plaintiff and Class Members will suffer irreparable harm, as alleged herein, caused by Defendants if their antiquated crew scheduling technology and/or SkySolver technology is not

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313                                              Exhibit 3 Page 117

replaced or updated, requiring injunctive relief.

125. Plaintiff and Class Members are likely to succeed on the merits because, as alleged herein, Defendants promised to provide a flight at a particular time and date and, unless they are forced to update their technology in a timely manner, Plaintiff's travel may be negatively impacted via unnecessary flight delays and/or cancellations due to its antiquated crew scheduling technology. Plaintiff and Class Members seek injunctive relief: (a) requiring Defendant to update or replace its antiquated crew scheduling technology and/or SkySolver technology; and (b) refunding Plaintiff's and the Class Members ticket fees and add on fees automatically.

**COUNT V**
**DECLARATORY RELIEF**
**28 U.S.C. §§ 2201 and 2202**
**(on behalf of Plaintiffs and the Class)**

126. Plaintiff, individually and on behalf of all others similarly situated and reallege Paragraphs 1-123 as if fully set forth herein.

127. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and are informed and believe that Defendant fails to comply with applicable laws, including both common law and statutory law.

128. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

129. Plaintiff's claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all putative Class members, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

A. For an Order determining at the earliest possible time that this matter may proceed

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313

Exhibit 3 Page 118

as a class action under Rule 23 and certifying this case as such;

   B.   For Plaintiff and each Class member their actual compensatory damages, or in the

alternative, for specific performance of the refund provisions of the Contract of Carriage

and/or Customer Service Plan;

   C.   For injunctive relief requiring Southwest to replace and/or update its antiquated crew

scheduling technology and/or SkySolver technology; and refunding Plaintiff's and the Class

Members ticket fees and add on fees automatically.

   D.   For reasonable attorneys' fees and costs of suit;

   E.   For pre-judgment interest and interest pursuant to redhibition; and

   F.   Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff, on behalf of himself and the Class of all others similarly situated, hereby demands

a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Date:  1/22/2023          By:   /s/  Francis J. "Casey" Flynn, Jr.
                          **LAW OFFICE OF FRANCIS J. FLYNN, JR.**
                          Francis J. "Casey" Flynn, Jr.
                          6057 Metropolitan Plz.
                          Los Angeles, California 90036
                          Tele: 314-662-2836
                          Email: casey@lawofficeflynn.com

                          **ATTORNEY FOR PLAINTIFFS**

CLASS ACTION COMPLAINT
CASE NO.: 3:23-cv-00313                                    Exhibit 3 Page 119

JS-CAND 44 (Rev. 10/2020)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MARY SMITH, individually and on behalf of all others similarly situated

**(b)** County of Residence of First Listed Plaintiff    Santa Clara, California
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Francis J. "Casey" Flynn, Jr. ~ Law Office of Francis J. Flynn, Jr. ~ 6057 Metropolitan Plz. Los Angeles, California 90036; Tele: 314-662-2836

## DEFENDANTS

SOUTHWEST AIRLINES CO.

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II.   BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV.    NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **LABOR** | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 710 Fair Labor Standards Act | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 720 Labor/Management Relations | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 740 Railway Labor Act | 835 Patent—Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | 370 Other Fraud | 751 Family and Medical Leave Act | 840 Trademark | 460 Deportation |
| | 350 Motor Vehicle | 371 Truth in Lending | 790 Other Labor Litigation | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced & Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | **SOCIAL SECURITY** | 480 Consumer Credit |
| 160 Stockholders' Suits | 360 Other Personal Injury | 385 Property Damage Product Liability | **IMMIGRATION** | 861 HIA (1395ff) | 485 Telephone Consumer Protection Act |
| ☒ 190 Other Contract | 362 Personal Injury -Medical Malpractice | | 462 Naturalization Application | 862 Black Lung (923) | 490 Cable/Sat TV |
| 195 Contract Product Liability | | | 465 Other Immigration Actions | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | 864 SSID Title XVI | 890 Other Statutory Actions |
| **REAL PROPERTY** | 440 Other Civil Rights | **HABEAS CORPUS** | | 865 RSI (405(g)) | 891 Agricultural Acts |
| 210 Land Condemnation | 441 Voting | 463 Alien Detainee | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 220 Foreclosure | 442 Employment | 510 Motions to Vacate Sentence | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations | 530 General | | 871 IRS–Third Party 26 USC § 7609 | 896 Arbitration |
| 240 Torts to Land | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 446 Amer. w/Disabilities–Other | **OTHER** | | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | 448 Education | 540 Mandamus & Other | | | |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V.    ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | 2 Removed from State Court | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 Transferred from Another District *(specify)* | 6 Multidistrict Litigation–Transfer | 8 Multidistrict Litigation–Direct File | |

## VI.   CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(d)(2)

Brief description of cause:
Breaches of Contracts

## VII.  REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, Fed. R. Civ. P.

DEMAND $ 5,000,001.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ☐ No

## VIII. RELATED CASE(S), IF ANY    *(See instructions):*

JUDGE                      DOCKET NUMBER

## IX.   DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)

*(Place an "X" in One Box Only)*    ☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE    ☐ EUREKA-MCKINLEYVILLE

DATE  01/22/2023    SIGNATURE OF ATTORNEY OF RECORD    /s/ Francis J. "Casey" Flynn, Jr.

Exhibit 3 Page 120

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-CAND 44

**Authority For Civil Cover Sheet.** The JS-CAND 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name and standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section ("see attachment)."

II. **Jurisdiction.** The basis of jurisdiction is set forth under Federal Rule of Civil Procedure 8(a), which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

(1) <u>United States plaintiff</u>. Jurisdiction based on 28 USC §§ 1345 and 1348. Suits by agencies and officers of the United States are included here.

(2) <u>United States defendant</u>. When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

(3) <u>Federal question</u>. This refers to suits under 28 USC § 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

(4) <u>Diversity of citizenship</u>. This refers to suits under 28 USC § 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS-CAND 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the six boxes.

(1) <u>Original Proceedings</u>. Cases originating in the United States district courts.

(2) <u>Removed from State Court</u>. Proceedings initiated in state courts may be removed to the district courts under Title 28 USC § 1441. When the petition for removal is granted, check this box.

(3) <u>Remanded from Appellate Court</u>. Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

(4) <u>Reinstated or Reopened</u>. Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

(5) <u>Transferred from Another District</u>. For cases transferred under Title 28 USC § 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

(6) <u>Multidistrict Litigation Transfer</u>. Check this box when a multidistrict case is transferred into the district under authority of Title 28 USC § 1407. When this box is checked, do not check (5) above.

(8) <u>Multidistrict Litigation Direct File</u>. Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

<u>Please note that there is no Origin Code 7</u>. Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** <u>Example</u>: U.S. Civil Statute: 47 USC § 553. <u>Brief Description</u>: Unauthorized reception of cable service.

VII. **Requested in Complaint.** <u>Class Action</u>. Place an "X" in this box if you are filing a class action under Federal Rule of Civil Procedure 23.

<u>Demand</u>. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

<u>Jury Demand</u>. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS-CAND 44 is used to identify related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

IX. **Divisional Assignment.** If the Nature of Suit is under Property Rights or Prisoner Petitions or the matter is a Securities Class Action, leave this section blank. For all other cases, identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated."

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Exhibit 3 Page 121

Query    Reports▾    Utilities▾    Help    Log Out

CLASS_REQUESTED

# U.S. District Court
## Eastern District of Louisiana (New Orleans)
## CIVIL DOCKET FOR CASE #: 2:22-cv-05590-ILRL-KWR

| | |
|---|---|
| Capdeville v. Southwest Airlines Co | Date Filed: 12/30/2022 |
| Assigned to: Judge Ivan L.R. Lemelle | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Karen Wells Roby | Nature of Suit: 190 Contract: Other |
| Cause: 28:1332 Diversity-Other Contract | Jurisdiction: Diversity |

**Plaintiff**

**Eric F Capdeville**            represented by    **Jim S. Hall**
*on behalf of himself and all others similarly*                       Jim S. Hall & Associates
*situated*                                                            800 N. Causeway Blvd.
                                                                      Suite 100
                                                                      Metairie, LA 70001
                                                                      (504) 832-3000
                                                                      Email: jodi@jimshall.com
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Matthew B. Moreland**
                                                                      Jim S. Hall & Associates
                                                                      800 N. Causeway Blvd.
                                                                      Suite 100
                                                                      Metairie, LA 70001
                                                                      504-832-3000
                                                                      Email: mmoreland@jimshall.com
                                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Southwest Airlines, Co.**       represented by    **Michael Raudon Phillips**
                                                                      Kean Miller LLP (New Orleans)
                                                                      First Bank & Trust Tower
                                                                      909 Poydras Street
                                                                      Suite 3600
                                                                      New Orleans, LA 70112
                                                                      504-620-3343
                                                                      Fax: 504-599-8125
                                                                      Email: mike.phillips@keanmiller.com
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Jeffrey Joseph Gelpi**
                                                                      Kean Miller LLP
                                                                      909 Poydras Street

Suite 3600
New Orleans, LA 70112
504-620-3365
Fax: 504-585-3051
Email: jeff.gelpi@keanmiller.com
*ATTORNEY TO BE NOTICED*

**Karli Glascock Johnson**
Kean Miller, LLP (Baton Rouge)
II City Plaza
400 Convention St.
Suite 700
PO Box 3513 (70821-3513)
Baton Rouge, LA 70802
225-387-0999
Email: karli.johnson@keanmiller.com
*ATTORNEY TO BE NOTICED*

**Robert Devin Ricci**
Kean Miller LLP
909 Poydras Street
Ste 3600
New Orleans, LA 70112
504-585-3050
Fax: 504-585-3051
Email: devin.ricci@keanmiller.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/30/2022 | 1 | COMPLAINT with jury demand against Southwest Airlines, Co. (Filing fee $ 402 receipt number ALAEDC-9725245) filed by Eric Capdeville. (Attachments: # 1 Civil Cover Sheet)Attorney Matthew B. Moreland added to party Eric Capdeville(pty:pla).(Moreland, Matthew) (Entered: 12/30/2022) |
| 12/30/2022 | 2 | Initial Case Assignment to Judge Jay C. Zainey and Magistrate Judge Karen Wells Roby. (mb) (Entered: 12/30/2022) |
| 01/04/2023 | 3 | ORDER OF RECUSAL. Judge Jay C. Zainey recused. Case reassigned to Judge Ivan L.R. Lemelle. Signed by Judge Jay C. Zainey on 1/3/2023.(mmm) (Entered: 01/04/2023) |
| 02/10/2023 | 4 | Request of Summons Issued as to Southwest Airlines, Co. filed by Eric F Capdeville re 1 Complaint,. (Moreland, Matthew) (Entered: 02/10/2023) |
| 02/10/2023 | 5 | Summons Issued as to Southwest Airlines, Co. (pp) (Entered: 02/10/2023) |
| 03/16/2023 | 6 | WAIVER OF SERVICE Returned Executed; waiver sent to Southwest Airlines, Co. on 3/1/2023, answer due 5/1/2023. (Moreland, Matthew) (Entered: 03/16/2023) |
| 05/01/2023 | 7 | EXPARTE/CONSENT MOTION for Extension of Time to Answer re 1 Complaint, by Southwest Airlines, Co.. (Attachments: # 1 Proposed Order)Attorney Jeffrey Joseph Gelpi added to party Southwest Airlines, Co.(pty:dft).(Gelpi, Jeffrey) (Entered: 05/01/2023) |
| 05/01/2023 | 8 | Statement of Corporate Disclosure by Southwest Airlines, Co. (Gelpi, Jeffrey) (Entered: 05/01/2023) |

Exhibit 3 Page 123

| 05/02/2023 | 9 | ORDER granting 7 Motion for Extension of Time to Answer as to Southwest Airlines, Co. Answer due 5/22/2023. Signed by Judge Ivan L.R. Lemelle on 5/2/23. (cg) (Entered: 05/02/2023) |
| 05/22/2023 | 10 | MOTION to Dismiss for Failure to State a Claim by Southwest Airlines, Co.. Motion(s) will be submitted on 6/7/2023. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Notice of Submission)(Gelpi, Jeffrey) (Entered: 05/22/2023) |
| 05/23/2023 | 11 | NOTICE: Scheduling Conference set for 6/8/2023 at 10:00 AM before case manager by telephone. All parties are to call into the conference call at 1-888-278-0296, Access Code: 6243426. Issued by Clerk. (dw) (Entered: 05/23/2023) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| Transaction Receipt | | | |
| 05/26/2023 16:12:00 | | | |
| PACER Login: | tyiatras | Client Code: | SOUTHWEST |
| Description: | Docket Report | Search Criteria: | 2:22-cv-05590-ILRL-KWR |
| Billable Pages: | 2 | Cost: | 0.20 |

Exhibit 3 Page 124

# IN THE UNITED STATES DISTRICT COURT FOR THE FOR THE EASTERN DISTRICT OF LOUISIANA

ERIC F. CAPDEVILLE,
on behalf of himself and all
others similarly situated

CASE NO.

SECTION:

Plaintiff,

v.

SOUTHWEST AIRLINES CO.,

**JURY TRIAL DEMANDED**

Defendant.

_____/

## CLASS ACTION COMPLAINT

_____

Plaintiff, ERIC F. CAPDEVILLE ("Capdeville" or "Plaintiff"), on behalf of himself and all others similarly situated, by and through undersigned counsel, files this Class Action Complaint against Southwest Airlines Co ("Southwest" or "Defendant"), and alleges the following:

### INTRODUCTION

1.      Southwest Airlines Company ("Southwest") became the nation's largest domestic air carrier in 2003 and maintains that ranking based on the U.S. Department of Transportation's most recent reporting of domestic originating passengers boarded.

2.      In its 49th year of service, Dallas-based Southwest serviced over 130 million passengers annually.

3.      In peak travel seasons, Southwest operates more than 4,000 weekday departures among a network of 102 destinations in the United States and 10 additional countries.

Exhibit 3 Page 125

4. Southwest does not sell airline tickets on any third-party global distribution platform, requiring all customers to purchase directly from Southwest whether it be through its website or by calling a Southwest booking line to make a reservation.

**System Failures Impacts on Southwest's Operations**

5. Beginning Friday, December 23, 2022, Southwest Airlines began cancelling flights nationwide blaming the failure on a weather-driven issue. Subsequently, Southwest continued to cancel flights blaming weather through Wednesday, December 28, 2022 resulting in more than 14,500 flights cancelled since the prior Friday. Wednesday, December 28, 2022 alone Southwest cancelled 2500 flights. Southwest CEO Bob Jordan confirmed the airline needed to upgrade its legacy systems. The Department of Transportation also confirmed that the cancellations came about as a result of Southwest's decision and actions.

6. Southwest's response to the internally created crisis was to suggest customers could submit receipts for flight cancellations from December 24, 2022 through January 2, 2023 for consideration reimbursement.

7. Southwest's Contract of Carriage mandates refunds in this situation as well as full compensation for incurred costs and resultant cancellations for the failure of the carriage contract.

8. Southwest's failure to provide prompt refunds for canceled flights violates

not only its own Contract of Carriage, but also federal law.

Exhibit 3 Page 126

## PARTIES, JURISDICTION, AND VENUE

9.     ERIC F. CAPDEVILLE is a Louisiana citizen who resides in Marrero, Louisiana, Parish of Jefferson.

10.     Defendant is a Texas for-profit corporation having its principal place of business in Dallas, Texas.

11.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendant.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, because this is the judicial district in which a substantial part of the events giving rise to the claims asserted herein occurred.

## GENERAL ALLEGATIONS

13.     On or about October 10, 2022, Plaintiff purchased two tickets for travel Tuesday, December 27, 2022 from New Orleans, Louisiana (MSY) to Portland, Oregan (PDX) for himself and his daughter, which included a connecting flight to Pheonix, Arizona (PHX) (the "Trip") through Southwest Airlines.

14.     Prior to departing Plaintiff checked saw the news that thousands of flights had been cancelled by Southwest Airlines.  Upon checking, he confirmed that his Southwest flight had been cancelled and hos reservations and stay in Portland would be lost without reimbursement.

Exhibit 3 Page 127

15.     After speaking to customer service Capdeville confirmed that in fact Plaintiff's flights had been canceled.

16.     Despite the fact that Plaintiff could not take the flight he booked, and Defendant could not offer any comparable accommodations on another flight, Plaintiff was not given a refund, but was only offered a credit for use on a future flight.

17.     Every Southwest passenger air travel ticket incorporates by reference (including in some cases by hyperlink) and is governed by Southwest's Contract of Carriage.  Southwest drafted the Contract of Carriage.

18.     Section 9 of the Contract of Carriage governs in a situation where the Carrier cancels a flight, as was the case for Plaintiff and other Class members. Specifically, with respect to Service Interruptions, the Contract of Carriage states:

a. Failure to Operate as Scheduled

> (1) Canceled Flights or Irregular Operations. In the event Carrier cancels or fails to operate any flight according to Carrier's published schedule, or changes the schedule of any flight, Carrier will, at the request of a Passenger with a confirmed Ticket on such flight, take one of the following actions:
>
> > (i) Transport the Passenger at no additional charge on Carrier's next flight(s) on which space is available to the Passenger's intended destination, in accordance with Carrier's established reaccommodation practices; or
> >
> > (ii) Refund the unused portion of the Passenger's fare in accordance with Section 4c.

19.     Section 4(c)(4) specifies that the refused for the "unused transportation" must be "in accordance with the form of payment utilized for the Ticket."

4

Exhibit 3 Page 128

20. Further, under Southwest's Customer Service Commitment and 14 C.F.R. § 259.5, which are both incorporated into the Contract of Carriage, Southwest reiterates that "in the event a flight is delayed, canceled, or diverted" by Southwest, the airline will provide one of two options to customers: (1) rebooking on the next available Southwest flight(s) with seats available to the customer's ticketed destination, or (2) a "refund of the unused portion of your Southwest ticket."

21. Both Section 9 of the Contract of Carriage and paragraph 12 of the Customer Service Commitment clearly provide for either rebooking or a refund in the event that Southwest cancels a flight. Neither provision provides for any "credit" for use on a future Southwest flight.

22. Paragraph 5 of the Customer Service Commitment further provides that refunds are to be issued within seven business days from the date of a refund request for tickets purchased with a credit card, and within 20 days of a refund request for tickets purchased with cash.

23. Plaintiff was not given the choice of being transported on the next available flight at no additional charge. His flight was canceled and there were no alternative Southwest flights to accommodate him from the Trip's origin to his destination. He had not used any portion of the ticket for his Trip. Thus, pursuant to the terms of the Contract of Carriage, Plaintiff is entitled to a refund of the fare for the entire Trip in U.S. Dollars to his original form of payment.

**CLASS ACTION ALLEGATIONS**

24. Pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2) and (b)(3), as applicable, Plaintiff seeks certification of the following nationwide class (the "Class"):

All persons in the United States who purchased tickets for travel on a Southwest Airlines flight scheduled to operate from December 24, 2022 through the date of a class certification

Exhibit 3 Page 129

order, whose flight(s) were canceled by Southwest, and who were not provided a refund and reimbursed for incurred expenses as a result of the cancellation.

25.    Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff, and any Judge sitting in the presiding court system who may hear an appeal of any judgment entered.

26.    Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

27.    The Class meets the criteria for certification under Rule 23(a), (b)(1), (b)(2), (b)(3) and (c)(4).

28.    **Risk of Inconsistent or Varying Adjudications. Fed. R. Civ. P. 23(b)(1).** As the proposed class members include thousands of persons across all 50 states, there is significant risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendant. For example, declaratory relief may be entered in multiple cases, but the ordered relief may vary, causing the Defendant to have to choose the court order with which it will comply.

29.    **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of class members is unknown to Plaintiff at this time, it is believed that the Class is comprised of tens of thousands if not hundreds of thousands of members geographically dispersed throughout the United States. Affected consumer's names and addresses

6

Exhibit 3 Page 130

are available from Southwest's records, and class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include electronic mail, U.S. Mail, internet notice, and/or published notice.

30.      **Predominance of Common Issues. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual class members. The common questions include:

a.  Whether Defendant's conduct breaches its Contract of Carriage;

b.  Whether Defendant is required to give a refund and reimburse all related expenses as a result of the cancellations, rather than credit on a future flight when it cancels a flight and cannot reaccommodate the passengers within a reasonable time of the original flight schedule;

c.  Whether Plaintiff and members of the Class are entitled to damages, costs, or attorneys' fees from Defendant; and

d.  Whether Plaintiff and members of the Class are entitled to compensatory damages.

31.      **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of other Class members' claims because Plaintiff and Class members were subjected to the same unlawful conduct and damaged in the same way. Defendant's conduct that gave rise to the claims of Plaintiff and other Class members (i.e., canceling flights without giving refunds in breach of the Contract of Carriage) is the same for all Class members.

Exhibit 3 Page 131

32. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in litigating consumer claims. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of the Class.

33. **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs and class members may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class members are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Moreover, individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

34. **Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a

Exhibit 3 Page 132

whole. Moreover, Defendant continues to offer credits instead of refunds to Plaintiff and Class members for flights that they cancel, thus making declaratory relief a live issue and appropriate to the Class as a whole.

## COUNT I - BREACH OF CONTRACT

35.     Plaintiff realleges and reincorporates its allegations in paragraphs 1 through 34 above as if fully set forth herein.

36.     This claim for breach of contract damages or, in the alternative, specific performance of the contract's refund terms, is based on Defendant's breaches of its Contract of Carriage, including its Customer Service Commitment (the "Contract").

37.     Plaintiff, along with all putative class members, entered into a Contract with Defendant for provision of air travel in exchange for payment. This Contract was drafted by Defendant.

38.     Plaintiff, and all putative class members performed under the Contract, specifically, by tendering payment for the airline tickets to Defendant and complied with all conditions precedent under the Contract.

39.     Due to Defendant's cancellation of their flights, Plaintiff, and all putative class members cannot use their airline tickets through no fault of their own and they are not getting the benefit of their bargain with Defendant.

40.     Under the terms of the Contract of Carriage drafted by Defendant, Plaintiff and putative class members are entitled to refunds because Southwest canceled their flights and did

9

Exhibit 3 Page 133

not rebook the customers on another flight. By failing to provide refunds, Southwest has breached its Contract of Carriage.

41. Southwest has further breached its Contract of Carriage by failing to provide refunds within seven days for canceled tickets purchased with credit cards.

42. As a result of Defendant's breaches of contract, Plaintiff and the putative class members have incurred damages in an amount to be proven at trial.

## COUNT II - REDHIBITION

43. Plaintiff realleges and reincorporates its allegations in paragraphs 1 through 42 above as if fully set forth herein.

44. This claim for Redhibition under Louisiana Civil Code Article 2520, et seq. is also based on Defendant's breaches of its Contract of Carriage.

45. Under the law of Redhibition, Southwest is liable for return of the price of the ticket when it was paid plus interest from the time paid, the reimbursement of reasonable expenses occasioned by the sale and also for damages and attorney fees.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all putative Class members, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

1. For an Order determining at the earliest possible time that this matter may proceed as a class action under Rule 23 and certifying this case as such;

Exhibit 3 Page 134

3. For himself and each Class member their actual compensatory damages, or in the alternative, for specific performance of the refund provisions of the Contract of Carriage;

4. For reasonable attorneys' fees and costs of suit;

5. For pre-judgment interest and interest pursuant to redhibition; and

6. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff, on behalf of himself and the Class of all others similarly situated, hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: December 30, 2022

Respectfully Submitted:

**JIM S. HALL & ASSOCIATES**, LLC.

_/s/ Matthew B. Moreland_
**JIM S. HALL (Bar No.: 21644)**
Jodi@jimshall.com
**MATTHEW B. MORELAND** (#24567)
Mmoreland@jimshall.com
800 N. Causeway Blvd., Suite #100
Metairie, Louisiana 70001
Telephone: 504-832-3000
Facsimile: 504-832-1799

_Counsel for Plaintiff and the Proposed Class_

Exhibit 3 Page 135